# EXHIBIT G



No. 202.1

## EXECUTIVE ORDER

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the laws of the State of New York, do hereby continue Executive Order 202, dated March 7, 2020, and I hereby continue any suspension or modification of law made by Executive Order 202 for thirty days until April 11, 2020, except that such Executive Order is amended to read as follows:

**FURTHER,** pursuant to the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 11, 2020 the following:

**Suspension of laws and regulations to allow for expansion of services and temporary facilities for health and human service providers:**

- Subdivisions (a) and (e) of section 401.3 and section 710.1 of Title 10 of the NYCRR, to the extent necessary to allow hospitals to make temporary changes to physical plant, bed capacities, and services provided, upon approval of the Commissioner of Health, in response to a surge in patient census;

- Parts 709 and 710 of Title 10 of the NYCRR, to the extent necessary to allow construction applications for temporary hospital locations and extensions to be approved by the Commissioner of Health without considering the recommendation of the health systems agency or the Public Health and Health Planning Council, and to take such further measures as may be necessary to expedite departmental reviews for such approval;

- Sections 34-2.6 and 58-1.7 of Title 10 of the NYCRR, to the extent necessary to permit clinical laboratories to operate temporary collecting stations to collect specimen from individuals suspected of suffering from a COVID-19 infection;

- Section 41.34 of the Mental Hygiene law and Part 620 and section 686.3 of Title 14 of the NYCRR, to the extent necessary to allow facilities certified pursuant to Article 16 of the Mental Hygiene law to increase and/or exceed certified capacity limits without following site selection procedures and/or without providing notification to the appropriate local governmental unit upon approval of the commissioner of OPWDD;

- Section 33.17 of the Mental Hygiene Law and associated regulations to the extent necessary to permit providers to utilize staff members in the most effective means possible to transport individuals receiving services from the Office of Mental Health or a program or provider under the jurisdiction of the Office of Mental Health during the emergency, provided such facilities take all reasonable measures to protect the health and safety of such individuals;

- Sections 29.11 and 29.15 Mental Hygiene Law and section 517 of Title 14 of the NYCRR to the extent necessary to permit mental health facilities licensed pursuant to Article 31 of the Mental Hygiene Law that are treating patients during the emergency to rapidly discharge, including conditionally discharge, transfer, or receive such patients, as authorized by the Commissioner of the Office of Mental Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices;

- Section 29.13 of the Mental Hygiene Law and associated regulations to the extent individuals in areas affected by the emergency are temporarily receiving services from different providers, whose immediate priority is to stabilize the individual, address acute symptoms, and provide supports including medication and stress relief, such that it is impossible to comply with development, assessment, scope and frequency, and documentation requirements for treatment plans;

- Sections 131, 132 and 349-a of the Social Services Law to the extent necessary to allow screenings to be conducted by telephone;

- Sections 2510 and 2511 of the Public Health Law, to the extent necessary to waive or revise eligibility criteria, documentation requirements, or premium contributions; modify covered health care services or the scope and level of such services set forth in contracts; increase subsidy payments to approved organizations, including the maximum dollar amount set forth in contracts; or provide extensions for required reports due by approved organizations in accordance with contracts;

- Subdivision 4 of section 6909 of the Education Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

- Section 400.9 and paragraph 7 of subdivision h of section 405.9 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals and nursing homes licensed pursuant to Article 28 of the Public Health Law ("Article 28 facilities") that are treating patients during the disaster emergency to rapidly discharge, transfer, or receive such patients, as authorized by the Commissioner of Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices, and to comply with the Emergency Medical Treatment and Active Labor Act (42 U.S.C. section 1395dd) and any associated regulations;

- Subdivision 3 of section 2801-a of the Public Health Law and section 600.1 of Title 10 of the NYCRR, to the extent necessary to permit the Commissioner of Health to approve the establishment of temporary hospital locations and extensions without following the standard approval processes and to take such further measures as may be necessary to expedite departmental reviews for such approval;
- Section 2999-cc of the Public Health Law and any regulatory provisions promulgated thereunder by the Department of Health, the Office of Mental Health, the Office of Addiction Services and Supports, and the Office for People with Developmental Disabilities, to the extent necessary to allow additional telehealth provider categories and modalities, to permit other types of practitioners to deliver services within their scopes of practice and to authorize the use of certain technologies for the delivery of health care services to established patients, pursuant to such limitations as the commissioners of such agencies may determine appropriate;

**Suspension of laws and regulations relating to child care to allow flexibility for providers while continuing to protect the health and safety of children:**

- Sections 414.7, 416.7, 417.7, 418-1.7, 418-2.7, 414.8, 416.8, 417.8, 418-1.8, and 418-2.8 of Title 18 of the NYCRR insofar as that regulation sets the ages of children who can be served and the standards for care; Sections 414.13, 416.13, 417.13, 418-1.13, 418-2.13 of Title 18 of the NYCRR suspending requirements for staff qualifications; Section 390 of the Social Services law suspending provisions setting capacity limits for family and group family day care programs and standards for staff/child ratios in all child care modalities; Sections 390(3) and 390-a of the Social Services Law and regulations at 18 NYCRR Sections 413(g), 414.14, 415.13, 416.14, 417.14, 418-1.14, 418-2.14, allowing for the waiver of certain provisions establishing training and inspection requirements for

- child day care; and Section 424-a of the Social Services Law insofar as allowing for the waiver of fees paid for statewide central register of child abuse and maltreatment database check;

- Section 410-w of the Social Services Law and sections 404.1, 404.7, 415.2, 415.3, 415.6 of Title 18 of the NYCRR insofar as that statute and those regulations establish financial eligibility standards, the reimbursement requirements, and set timeliness requirements for the provision of services including payment for absences due to COVID-19 abatement processes;

**Suspension of regulations to prevent delays in providing home delivered meals and in providing services under the Expanded In-Home Services for the Elderly Program (EISEP) to older adults:**

- Clause (d) of subparagraph (ii) of paragraph (3) of subdivision (a) of section 6654.10 of Title 9 of the NYCRR, insofar as it requires an assessment be conducted prior to or within 10 days of the initiation of home delivered meals;

- Subdivision (h) of section 6654.16 of Title 9 of the NYCRR, insofar as it requires an assessment be conducted within 10 working days after the completion of the screening intake and prior to the initiation of services under the Expanded In-Home Services for the Elderly Program (EISEP);

- Subdivision (n) of section 6654.16 of Title 9 of the NYCRR, to allow for a care plan to remain in effect for a period exceeding 12 months under the Expanded In-Home Services for the Elderly Program (EISEP) when such care plan would otherwise expire during the period in which a disaster emergency is declared;

- Subdivision (x) of section 6654.16 of Title 9 of the NYCRR, modifying requirements for reassessments to be conducted every 12 months or within 5 days of becoming aware of a change in circumstance under the Expanded In-Home Services for the Elderly Program (EISEP);

**Suspension of law to allow waiver of requirements necessary for apportionment of school aid:**

- Section 3604(7) of the Education Law, to the extent consistent and necessary to allow the commissioner to disregard such reduction in the apportionment of public money due to a failure by a school to meet the instructional requirements proscribed within this section due to the properly executed declaration of a local state of emergency as defined within sub-section (i), a school is directed to close by a state or local health official or following a properly executed declaration of a state of emergency as defined within sub-section (i), limited to the extent that those specified schools are unable to make up missed instructional days;

**Suspension of laws and regulations relating to emergency procurement:**

- Sections 553(22), 559, 1209, and 1265-a of the Public Authorities Law, and 21 NYCRR Part 1002, to the extent necessary to purchase necessary equipment, materials, supplies, or services, without following the standard procurement processes, including the standard prompt payment policy;

**Suspensions of law relating to appearances by defendants:**

- Notwithstanding any other provision of law and except as provided in section 182.30 of Article 182 of the Criminal Procedure Law, the court, in its discretion, may dispense with the personal appearance of the defendant, except an appearance at a hearing or trial, and conduct an electronic appearance in connection with a criminal action pending in any county in New York State, provided that the chief administrator of the courts has authorized the use of electronic appearance due to the outbreak of COVID-19, and the defendant, after consultation with counsel, consents on the record. Such consent shall be required at the commencement of each electronic appearance to such electronic appearance.

**Suspension of law relating to waiting periods for unemployment insurance claimants whose claims arise directly out of COVID-19 outbreak:**

- Subdivision 7 of Section 590 of the Labor Law, so far as it relates to the waiting period for unemployment insurance claimants whose claims for unemployment insurance arise directly out of closings of schools or other workplaces in which claimants were employed, or out of claimants' isolation or quarantine in connection with COVID-19; and

**Suspension of law allowing the attendance of meetings telephonically or other similar service:**

- Article 7 of the Public Officers Law, to the extent necessary to permit any public body to meet and take such actions authorized by the law without permitting in public in-person access to meetings and authorizing such meetings to be held remotely by conference call or similar service, provided that the public has the ability to view or listen to such proceeding and that such meetings are recorded and later transcribed;

**Suspension of law allowing residents of nursing homes to vote with modified visitor policies in place**:

- Subdivision 8 of section 8-407 of the Election Law to allow individuals not employed by the Board of Elections to assist residents of nursing homes or adult care facilities in the completion of absentee ballot applications and voting;

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 11, 2020:

- Any guidance issued by the New York State Department of Health related to prevention and infection control of COVID-19 at nursing homes and adult care facilities, including but not limited to guidance on visitation, shall be effective immediately and shall supersede any prior conflicting guidance issued by the New York State Department of Health and any guidance issued by any local board of health, any local department of health, or any other political subdivision of the State related to the same subject.

- Any large gathering or event for which attendance is anticipated to be in excess of five hundred people shall be cancelled or postponed for a minimum of thirty days.

- Any place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, shall operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days effective on Friday, March 13, 2020, except that any theater seating five hundred or more attendees for a live performance located in a city of one million or more shall not hold any further performances after 5pm on March 12, 2020.

- The two preceding directives shall not apply to a school, hospital, nursing home, other medical office or facility as determined by the Commissioner of Health, mass transit or mass transit facility, governmental facility, law enforcement facility, or retail establishments including grocery stores. The Commissioner of Health may allow for businesses that are not public gathering spaces to exceed five hundred persons if the occupancy is less than fifty percent capacity subject to public health review.

G I V E N under my hand and the Privy Seal of the State in the City of Albany the twelfth day of March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor