UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

OUR WICKED LADY, LLC (d/b/a "Our Wicked Lady")
*et al.,*

                                             Plaintiffs,

                  -against-

                                        21-CV-165 (DLC)

ANDREW M. CUOMO**,** in his official capacity as
Governor of the State of New York; STATE OF NEW
YORK; BILL de BLASIO, in his official capacity as
Mayor of New York City; and THE CITY OF NEW
YORK,

                                           Defendants.

------------------------------------------------------------------------x

## CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER FOR A PRELIMINARY INJUNCTION AND IN SUPPORT OF THEIR CROSS-MOTION TO DISMISS THE COMPLAINT

JAMES E. JOHNSON
Corporation Counsel of the
    City of New York
Attorney for Defendants Mayor Bill de
Blasio, and the City of New York
100 Church Street
New York, New York 10007

SHERYL NEUFELD
MICHELLE GOLDBERG-CAHN
KERRI A. DEVINE
SAMANTHA SCHONFELD
        Of Counsel.

February 23, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF MATERIAL FACTS ......................................................................... 3

        The COVID-19 Public Health Crisis .......................................................... 3

        Restrictions on Restaurants ...................................................................... 4

        Restrictions on Gyms and Fitness Centers ............................................... 4

LEGAL STANDARD .................................................................................................. 5

ARGUMENT

      POINT I

        PLAINTIFFS CLAIMS FAIL AS A MATTER OF
        LAW. ................................................................................................... 7

        A.  Plaintiffs' claims fail pursuant to the standard
            set forth in Jacobson ............................................................. 7

        B.  Plaintiffs' Due Process Claims Fail as a Matter
            of Law ................................................................................ 12

              1.    Plaintiffs were not entitled to notice and
                    an opportunity to be heard with respect
                    to the Challenged Orders as they are
                    legislative in nature. ................................................. 12

              2.    Plaintiffs' failure to identify a liberty or
                    property interest they were deprived of is
                    fatal to both their procedural and
                    substantive due process claims. ................................. 13

              3.    Even assuming plaintiffs identified a
                    property or liberty interest of which they
                    were deprived, they were not entitled to
                    a pre-deprivation hearing. ......................................... 14

4.   To the extent plaintiffs assert a substantive due process claim, it is also not likely to succeed on the merits. ............................................ 15

C.   Plaintiffs' Takings Claims Fail as a Matter of Law. ...................................................................... 17

1.   Plaintiffs Fail to State a Claim for a Physical Taking ........................................................... 17

2.   Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law. ............................................... 19

a.   Plaintiffs' Categorical Regulatory Takings Claim Fails as a Matter of Law .............................................................. 19

b.   Plaintiffs'            Non-Categorical Regulatory Takings Claim Fails .................................... 20

i.   Economic Impact of the Executive Shutdown Orders on Plaintiffs ......................................... 21

ii.   Plaintiffs Have Failed to Plead that the Challenged Orders Interfere with their Investment-Backed Expectations ........................................... 22

iii.   The Challenged Orders do not Unfairly Single-Out Plaintiffs ................................................. 23

D.   Plaintiffs' Equal Protection Claim Fails ........................................... 24

POINT II

PLAINTIFFS CANNOT DEMONSTRATE THAT IRREPARABLE HARM IS IMMINENT ................................................ 28

POINT III

A BALANCE OF HARDSHIPS TIPS IN CITY DEFENDANTS' FAVOR. ....................................................... 28

CONCLUSION ............................................................................................ 30

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                              **Pages**

1256 Hertel Ave. Assocs., LLC v. Calloway,
    761 F.3d 252 (2d Cir. 2014)..................................................................................................23

In Re Abbott,
    954 F. 3d 772 (5th Cir 2020) ..............................................................................................8

Agudath Israel of America v. Cuomo,
    2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) ...........................................8

Alexandre v. TLC,
    2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. Sept. 28, 2007)................................17, 19

Amato v. Elicker,
    460 F. Supp. 3d 202 (D. Ct. May 19, 2020) ............................................................9

Analytical Diagnostic Labs, Inc.,
    626 F.3d 135, 140 (2d Cir. 2010).........................................................................26

Aqua Harvesters, Inc., v. NYS Dep't of Envtl. Conserv.,
    399 F. Supp. 3d 15 (E.D.N.Y. 2019) .................................................................25

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..........................................................................................6, 7

Ass's of Jewish Camp Operators v. Cuomo,
    2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020)...................................8, 9

Auracle Homes LLC v. Lamont,
    2020 U.S. Dist. LEXIS 141500 (D. Ct. Aug. 7, 2020) .........................................18

Bayley's Campground Inc.,
    2020 U.S. Dist. LEXIS 94296 (D. Me. May 29, 2020) .........................................15

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..............................................................................................6

Benner v. Wolf,
    No. 20-cv-775, 2020 U.S. Dist. LEXIS 89425 (M.D. Pa. May 21, 2020)........................ 14-15

Bery v. City of New York,
    97 F.3d 689 (2d Cir. 1996),
    cert. denied, 520 U.S. 1251 (1997) .......................................................................6

Bimber's Delwood, Inc. v. James,
    2020 U.S. Dist. LEXIS 195823 (W.D.N.Y. Oct. 21, 2020).........................13, 16, 27

**Cases**                                                                    **Pages**

Bocelli Ristorante Inc. v. Cuomo,
   2020 N.Y. Misc. LEXIS 10213 (Sup. Ct. Rich. Co. Nov. 6, 2020)...................9, 13, 14, 28, 29

Buffalo Teachers Fed'n v. Tobe,
   464 F.3d 362 (2d Cir. 2006)...........................................................................17

Burka v. N.Y. City Transit Auth.,
   680 F. Supp. 590 (S.D.N.Y. 1988) ................................................................24

Capitol Pedicabs, LLC. v. City of New York,
   2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017)..................................................27

Cent. Rabbinical Cong. of the United States v.
   NYC Dep't of Health & Mental Hygiene,
   763 F.3d 183 (2d. Cir. 2014).....................................................................5-6

City of Cleburne v. Cleburne Living Ctr.,
   473 U.S. 432 (1985)...................................................................................24

Clubside Inc. v. Valentin,
   468 F.3d 144 (2d Cir. 2006)..........................................................................26

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
   527 U.S. 666 (1999)....................................................................................13

Columbus Ale House, Inc. v. Cuomo,
   2020 U.S. Dist. LEXIS 191828 (E.D.N.Y. Oct. 15, 2020)...............................8, 9, 10, 14, 29

County of Sacramento v. Lewis,
   523 U.S. 833 (1998)....................................................................................15

Dairy v. Bonham,
   2013 U.S. Dist. LEXIS 103033 (N.D. Cal. July 23, 2013)........................................25

Dark Storm Indus, LLC v. Cuomo,
   2020 U.S. Dist. LEXIS 120514 (N.D.N.Y. July 8, 2020)..........................................10

Davidson v. Flynn,
   32 F.3d 27 (2d Cir. 1994)...............................................................................6

Elmsford Apt. Associates, LLC v. Cuomo,
   2020 U.S. Dist. LEXIS 115354 (S.D.N.Y. June 29, 2020)..................................17, 19, 21, 22

Ewing v. Mytinger & Casselberry Inc.,
   339 U.S. 594 (1950).....................................................................................14

**Cases**                                                                                                     **Pages**

Fortress Bible Church v. Feiner,
    694 F. 3d 208 (2d Cir. 2012)........................................................................................26

Friends of Danny Devito v. Wolf,
    227 A.3d 872 (PA Sup. Ct. Apr. 13, 2020)..............................................................23

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998)...........................................................................................6

H's Bar, LLC v. Berg,
    2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020) ........................................8

Hartman v. Acton,
    2020 U.S. Dist. LEXIS 72068 (S.D. Ohio Apr. 21, 2020) ......................................13

Hodel v. Va. Surface Mining & Reclamation Ass'n,
    452 U.S. 264 (1981)....................................................................................................14

Hopkins Hawley LLC v. Cuomo,
    2021 U.S. Dist. LEXIS 24580 (S.D.N.Y. Feb. 9, 2021)....................8, 9, 12, 13, 16, 17, 28, 29

Hu v. City of New York,
    927 F. 3d 81 (2d Cir. 2019).........................................................................................14

Hund v. Cuomo,
    2020 U.S. Dist. LEXIS 212698 (W.D.N.Y. Nov. 13, 2020) ...................................13

Inturri v. City of Hartford,
    365 F. Supp. 2d 240 (D. Conn., 2005).......................................................................27

Jacobson v. Massachusetts,
    197 U.S. 11 (1905).................................................................................................2, 7, 8

Kabrovski v. City of Rochester,
    149 F. Supp. 3d 412 (W.D.N.Y. 2015) ......................................................................22

Keystone Bituminous Coal Ass'n v. DeBenedicitis,
    480 U.S. 470 (1987).....................................................................................................21

Kittay v. Giuliani,
    252 F.3d 645 (2d Cir. 2001)........................................................................................18

League of Indep. Fitness Facilities & Trainers v. Whitmer,
    2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020).......................................8

**Cases**                                                                                        **Pages**

Leb. Valley Auto Racing Corp. v. Cuomo,
 2020 U.S. Dist. LEXIS 143223 (N.D.N.Y. Aug. 11, 2020) ........................................21, 22, 27

Leder v. Am. Traffic Solutions, Inc.,
 81 F. Supp. 3d 211 (E.D.N.Y. 2015)
 aff'd 630 F. App'x 61 (2d Cir. 2015)........................................................................................15

Lingle v. Chevron
 544 U.S. 528 (2005)..........................................................................................................17, 19

Logan v. Zimmerman Brush Co.,
 455 U.S. 422 (1982)..................................................................................................................12

Luke's Catering Serv., LLC,
 2020 U.S. Dist. LEXIS 165907 ............................................................................19, 20, 22, 23

M. Rae, Inc.,
 2020 U.S. Dist. LEXIS 241961 ..........................................................................................28, 29

Madonna v. United States,
 878 F.2d 62 (2d Cir. 1989)..........................................................................................................6

Maniqault v. Springs,
 199 U.S. 473 (1905)..................................................................................................................24

Marshall v. U.S.,
 414 U.S.417 (1974)...................................................................................................................10

McAdam v. Suffolk Cty. Police Dep't,
 2017 U.S. Dist. LEXIS 117006 (E.D.N.Y. 2017), 2017 WL 3206322 ...................................24

McCarthy v. Cuomo,
 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) ................................8, 9, 17, 18, 20

Meriden Trust & Safe Deposit Co. v. FDIC,
 62 F.3d 449 (2d Cir. 1995)..................................................................................................19, 23

Missere v. Gross,
 826 F. Supp. 2d 542 (S.D.N.Y. 2011)......................................................................................26

Murphy v. Lamont,
 2020 U.S. Dist. LEXIS 136961 (D Ct. Aug. 3, 2020) .............................................................13

Natale v. Town of Ridgefield,
 170 F.3d 258 (2d Cir. 1999)......................................................................................................16

**Cases**                                               **Pages**

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005)......................................................................26

New York Pet Welfare Ass'n v. City of N.Y.,
    143 F. Supp. 3d 50 (E.D.N.Y. 2015),
    aff'd 850 F.3d 79 (2d Cir. 2017),
    cert denied, 138 S. Ct. 131 (2017) ............................................................12

New York v. United States Dep't of Homeland Sec.,
    969 F. 3d 42 (2d Cir. 2020).......................................................................28

O'Bannon v. Town Court Nursing Center,
    447 U.S. 773 (1980)..................................................................................12

Oregon Restaurant & Lodging Ass'n v. Brown,
    2020 U.S. Dist. LEXIS 220414 (D. Or. Nov. 24, 2020).........................24

Page v. Cuomo,
    2020 U. S. Dist LEXIS 183769 (N.D.N.Y Aug. 11, 2020) ...........................9, 15, 16

Palazzolo v. Rhode Island,
    533 U.S. 606 (2001)..................................................................................17

Parratt v. Taylor,
    451 U.S. 527 (1981)..................................................................................14

Pena v. DePrisco,
    432 F.3d 98 (2d Cir. 2005)........................................................................15

Penn Central Trans. Co. v. N.Y. City,
    438 U.S. 104 (1978)...............................................................2, 19, 20, 21, 23

Pennsylvania Coal v. Mahon,
    260 U.S. 393 (1922)..................................................................................17

Phila. Rest. Owners Against Lockdown, LLC v. Kenney,
    2020 U.S. Dist. LEXIS 220853 (E.D. Pa November 20, 2020).................29

Plaza Health Labs., Inc. v. Perales,
    878 F.2d 577 (2d Cir. 1989)........................................................................6

Plaza Motors of Brooklyn, Inc. v Cuomo,
    2021 U.S. Dist. LEXIS 12726 (E.D.N.Y. Jan. 22, 2021) .................26, 27

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002)......................................................................15

**Cases**                                                                                                          **Pages**

Pollok v. Chen,
    2020 U.S. App. LEXIS 9261 (2d Cir. 2020) .......................................................................15

Purze v. Winthrop Harbor,
    286 F.3d 452 (7th Cir. 2002) ...........................................................................................26

Rent Stabilization Ass'n v. Dinkins,
    5 F.3d 591 (2d Cir. 1993).................................................................................................18

Roman Catholic Diocese v. Cuomo,
    208 L. Ed. 2d 206 (2020) .................................................................................................8

In re Rutledge,
    956 F.3d 1018 (8th Cir 2020) ..........................................................................................8

S. Bay United Pentecostal Church v. Newsom,
    140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring) ...................10

Sanitation and Recycling Indus. v. City,
    925 F. Supp. 407 (S.D.N.Y. 1996) .................................................................................12

Savage v. Mills,
    2020 U.S. Dist. LEXIS 141628 (D. Me. Aug. 7, 2020)...........................................13, 14

New York ex rel. Schneiderman v. Actavis PLC,
    787 F.3d 638 (2d Cir. 2015).............................................................................................28

Sherman v. Town of Chester,
    752 F.3d 554 (2d. Cir. 2014)..............................................................................20, 21, 22

Smith v. Half Hollow Hills Cent. School Dist.,
    298 F.3d 168 (2d Cir. 2002).............................................................................................15

Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,
    560 U.S. 702 (2010).........................................................................................................14

Sunward Electronics, Inc. v. McDonald,
    362 F.3d 17 (2d. Cir. 2004)...............................................................................................6

Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,
    535 U.S. 302 (2002).........................................................................................................19

Tandon v. Newsom,
    2021 U.S Dist. LEXIS 22499 (N.D. Ca. Feb. 5, 2021)....................................................27

**Cases**                                                                                                                               **Pages**

Thomas Doherty Assocs. v. Saban Entm't, Inc.,
   60 F.3d 27 (2d Cir. 1995)......................................................................................6

Trump v. Deutsche Bank AG,
   943 F.3d 627 (2d Cir. 2019)................................................................................5

United States v. Salerno,
   481 U.S. 739 (1987).........................................................................................18

Velez v. Levy,
   401 F.3d 75 (2d Cir. 2005)...............................................................................15

Vill. of Willowbrook v. Olech,
   528 U.S. 562 (2000)....................................................................................24, 26

World Gym, Inc. v. Baker,
   2020 U.S. Dist. LEXIS 131236 (D. Mass. July 24, 2020)................................14, 16

World Gym, Inc. v. Baker,
   474 F. Supp. 3d 426 (D. Mass. 2020) ..............................................................25

Yee v. City of Escondido, Cal.,
   503 U.S. 519 (1992).........................................................................................18

Young v. James,
   2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020) ...............................8

**Statutes**

Fed. R. Civ. P. Rule 12(b)(6) ..............................................................................6

**Other Authorities**

https://newyork.cbslocal.com/2021/02/19/indoor-dining-can-increase-to-35-
   capacity-next-week-in-new-york-city/ (last accessed Feb. 22, 2021) .................1, 20

https://www1.nyc.gov/site/doh/covid/covid-19-businesses-and-facilities.page (last
   visited Feb. 15, 2021)..........................................................................................5

NYC Health, available at
   https://www1.nyc.gov/assets/doh/downloads/pdf/covid/businesses/covid-19-
   reopening-gyms.pdf (last visited Feb. 15, 2021) .....................................................5

Defendants, MAYOR BILL de BLASIO, in his official capacity as Mayor of the City of New York ("Mayor de Blasio") and the City of New York ("City") (collectively "City Defendants") by their attorney, JAMES E. JOHNSON, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction and in support of their motion to dismiss.

## PRELIMINARY STATEMENT

Plaintiffs bring this action challenging the State's restrictions on restaurants in New York City and the State's and City's restrictions on indoor group fitness classes issued in response to the unprecedented public health crisis caused by the outbreak of the COVID-19 virus. See Complaint, Dkt. No 1. Specifically, plaintiffs are seeking to enjoin the restrictions put in place by New York State Executive Order ("State E.O.") No. 202.93, which permits indoor dining at 25% capacity in New York City,[1] and New York City Executive Order No. 144, which prohibits the reopening of indoor group fitness classes in New York City ("Challenged Orders"). See Pls. Memo of Law in Support of Pls.' Motion dated February 5, 2021 ("PI Memo").

Plaintiffs' preliminary injunction motion claims that the Challenged Orders violate their procedural and substantive due process rights, their right to Equal Protection of the law, and the Takings Clause of the 5th Amendment of the U.S. Constitution. See PI Memo at 10-20. All fail as a matter of law. As such, plaintiffs are unable to demonstrate a likelihood of success on the merits of their claims and their application for a preliminary injunction must be denied and the Complaint must be dismissed.

---

[1] On Feb. 19, 2021, Gov. Cuomo announced that as of Feb. 26, 2021, restaurants in NYC can increase indoor dining to 35% of their normal operating capacity. See https://newyork.cbslocal.com/2021/02/19/indoor-dining-can-increase-to-35-capacity-next-week-in-new-york-city/ (last accessed Feb. 22, 2021).

Plaintiffs fail to establish that the Challenged Orders were unconstitutional in light of the deferential standard set forth in Jacobson v. Massachusetts, which held that measures implemented to protect the public health will not be disturbed unless it has no "real or substantial" relation to its objects or, is beyond all question, "a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. 11, 31 (1905).

Even if Jacobson were not applicable and plaintiffs' claims were analyzed pursuant to traditional analyses, they similarly fail. Plaintiffs' procedural due process claim fails insofar as the Challenged Orders are legislative in nature and not subject to due process protections; and plaintiffs have failed to identify a protectable property interest and were not entitled to a pre-deprivation hearing prior to the imposition of the Challenged Orders. Plaintiffs fail to allege a viable substantive due process claim in that they merely allege that the Challenged Orders are arbitrary and, in any event, the Challenged Orders, which were issued to protect the health of City residents during a global pandemic, clearly do not shock the conscience. Plaintiffs' federal and state equal protection claims, subject to rational basis review, fail as against the City defendants as most of the alleged disparate treatment was set forth in Executive Orders issued by the State, not the City.  Moreover, plaintiffs fail to identify similarly situated comparators that were treated differently by the City defendants, and the alleged disparate treatment had a rational basis.  Finally, plaintiffs' physical and regulatory takings claims must be dismissed as the City has not physically occupied plaintiffs' property and plaintiffs fail to plausibly allege that the Challenged Orders constitute a regulatory taking under the applicable framework set forth in Penn Central Trans. Co. v. N.Y. City, 438 U.S. 104 (1978). Accordingly, plaintiffs' motion for a preliminary injunction should be denied and the Complaint should be dismissed.

## STATEMENT OF MATERIAL FACTS

### The COVID-19 Public Health Crisis

In response to the outbreak of COVID-19 in New York State, on March 7, 2020, Gov. Andrew Cuomo declared a formal state of emergency in the State of New York.  See Stipulation of Undisputed Facts dated February 17, 2021 ("Stip") at ¶ 3; Declaration of Samantha Schonfeld dated February 23, 2021 ("Schonfeld Dec.,") Ex. A.[2] On March 12, 2020, Mayor Bill de Blasio declared a state of emergency in New York City.  See Ex. A (N.Y.C. Emergency Executive Order No. 98);Stip. at ¶ 4. Both the State and City then implemented various regulations aimed at preventing the spread of the COVID-19 virus.

Thereafter, Gov. Cuomo issued State Executive Order ("E.O.") No. 202.3 which states that "[n]o local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law . . . ." and State E.O. No. 202.5 which states that "no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health."  See Stip. ¶ 6; Ex. B and C.

On March 18, 2020 Gov. Cuomo issued E.O. No. 202.6. This E.O., effective March 20, 2020, identified, among other things, "Essential Businesses" as "[a]ny essential business or entity providing essential services or functions" and further provided that Essential Business would not be subject to the in-person restrictions. The E.O. identified a series of industries that would be categorized as "Essential." Restaurants were deemed "Essential retail," but only for take-out and delivery. Stip at ¶ 9.

---

[2] All exhibits referred to herein are attached to the Schonfeld Dec., submitted herewith.

**Restrictions on Restaurants**

On March 16, 2020, Gov. Cuomo issued State E.O. No. 202.3, ordering restaurants and bars throughout the State to cease food and drink service for on premise consumption. Stip. at ¶ 7; Ex. B. This ban was lifted on June 12, 2020 for regions in Phase 3 of the State's four-phase reopening timeline pursuant to State E.O. No. 202.41, subject to additional State guidance. Stip at ¶ 11; Ex. E. At that time the City was in Phase 1 of the reopening process; it reached Phase 3 on July 6, 2020 and Phase 4 on July 20, 2020. Stip. at ¶ 12.

On July 6, 2020, Gov. Cuomo issued State E.O. 202.48 extending the prohibition on indoor dining in New York City. Stip at ¶ 13; Ex. F. Effective September 30, 2020, State E.O. No. 202.61, lifted the ban on indoor dining in New York City, among other things, subject to additional restrictions set by the State.  Stip. at ¶ 15; Ex. G.

The State-issued guidance, which is binding on the City pursuant to State E.O. No. 202.61, provided, *inter alia*, that indoor dining in New York City must be, "limited to no more than 25% of the maximum occupancy for a particular area as set by the certificate of occupancy, exclusive of employees." Stip at ¶ 16.

On December 11, 2020, by State E.O. No. 202.81, Gov. Cuomo suspended the authorization for indoor dining in the City, effective Dec. 14, 2020. Id. at ¶ 16. See Ex. H.  On January 29, 2021, Gov. Cuomo announced that indoor dining at eating and drinking establishments in the City would be allowed to resume beginning February 14, 2021, subsequently changed via E.O. 202.93 to February 12, 2021, at a maximum capacity of twenty-five percent (25%) of their normal operating capacity. Id. at ¶ 19; Ex. I.

**Restrictions on Gyms and Fitness Centers**

On March 16, 2020, Gov. Cuomo issued State E.O. No. 202.3, which, *inter alia*, directed gyms and fitness centers to cease operations on March 16, 2020. See Ex. B.

4

On August 20, 2020, Gov. Cuomo issued State E.O. No. 202.57, providing that gyms and fitness centers in the State of New York could resume operations on August 24, 2020, subject to health and safety standards, but further provided that local elected officials may choose to postpone, *inter alia*, the opening of gyms and fitness centers consistent with State Department of Health guidance.. See Ex. J.

DOHMH's website, COVID-19: Guidance for Businesses and Schools," states that "[i]ndoor fitness classes[3] will remain closed in New York City until further notice. Health and safety remain the number one priority as the City reopens." https://www1.nyc.gov/site/doh/covid/covid-19-businesses-and-facilities.page (last visited Feb. 15, 2021). All of the State E.O.s are incorporated by reference in the City E.O.s, and pursuant to State E.O. No. 202.3, the City must comply with the State E.O.s and cannot impose less restrictive conditions.  See Stip ¶ 6.  Ex. B.

## **LEGAL STANDARD**

Plaintiffs fail to satisfy the standards for a preliminary injunction. In order to establish their entitlement to the drastic remedy of a preliminary injunction against government action taken in the public interest, plaintiffs must establish: (1) that they will be irreparably injured if the relief sought is not granted; (2) that they are likely to succeed on the merits of their claims; (3) that a balance of the hardships tips decidedly in their favor; and (4) that an injunction would be in the public interest.  See Trump v. Deutsche Bank AG, 943 F.3d 627, 637-640 (2d Cir. 2019); Cent. Rabbinical Cong. of the United States v. NYC Dep't of Health & Mental

---

[3] DOHMH guidance defines an "indoor group fitness class" as "an activity with two or more participants led by either an in-person instructor or a remote or pre-recorded instructor."  "Reopening New York City: What Gyms and Fitness Center Operators Need to Know," NYC Health, available at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/businesses/covid-19-reopening-gyms.pdf (last visited Feb. 15, 2021).

Hygiene, 763 F.3d 183, 192 (2d. Cir. 2014); Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).  See also Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997).  However, whereas here, the movant seeks to alter the status quo, i.e., to increase indoor dining from the current 25% capacity to 50% capacity, a heightened standard is applicable. When seeking such a mandatory injunction, plaintiffs must show "a 'clear' or 'substantial' likelihood of success." Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 24 (2d. Cir. 2004), quoting Thomas Doherty Assocs. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995).

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)).  A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (citations and quotations omitted).

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss.  Id.  First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.  Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded

factual allegations …plausibly give rise to an entitlement to relief." Id.  In making its evaluation, a court must undertake a "context-specific task" that requires it to draw on its judicial experience and common sense.  Id. at 679.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint must be dismissed.  Id. at 678–79. ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

**ARGUMENT**

**POINT I**

**PLAINTIFFS CLAIMS FAIL AS A MATTER OF LAW.**

Plaintiffs are unable to succeed on the merits of their claims as they relate to the City defendants. First, it is important to note that all of the Challenged Orders with respect to restrictions on indoor dining were issued by the State. The City is not free to disregard the State E.O.s.  In fact, State E.O. Nos. 202.3 and 202.5 require the City to adhere to any State E.Os and the determinations of the N.Y. State Department of Health. Stip. at ¶ 6. Accordingly, it is clear that with respect to eating and drinking establishments, plaintiffs challenge the State's response to the COVID-19 pandemic, and any actions taken by City defendants follow the State E.O.s.

**A.      Plaintiffs' claims fail pursuant to the standard set forth in Jacobson**

As early as 1905, the Supreme Court, in the seminal case Jacobson v. Massachusetts, acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." Jacobson, 197 U.S. at 26. In Jacobson, the Supreme Court set forth a deferential standard when reviewing an enactment "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental right. Id. at 31. Such an enactment must not

be disturbed unless it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law...." <u>Id.</u> In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,' or through 'arbitrary and oppressive' regulations." <u>In Re Abbott</u>, 954 F. 3d 772, 784 (5th Cir 2020) (quoting <u>Jacobson</u> at 28, 38).

  As was recently held in <u>Hopkins Hawley LLC v. Cuomo</u>, 2021 U.S. Dist. LEXIS 24580 *11 (S.D.N.Y. Feb. 9, 2021), the deferential standard set forth in <u>Jacobson</u> is still applicable, and accordingly, applies to this case.[4] In fact, in <u>Hopkins Hawley</u>, the Court applied <u>Jacobson</u> in analyzing, <u>inter alia</u>, a challenge to the suspension of indoor dining, also challenged herein. <u>Id.</u> Indeed, courts across the nation have applied the "real or substantial relation" standard when addressing challenges to orders curtailing constitutional rights during the COVID-19 pandemic. <u>See,e.g.</u>, <u>In re Rutledge</u>, 956 F.3d 1018 (8th Cir 2020) (finding that "the district court's failure to apply the <u>Jacobson</u> framework produced a patently erroneous result"); <u>Young v. James</u>, 2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020); <u>Columbus Ale House, Inc. v. Cuomo</u>, 2020 U.S. Dist. LEXIS 191828 *7 (E.D.N.Y. Oct. 15, 2020); <u>H's Bar, LLC v. Berg</u>, 2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020); <u>Ass's of Jewish Camp Operators v. Cuomo</u>, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) (collecting cases); <u>League of Indep. Fitness Facilities & Trainers v. Whitmer,</u> 2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020); <u>McCarthy v. Cuomo</u>, 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020)

---

[4] This is notwithstanding the recent decisions in <u>Roman Catholic Diocese v. Cuomo</u>, 208 L. Ed. 2d 206 (2020) and <u>Agudath Israel of America v. Cuomo,</u> 2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) which are distinguishable from the instant case in that they involved the application of strict scrutiny to plaintiffs' Free Exercise claims, which are not at issue here. <u>See</u> <u>Hopkins Hawley</u>, 2021 U.S. Dist. LEXIS 24580 *12-13. While plaintiffs appear to assert that strict scrutiny is applicable herein (Compl., ¶ 136), there is no support for such application.

(collecting cases); <u>Amato v. Elicker</u>, 460 F. Supp. 3d 202 (D. Ct. May 19, 2020); <u>Bocelli Ristorante Inc. v. Cuomo</u>, 2020 N.Y. Misc. LEXIS 10213 *15 (Sup. Ct. Rich. Co. Nov. 6, 2020).

There is no doubt that the restrictions on in-person dining have a "real or substantial relation" to reducing the spread of COVID-19, a pandemic that resulted in over 28,000 confirmed or probable deaths of New York City residents. <u>See</u> Declaration of Dr. Jay Varma, M.D., sworn to February 23, 2021 ("Varma Dec.")[5] at ¶ 18. <u>See</u>, <u>e.g.</u>, <u>Ass'n of Jewish Camp Operators</u>, 2020 U.S. Dist. LEXIS 117765 at *22; <u>McCarthy</u>, 2020 U.S. Dist. LEXIS 107195 at *9; <u>Page v. Cuomo</u>, 2020 U. S. Dist LEXIS 183769 *21 (N.D.N.Y Aug. 11, 2020). In finding that a challenge to the State restriction prohibiting restaurants in New York City from providing service after midnight was unlikely to succeed, the Eastern District recently noted that:

> It is by now well understood that the virus spreads more easily indoors and when people gather in close proximity. Social distancing and mask wearing are among the few tools available to slow its spread, but these precautions are impacted by indoor dining. Diners cannot wear masks while they eat and drink, and indoor dining necessarily brings individuals from different households together in a restaurant, even if at a distance. Thus, indoor dining poses a greater risk of virus transmission than many other activities.

<u>Columbus Ale House,</u> 2020 U.S. Dist. LEXIS 191828 *9. <u>See</u> <u>also</u> <u>Hopkins Hawley</u>, 2021 U.S. Dist. LEXIS 24580 *15 )("[The suspension of indoor dining and prohibition on in-person dining after 10:00 p.m.] bears a relation to the public welfare by seeking to curb the transmission of COVID-19 in higher risk setting such as restaurants.")

---

[5] City defendants submit the Varma Dec. in support of their opposition to the PI Motion, however, the Cross-Motion to Dismiss the Complaint is not dependent on it, because as set forth herein, the Complaint fails to plead a cognizable constitutional claim. Similarly, as the Complaint fails to state a claim, plaintiffs are not likely to succeed on the merits of their claim and their motion for a preliminary injunction should be denied.

Government officials need the flexibility to impose measures aimed at stopping the spread of COVID-19 and to prevent a reoccurrence whereby the healthcare facilities would once again become overwhelmed. As Chief Justice Roberts recently noted, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring).   Plaintiffs even acknowledge that "State and City officials face tremendous challenges with respect to executing policy to protect the general public's health and welfare during this time of crisis," and that the defendants have a compelling interest to try to stem the spread of COVID-19. Compl. at ¶ 99; PI Memo at p. 17. The courts should not second guess determinations made by government officials, in consultation with public health officials, as to how best stem the spread of this deadly virus, particularly, whereas here, government officials seek to address an area "fraught with medical and scientific uncertainties." Columbus Ale House at *11, quoting Marshall v. U.S., 414 U.S.417 (1974)); see also Dark Storm Indus, LLC v. Cuomo, 2020 U.S. Dist. LEXIS 120514 *38 (N.D.N.Y. July 8, 2020)(noting Court is loathe to second-guess COVID-19-related policy decisions during a pandemic with respect to which businesses are deemed essential).

The Challenged Orders clearly have a real and substantial relation to protection of the public health. Indeed, plaintiffs do not even appear to allege that the Challenged Orders are not substantially related to stemming the spread of COVID-19. COVID-19 has spread worldwide, causing over 500,000 deaths in the United States alone. See Varma Dec. at ¶ 14. What makes the disease particularly insidious is that people unaware that they are infected can transmit it to others. Id. at ¶¶ 7, 10. As there is no cure for COVID-19, and a vaccine only in its

infancy, the only tools currently available to combat the spread of the disease are mitigation measures, which include social distancing and mask wearing. Id. at ¶ 10. Given that dining, by its very nature, strips diners of one of those few preventative tools—mask wearing—and that transmission is more likely to occur indoors than outdoors because of air circulation and other issues, both a temporary ban on indoor dining in the City and restrictions on capacity have a real and substantial relation to the protection of public health.[6] Id. at ¶¶ 35-38, 41-45. Furthermore, indoor group fitness classes pose a heightened risk for transmission as well. Varma Dec., ¶ 34.

Indeed, New York City has an increased risk of transmission because it is a center for domestic and international travel. See Varma Dec., at ¶ 27. Additionally, the fact that New York City has a large population living in a dense environment, including in high-risk residential congregate facilities and multi-generational housing also increases the risk of transmission. Id. Plaintiffs, however, ask this Court to jettison the prudent, cautious and scientifically-based, effective approach taken by the State in re-opening (and imposing new restrictions on) businesses in New York City.

The Challenged Orders were clearly enacted to curb the spread of COVID-19 through indoor dining and in-person fitness classes, which present an increased risk of transmission of the virus. See Varma Dec., ¶¶ 34-8, 41-5. The evidence overwhelmingly supports that conclusion. As plaintiffs have failed to establish or even plead that the Challenged Orders have no "real or substantial relation" to protecting public health, plaintiffs have failed to establish that they have a clear or substantial likelihood of success on the merits of their claims or set forth a cognizable constitutional claim.

---

[6] Plaintiffs offer no support for their claim that allowing plaintiffs' businesses to reopen at 50% capacity can potentially alleviate the amount of private indoor gatherings by allowing people to gather in plaintiffs' businesses. PI Memo at 10.

**B.   Plaintiffs' Due Process Claims Fail as a Matter of Law**

Plaintiffs' procedural due process claim is not likely to succeed. See Compl. at ¶¶ 121-30, 169-184. Plaintiffs claim that their rights to procedural due process were violated in that they were not afforded a "constitutionally adequate hearing" as to whether the restrictions set forth in the Challenged Orders should have been imposed on their businesses.  Compl. at ¶¶ 7, 124.  Plaintiffs were not entitled to such a hearing.

> **1.   Plaintiffs were not entitled to notice and an opportunity to be heard with respect to the Challenged Orders as they are legislative in nature.**

Plaintiffs were not entitled to procedural due process with respect to the enactment of the Challenged Orders.  Laws of general applicability are not subject to procedural due process protections.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (an individual's due process rights are not violated by a law of general applicability since "the legislative determination provides all the process that is due.")  See also New York Pet Welfare Ass'n v. City of N.Y., 143 F. Supp. 3d 50, 70 (E.D.N.Y. 2015), aff'd 850 F.3d 79 (2d Cir. 2017), cert denied, 138 S. Ct. 131 (2017).  "[I]t is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature." Hopkins Hawley, 2021 U. S. Dist. LEXIS 24580, *16. Moreover, "[i]t is well established that a government's change in established policy, even if it works to an individual's commercial detriment, does not create entitlement to a hearing." Sanitation and Recycling Indus. v. City, 925 F. Supp. 407 (S.D.N.Y. 1996), citing O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 789 (1980).

The Challenged Orders are applied prospectively and generally applicable to all restaurants and indoor group fitness classes in New York City; they do not target plaintiffs individually.  As such, they are legislative in nature. In fact, it was just recently held in Hopkins

Hawley, that State EO 202.81, challenged herein, which suspended indoor dining on Dec. 14, 2020, is "clearly legislative" and that plaintiffs therein could not make out a viable due process claim with respect to it.  2021 U. S. Dist. LEXIS 24580 *16. Other courts have similarly found procedural due process claims based on COVID-19-related restrictions to be lacking.  See Hund v. Cuomo, 2020 U.S. Dist. LEXIS 212698 *30 (W.D.N.Y. Nov. 13, 2020)(dismissing procedural due process claim based on COVID-19-related rule because it held was legislative); Bimber's Delwood, Inc. v. James, 2020 U.S. Dist. LEXIS 195823 *41 (W.D.N.Y. Oct. 21, 2020)(finding plaintiffs' due process claims based on Gov. Cuomo's COVID-19-related E.O.s not likely to succeed because they are legislative in nature); Murphy v. Lamont, 2020 U.S. Dist. LEXIS 136961 *31 (D Ct. Aug. 3, 2020); Hartman v. Acton, 2020 U.S. Dist. LEXIS 72068 *22 (S.D. Ohio Apr. 21, 2020); Bocelli Ristorante, Inc., v. Cuomo, 2020 N.Y. Misc. LEXIS 10213 *18 (Rich. Co. Nov. 6, 2020). Accordingly, as the Challenged Orders are legislative in nature, plaintiffs were not entitled to notice and an opportunity to be heard and their procedural due process claims must be dismissed.

### 2. Plaintiffs' failure to identify a liberty or property interest they were deprived of is fatal to both their procedural and substantive due process claims.

Even if the Challenged Orders did trigger due process protections, plaintiffs fail to identify a protected liberty or property interest of which they have been deprived.  To the extent that plaintiffs claim that they have been deprived of lost revenue or a right to operate their businesses, their due process claim fails.  "[B]usiness in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense," College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999). "Harm to business interests…is not a 'plain, palpable invasion of rights' under the Fourteenth Amendment."  Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *22 (D. Me. Aug. 7, 2020),

citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 721, (2010) (noting that "the liberties' protected by substantive due process do not include economic liberties"). Moreover, plaintiffs do not have a right to conduct business without conditions. Columbus Ale House at 11; Bocelli, 2020 N.Y. Misc. LEXIS 10213 *18.  The Challenged Orders have merely restricted the manner in which restaurants and indoor fitness studios may operate. For instance, restaurants have been allowed to provide take out and delivery services throughout the pandemic and fitness classes have been permitted to hold classes online. As they have not prohibited them from operating completely, they do not run afoul of the Fourteenth Amendment. See  Hu v. City of New York, 927 F. 3d 81, 102 (2d Cir. 2019) ("the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession.") (citation omitted).

### 3. Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing.

Assuming, arguendo, plaintiffs identified a protected property right of which they were deprived, they were not entitled to a pre-deprivation hearing prior to the issuance of the Challenged Orders. Due process does not automatically trigger a right to a pre-deprivation hearing.  Parratt v. Taylor, 451 U.S. 527 (1981). Rather, summary administrative action is justified to protect the health and safety of the public. Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 300 (1981). Indeed, deprivation of property to protect the public health and safety is "[one] of the oldest examples" of permissible summary action. Id. at 300, quoting Ewing v. Mytinger & Casselberry Inc., 339 U.S. 594, 599 (1950).

Preventing the further spread of COVID-19 justifies such summary administrative action.  See Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *20; World Gym, Inc. v. Baker, 2020 U.S. Dist. LEXIS 131236 *11-12 (D. Mass. July 24, 2020); Benner v. Wolf, No. 20-cv-

775, 2020 U.S. Dist. LEXIS 89425 *11 (M.D. Pa. May 21, 2020); Page, 2020 U. S. Dist. LEXIS 183769 *32. "[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected. Bayley's Campground Inc., 2020 U.S. Dist. LEXIS 94296 *32 (D. Me. May 29, 2020).  Accordingly, plaintiffs have been afforded all of the process they are due with respect to the Challenged Orders by their ability to commence the instant action.

> **4. To the extent plaintiffs assert a substantive due process claim, it is also not likely to succeed on the merits.**

To the extent plaintiffs assert a claim that they were deprived of substantive due process, that claim fails. In order to state a substantive due process claim, "a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pollok v. Chen, 2020 U.S. App. LEXIS 9261, *10-11 (2d Cir. 2020) (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)). Additionally, plaintiff must allege a valid property interest or fundamental right infringed upon.  Leder v. Am. Traffic Solutions, Inc., 81 F. Supp. 3d 211, 223 (E.D.N.Y. 2015) aff'd 630 F. App'x 61 (2d Cir. 2015).

Only a narrow range of extreme government conduct falls within the scope of a substantive due process claim. Indeed, only egregious or outrageous conduct that shocks the conscience is actionable.  See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002) (applying Sacramento). The Second Circuit has expounded on this standard and required the government conduct to be "brutal and offensive to human dignity…." Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotations omitted). Put another way, there must be a "malicious and sadistic" abuse of power that has no legitimate government purpose and that is intended to oppress or cause injury.  See Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).

First, as set forth above, plaintiffs have failed to identify a property interest of which they were deprived by the Challenged Orders.  Plaintiffs have similarly failed to identify a fundamental right upon which the Challenged Orders infringed in that there is no fundamental right to conduct business without restrictions.  Hopkins Hawley LLC v. Cuomo, 2021 U.S. Dist. LEXIS 24580 *17-8.

Second, plaintiffs fail to even allege that the Challenged Orders amount to conduct actionable under substantive due process. The Complaint is devoid of allegations of outrageous or conscience-shocking conduct. Rather, throughout the Complaint, plaintiffs simply claim, in a conclusory manner, that the Challenged Orders are arbitrary and misguided.  See Compl. at ¶¶ 2, 7, 112, 125; 127. These allegations fall far short of those necessary to adequately plead a substantive due process claim.  "[Substantive due process] does not forbid governmental actions that might fairly be deemed arbitrary or capricious….. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Moreover, "government action that is simply 'incorrect or ill-advised' does not fall within the protection of the substantive due process clause."  Bimber's Delwood, Inc. v. James, 2020 U.S. Dist. LEXIS 195823 *39 (W.D.N.Y. Oct. 21, 2020) As the Complaint lacks sufficient allegations to set forth a viable substantive due process claim, the claim must be dismissed.

In any event, it is axiomatic that the City and State have a strong interest in stopping the spread of COVID-19 – indeed plaintiffs' concede as much. Pl. Memo at 17. All of the orders challenged herein are directly targeted at just that. See Point I (A), supra. Accordingly, they are not conscience-shocking.  See World Gym, 2020 U.S. Dist. LEXIS 131236 *12 (finding COVID-19 related order requiring gyms to close was not conscience-shocking); Page, 2020 U.S.

Dist. LEXIS 183769 *31, (finding COVID-19 related quarantine order was not conscience-shocking); Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580 at *17 ("the Court cannot say that the dining policy [put in place by COVID-19 E.O.s] shocks the conscience.")

C.      **Plaintiffs' Takings Claims Fail as a Matter of Law.**[7]

1.   **Plaintiffs Fail to State a Claim for a Physical Taking.**

The Fifth Amendment, made applicable to the States under the Fourteenth Amendment, prohibits the government from taking "private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 633 (2001). The Supreme Court has recognized two types of takings—physical and regulatory. See Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006). "A physical taking occur[s] when the government physically takes possession of an interest in property for some public purpose.") (internal quotations omitted); McCarthy, 2020 U.S. Dist. LEXIS 107195, at * 12; Elmsford Apt. Associates, LLC v. Cuomo, 2020 U.S. Dist. LEXIS 115354, at *20 (S.D.N.Y. June 29, 2020). By contrast, "[g]overnment action that does not entail a physical occupation, but merely affects the use and value of private property" is considered under the framework of regulatory takings. Elmsford, 2020 U.S. Dist. LEXIS 115354, at *20. That inquiry considers whether the burden imposed by the regulation has gone "too far," Pennsylvania Coal v. Mahon, 260 U.S. 393, 415 (1922), and is "tantamount to a direct appropriation or ouster," Lingle v. Chevron 544 U.S. 528, 537 (2005).

Plaintiffs assert that "Defendants' Orders and the enforcement thereof caused both a complete and total regulatory and physical taking of Plaintiffs' property without just compensation...." Pl Memo at 20. To the extent plaintiffs are asserting a physical takings claim,

---

[7] The standard applicable to takings claims under the U.S. and N.Y. constitutions is the same. See, e.g., Seawall Associates, 74 N.Y.2d at 92; Alexandre v. TLC, 2007 U.S. Dist. LEXIS 73642, at *35 (S.D.N.Y. Sept. 28, 2007).

plaintiffs must establish that "no set of circumstances" exist under which the Challenged Orders are valid.  Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 595 (2d Cir. 1993) (citing United States v. Salerno, 481 U.S. 739, 745 (1987)).  The Second Circuit has consistently held that this stringent standard applies in facial takings challenges.  See id.; Kittay v. Giuliani, 252 F.3d 645, 647 (2d Cir. 2001).  Paintiffs fail to plausibly allege that the Challenged Orders authorize a physical invasion of their property.

The Challenged Orders do not amount to a physical taking because there has been no physical occupation or invasion of plaintiffs' property by the government. Plaintiffs are free to operate their restaurants subject to the restrictions set forth in the Challenged Orders. Plaintiffs are doing so by offering indoor dining at 25% capacity and outdoor dining in accordance with established guidelines, as well as providing take-out and delivery services. Moreover, plaintiffs owning fitness studios are free to operate their businesses by conducting classes online.

Additionally, the court's decision in McCarthy v. Cuomo undermines plaintiffs' arguments that the restrictions imposed by the Challenged Orders amount to a physical taking. 2020 U.S. Dist. LEXIS 107195, at *12. In McCarthy, the court rejected a physical takings challenge to COVID 19 E.O.s made by the owner of an adult use establishment. The court found that there was no physical taking because "[n]o government officials have taken physical possession of any property belonging to [plaintiff] or [plaintiff's adult use establishment]." Id. at 12. Similarly, here, the government has not taken physical possession of any property belonging to plaintiffs. Because the Challenged Orders "merely regulate [Plaintiffs'] use of [their] land," without physical occupation by the government, any physical takings claim fails.  Auracle Homes LLC v. Lamont, 2020 U.S. Dist. LEXIS  141500, at * 36 (D. Ct. Aug. 7, 2020)(quoting Yee v. City of Escondido, Cal., 503 U.S. 519, 528 (1992).

## 2. Plaintiffs' Regulatory Takings Claims Fail as a Matter of Law.

Plaintiffs allege that "Defendants' Orders and the enforcement thereof caused both a complete and total regulatory [] taking of Plaintiff's property." PI Memo at 20. Regulatory action amounts to a regulatory taking only where it is "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." Lingle, 544 U.S. at 539.  There are two types of regulatory takings—categorical and non-categorical. "A categorical regulatory taking occurs in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'" See Elmsford, 2020 U.S. Dist. LEXIS 115354, at *25 (quoting Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002); Luke's Catering Serv., LLC, 2020 U.S. Dist. LEXIS 165907, at * 32. "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978)."  Additionally, the Second Circuit has repeatedly found that no taking exists when a plaintiff voluntarily participates in a highly regulated industry. Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 455 (2d Cir. 1995); Indeed, "[o]ne who chooses to engage in a publicly regulated business," such as the restaurant business, "by so doing surrenders his right to unfettered discretion as to how to conduct same." Alexandre v. TLC, 2007 U.S. Dist. LEXIS 73642, at *27 (S.D.N.Y. Sept. 28, 2007) (internal citations omitted).

### a. Plaintiffs' Categorical Regulatory Takings Claim Fails as a Matter of Law

Plaintiffs assert that the mandate allowing indoor dining at 25% capacity which was imposed by Challenged Orders deprives them of "significant, if not all, economically beneficial use of their businesses without just compensation." PI Memo at 19, Compl. ¶ 144

In order to successfully assert a categorical takings claim, plaintiffs must demonstrate that the Challenged Orders deny them "all economically beneficial or productive use of land." <u>McCarthy</u>, 2020 U.S. Dist. LEXIS 107195, at *13 (emphasis added). Plaintiffs simply cannot show that the economic value of their property was zero at any time during the COVID-19 pandemic because the Challenged Orders never mandated that restaurants or fitness studios in New York City completely close. Outdoor dining has been permitted since June 22, 2020, indoor dining has been permitted for periods at 25% capacity[8] and take-out and delivery service have been permitted throughout the pandemic. Additionally, plaintiff fitness centers were at all times during the pandemic permitted to operate classes online or outdoors. As plaintiffs are currently availing themselves of these opportunities, plaintiffs have not lost all economically beneficial use of their property. <u>See</u> <u>McCarthy</u>, 2020 U.S. Dist. LEXIS 107195, at *13 ("[t]he COVID-19 Executive Orders plainly do not deny [plaintiff] all economically beneficial use of his property. He could, for example, offer food and drinks from [the adult use establishment] for take-out or delivery."); <u>Luke's Catering</u>, 2020 U.S. Dist. LEXIS 165907, at *32-33 (no takings claim based on COVID-19 E.O.s because plaintiffs "admit that they are not precluded from <u>all</u> economically beneficial uses of their property")(emphasis in original). Accordingly, plaintiffs' categorical regulatory takings claim fails as a matter of law.

> **b.**  **Plaintiffs' Non-Categorical Regulatory Takings Claim Fails**

"Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in <u>Penn Central</u>…" <u>Sherman v. Town of Chester</u>, 752 F.3d 554, 564 (2d. Cir. 2014). Eschewing any "set formula" for judging regulatory takings claims, the <u>Penn Central</u> Court articulated three guideposts for evaluating

---

[8]  See  <u>https://newyork.cbslocal.com/2021/02/19/indoor-dining-can-increase-to-35-capacity-next-week-in-new-york-city/</u> (last accessed Feb. 22, 2021).

whether a regulation amounts to the functional equivalent of a physical appropriation: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) the "character of the governmental action," in particular "whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" Penn Central, 438 U.S. at 124. Applying the Penn Central factors here, plaintiffs have not shown that the Challenged Orders inflict "any deprivation significant enough to satisfy the heavy burden placed upon one alleging a regulatory taking." Elmsford, 2020 U.S. Dist. LEXIS 115354, at *27 quoting Keystone Bituminous Coal Ass'n v. DeBenedicitis, 480 U.S. 470, 493 (1987).

### i. Economic Impact of the Executive Shutdown Orders on Plaintiffs

Plaintiffs contend that "the economic impact on [them] has been a crisis in and of itself and not survivable absent the relief requested herein." PI Memo at 20. The economic impact of the Challenged Orders "can only qualify as a regulatory taking if [they] 'effectively prevent Plaintiff[] from making any economic use of [its] property.'" Elmsford, 2020 U.S. Dist. LEXIS 115354, at * 27 quoting Sherman, 752 F.3d at 565. And, "limitations on particular uses of property do not necessarily diminish significantly [a] property's value." Leb. Valley Auto Racing Corp. v. Cuomo, 2020 U.S. Dist. LEXIS 143223, at * 20 (N.D.N.Y. Aug. 11, 2020).

Plaintiffs do not, with any degree of specificity, quantify the exact economic impact that the Challenged Orders have had on plaintiffs. Plaintiffs merely allege that: "the economic impact on the Plaintiffs has been a crisis in and of itself and not survivable…;" and that plaintiffs "have all invested considerable sums in their business and each have a track record of years of returns that would make their projections and expectations of future returns reliable."

PI Memo at 20; Compl. at ¶ 147. Such bare-boned statements fail to demonstrate the degree of economic impact that the Challenged Orders have had on plaintiffs.

Additionally, plaintiffs cannot demonstrate that the Challenged Orders "effectively prevent [them] from making any economic use of [their property]." Elmsford, 2020 U.S. Dist. LEXIS 115354, at * 27 quoting Sherman v. Town of Chester, 752 F.3d 554, 565 (2d. Cir. 2014). Plaintiffs can, and are, making economic use of their property by continuing to offer: indoor dining at 25% capacity; outdoor dining pursuant to guidelines; take-out and delivery services; and online and outdoor fitness classes. Clearly, as plaintiffs still have a viable economic use of their property, they fall short of stating a non-categorical regulatory takings claim.

### ii. Plaintiffs Have Failed to Plead that the Challenged Orders Interfere with their Investment-Backed Expectations

Plaintiffs fail to adequately plead that the restrictions set forth in the Challenged Orders interfere with plaintiffs' reasonable investment-backed expectations. Plaintiffs come closest when they assert that they have "all invested considerable sums in their business and each have a track record of years of returns that would make their projections and expectations of future returns reliable . . . ." PI Memo at 20; Compl. at ¶ 147. However, this halt in plaintiffs' normal operations "is only temporary" and "plaintiffs do not allege that the applicable [COVID-19] Executive Orders will prevent them from ever realizing a financial return on their properties, or that the value of their property will be severely reduced." Leb. Valley, 2020 U.S. Dist. LEXIS 143223, at *21("[b]y omitting discussion of investment-backed expectations, 'the pleading fails to plausibly allege a taking under this factor.'")(quoting Kabrovski v. City of Rochester, 149 F. Supp. 3d 412, 425 (W.D.N.Y. 2015); Luke's Catering, 2020 U.S. Dist. LEXIS 165907, at * 33 (the COVID-19 executive orders "are temporary and do not preclude all economic use of Plaintiffs' property").

Furthermore, plaintiff restaurant owners voluntarily entered into the restaurant industry in New York City—a highly regulated industry—with full knowledge that the State and City heavily regulate all aspects of restaurant operation including but not limited to, issuance of various types of permits and licenses, mandatory restaurant inspections, and mandatory food worker safety trainings, and that these regulations could change at any time. See Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 455 (2d Cir. 1995). Plaintiffs' failure to adequately plead that the Challenged Orders interfere with their investment-backed expectations, warrants dismissal of their regulatory takings claims.

### iii. The Challenged Orders do not Unfairly Single-Out Plaintiffs.

The third prong of the Penn Central analysis focuses on whether the plaintiffs have been unfairly singled out or whether the challenged regulation "instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252, 264 (2d Cir. 2014) (internal quotation marks omitted). The character of the government action challenged in this action—i.e., the emergency response to a global pandemic which resulted in temporary restrictions being placed on plaintiffs' property for the overall protection of the common good—further undercuts plaintiffs' claim that a taking has occurred. Courts have recently held that the character of the government action in issuing the Challenged Orders to manage the COVID-19 pandemic is "a temporary and proper exercise of the police power to protect the health and safety of the community, which weighs against a taking." Luke's Catering, 2020 U.S. Dist. LEXIS 165907, at *34; Friends of Danny Devito v. Wolf, 227 A.3d 872, 895-896 (PA Sup. Ct. Apr. 13, 2020) (COVID-19 E.O.s "result[] in only a temporary loss of the use of the Petitioners' business premises, and the Governor's reasoning for imposing said restrictions

on the use of their property, namely to protect the lives and health of millions of Pennsylvania citizens, undoubtedly constitutes a classic example of the use of the police power to 'protect the lives, health, morals, comfort, and general welfare of the people[.]'") (quoting Maniqault v. Springs, 199 U.S. 473, 480 (1905)); Oregon Restaurant & Lodging Ass'n v. Brown, 2020 U.S. Dist. LEXIS 220414, at * 18 (D. Or. Nov. 24, 2020) (COVID-19 E.O.s are "not a physical invasion of property by the government but an emergency regulation promulgated to combat a worsening pandemic...") (internal citations omitted). Indeed, indoor dining with no masks and indoor group fitness classes carry some of the highest risk of virus transmission. Varma Dec., ¶ 34, 35-37. Furthermore, the restrictions placed upon plaintiffs' businesses by the Challenged Orders are only temporary. Further, the Challenged Orders were undoubtedly enacted to minimize the damaging effects of COVID-19 on the public and to protect the health and welfare of New York citizens.

**D.     Plaintiffs' Equal Protection Claim Fails[9]**

      The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, (1985).  See also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000) (purpose of the Equal Protection Clause is to secure against intentional and arbitrary discrimination).  As an initial matter, to the extent plaintiffs' Equal Protection claim rests on the categorization of businesses as either "essential" or "non-essential,"[10] or the distinction between

---

[9] Since plaintiffs' federal due process and equal protection claims fail for the reasons set forth in Points I (B) and (D), supra, the state claims should be dismissed for the same reasons. The equal protection clauses and due process guarantees of the United Stated and New York Constitutions are co-extensive.  See Burka v. N.Y. City Transit Auth., 680 F. Supp. 590, 603 (S.D.N.Y. 1988); McAdam v. Suffolk Cty. Police Dep't, 2017 U.S. Dist. LEXIS 117006, *15-16 (E.D.N.Y. 2017), 2017 WL 3206322, *6-7.

[10] Restaurants were deemed "Essential retail," but only for take-out and delivery.  Both the Complaint and PI Memo are devoid of any meaningful discussion as to how indoor dining at plaintiffs' restaurants or participating in an

how businesses are allowed to operate outside of New York City as opposed to inside New York City, their claim must be dismissed as against the City Defendants.  See Compl. at ¶¶ 112 ("Plaintiffs' businesses have been treated disparately from other businesses throughout the State"), 134, 135; PI. Memo at 17.  These classifications and distinctions are not attributable to Mayor de Blasio or the City. Rather, it is the State that has designated businesses as essential or non-essential, and permitted restaurants outside of New York City to operate at 50%. See Stip. at ¶¶ 9, 11, 16-7; Ex. G.

Notwithstanding that plaintiffs have not set forth an Equal Protection claim against the City Defendants, any such claim is not subject to heightened scrutiny. Plaintiffs provide no authority for their assertion that their Equal Protection claim is subject to strict scrutiny or that the Challenged Orders impinge on a fundamental right.  Compl. at ¶136; PI Memo 16-7.  "The right to pursue a 'livelihood' is not a fundamental right under the Equal Protection Clause." Aqua Harvesters, Inc., v. NYS Dep't of Envtl. Conserv., 399 F. Supp. 3d 15, 78 (E.D.N.Y. 2019) citing Dairy v. Bonham, 2013 U.S. Dist. LEXIS 103033 *18-9 (N.D. Cal. July 23, 2013).  COVID-19 related business restrictions have consistently been analyzed under rational basis review.  World Gym, Inc. v. Baker, 474 F. Supp. 3d 426, 432 (D. Mass. 2020)("[c]ourts reviewing business closures due to COVID-19 have consistently applied rational basis review" (collecting cases)).  Plaintiffs do not allege that they are members of a constitutionally protected class, they fail to adequately plead that they have been denied a fundamental right and do not allege that they were treated differently based on impermissible considerations (indeed plaintiffs acknowledge defendants' "laudable goals" and that the COVID

---

indoor, in-person group fitness class is in anyway similar to the services provided by other businesses designated as essential by the State. In any event, dining indoors at restaurants and participating in indoor fitness classes pose greater risks for spreading and contracting COVID-19, and accordingly, the State had a rational basis for not classifying them as essential.  Varma Dec. ¶¶ 34, 35-37.

19-related policies may be "well-intentioned." Compl. at ¶ 99; PI Memo at 9). Thus the only applicable analysis for plaintiffs' Equal Protection claim is pursuant to a class-of-one theory. See Plaza Motors of Brooklyn, Inc. v Cuomo, 2021 U.S. Dist. LEXIS 12726, *13 (E.D.N.Y. Jan. 22, 2021); Missere v. Gross, 826 F. Supp. 2d 542 (S.D.N.Y. 2011). To prevail on such a claim, a plaintiff must demonstrate that it was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc., 626 F.3d 135, 140 (2d Cir. 2010), quoting Vill. Of Willowbrook v. Olech, 528 U.S. at 564.

The "similarly situated" requirement is a strict one. To satisfy it, Plaintiffs must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. Clubside Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).

Essentially, they must be "prima facie identical" Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005) citing Purze v. Winthrop Harbor, 286 F.3d 452 (7th Cir. 2002); see also Fortress Bible Church v. Feiner, 694 F. 3d 208, 222 (2d Cir. 2012) (a successful "class-of-one" claim requires "an extremely high degree of similarity" between the plaintiff and the comparators).

Plaintiffs have failed to identify similarly situated comparators. Plaintiffs make a mere a passing reference to "public gatherings" in the Complaint, seemingly to serve as alleged comparators, and appear to argue that their Equal Protection claim is in part based on the different treatment afforded to in-house gatherings and the subway system, in addition to businesses categorized as essential and business located outside of New York City. Compl. at ¶¶

119;134-5; PI Memo at 18. These alleged comparators, however, are clearly not "prima facie identical" to restaurants and fitness studios. To support their claim, Plaintiffs were required, but failed to identify other restaurants or indoor fitness studios within New York City that have been subject to different treatment than plaintiffs by the City defendants. For that reason, their Equal Protection claim fails. See Plaza Motors of Brooklyn, Inc., 2021 U.S. Dist. LEXIS 12726, at *15 (holding that the correct comparator for plaintiff's automobile dealership within the red zone is other dealerships in the red zone, not dealerships outside of the red zone); see also Leb Valley Auto Racing Corp., 2020 U.S. Dist. LEXIS 143223 *14-5 Bimber's Delwood, Inc. v. James, 2020 U.S. Dist. LEXIS 195823 *48 (W.D.N.Y. Oct. 21, 2020).

Even assuming, arguendo, that Plaintiffs have satisfied the requirement that they are similarly situated to their comparators, Plaintiffs' class-of-one claim still fails because they have failed to meet their burden of refuting that a rational basis supports the different treatment. Capitol Pedicabs, LLC. v. City of New York, 2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017). To prevail on a class-of one-claim, a plaintiff must show that the official acts were "irrational and wholly arbitrary."  Inturri v. City of Hartford, 365 F. Supp. 2d 240, 252 (D. Conn., 2005). Indoor dining, in particular because it does not allow for mask wearing, and indoor, in-person group fitness classes, pose a heightened risk of COVID-19 transmission. Varma Dec. at ¶¶ 34-8; 41-6. Accordingly, the Challenged Orders have a rational basis. Furthermore, New York City's dense population and housing, as well as influx of students and travelers from outside of the City and country, increases the risk of transmission and distinguishes New York City from other parts of the State. See Varma Dec., at ¶ 27. Accordingly, there was a rational basis for treating restaurants inside of New York City differently than those in other parts of the State. See Tandon v. Newsom, 2021 U.S Dist. LEXIS 22499 *61-2 (N.D. Ca. Feb. 5, 2021).

## POINT II

### PLAINTIFFS CANNOT DEMONSTRATE THAT IRREPARABLE HARM IS IMMINENT

As plaintiffs' constitutional claims lack merit, the harm that plaintiffs claim to have incurred as a result of the Challenged Orders is conclusory, speculative and purely economic, and as such, insufficient for purposes of satisfying the "irreparable harm" requirement for a preliminary injunction. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York v. United States Dep't of Homeland Sec., 969 F. 3d 42, 86 (2d Cir. 2020), quoting New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015); Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580, at *22 ("Plaintiffs' injuries [from the restrictions on indoor dining] constitute monetary damages, which are not grounds for a Preliminary Injunction"); M. Rae, Inc., 2020 U.S. Dist. LEXIS 241961 *25 ("While we certainly appreciate that the temporary indoor-dining closures may have caused the owners of the plaintiff restaurants to experience both economic hardship and mental distress, that cannot alone justify injunctive relief, particularly in the absence of a strong showing on the merits."); Bocelli Ristorante Inc. et al v. Cuomo et al., 2020 N.Y. Misc. LEXIS 10213, at *14 (Sup. Ct. Richmond Cty. Nov. 6, 2020) (no irreparable harm due to COVID 19 orders because "without evidence of impending insolvency, it cannot be determined at this juncture that the damage cannot be rectified by financial compensation.")

## POINT III

### A BALANCE OF HARDSHIPS TIPS IN CITY DEFENDANTS' FAVOR.

Plaintiffs seek to enjoin the State's efforts to eradicate COVID-19, a disease which has led to over 500,000 deaths across the country. Such efforts are clearly in the public interest and serve to promote and protect the health of New Yorkers. As the Court noted in

Luke's Catering Serv., LLC, 2020 U.S. Dist. 165907, *36-37, "[w]eakening the State's response to a public health crisis by enjoining it from enforcing measures employed specifically to stop the spread of COVID-19 is not in the public interest."

More specifically, indoor dining presents known increased risks of transmission due to the fact that it takes place indoors and does not allow for mask wearing.  See Varma Dec. ¶¶35-37. Indeed, a study by the CDC in September 2020 found that one of the strongest risk factors for COVID-19 infection in the United States is eating in a restaurant. Id. at 37. Accordingly, the restrictions on indoor dining clearly promote the public interest in avoiding additional transmission of Covid-19 as well as further lockdowns.[11]  See Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580, at *22-25 ("public interest factor tip[s] heavily towards denying the preliminary injunction motion" because "[s]temming the spread of COVID-19 is unquestionably a compelling interest."); Columbus Ale House at 13 (finding that balance of equities tipped in favor of government in combatting COVID-19); M. Rae, Inc., 2020 U.S. Dist. LEXIS 241961 (M.D. Pa December 23, 2020)(declining to enjoin indoor dining ban); Phila. Rest. Owners Against Lockdown, LLC v. Kenney, 2020 U.S. Dist. LEXIS 220853 (E.D. Pa November 20, 2020)(declining to enjoin indoor dining ban).

Accordingly, as plaintiffs have failed to meet any of the requirements for the issuance of a preliminary injunction, their request for such relief must be denied.

---

[11] Similarly, while barely pled in the Complaint, it is well-established that indoor group fitness classes increase the risk of virus transmission. See Varma Dec., ¶ 34.

**<u>CONCLUSION</u>**

For all the reasons set forth herein, City defendants respectfully request that Plaintiffs' motion for a preliminary injunction be denied in its entirety and that the complaint be dismissed.

Dated:      New York, New York
            February 23, 2021


By:  *Kerri A. Devine* /s/

     *Samantha Schonfeld* /s/

Kerri A. Devine
Samantha Schonfeld
Assistant Corporation Counsels