```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
OUR WICKED LADY LLC (d/b/a "Our Wicked   :    21cv0165(DLC)
Lady"), et al.,                          :
                                         :    OPINION AND ORDER
                    Plaintiffs,          :
         -v-                             :
                                         :
ANDREW CUOMO, in his official capacity   :
as Governor of the State of New York;    :
STATE of NEW YORK; BILL de BLASIO, in    :
his official capacity as Mayor of New    :
York City; and THE CITY of NEW YORK,     :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES

For the Plaintiffs:
Kenneth Belkin
Kenneth Belkin, Esq.
225 Broadway
New York, NY 10007

For the State Defendants:
Matthew Conrad
New York State Office of the Attorney General
28 Liberty Street, 15th Floor
New York, NY 10005

For the City Defendants:
Kerri Devine
Samantha Schonfeld
NYC Law Department
100 Church Street Room 3-212
New York, NY 10007


DENISE COTE, District Judge:

   On January 8, 2021, the plaintiffs -- a group of 74 New

York City business, 69 of which are bars and restaurants --

filed this action against New York City (the "City"), Mayor Bill de Blasio ("Mayor de Blasio"), New York State (the "State"), and Governor Andrew Cuomo ("Governor Cuomo").  On February 5, the plaintiffs moved to preliminarily enjoin enforcement of New York State Executive Order ("EO") No. 202.93, which permitted at that time indoor dining at 25% capacity in the City, and New York City EO No. 144, which prohibits the reopening of indoor group fitness classes in the City.  The plaintiffs argue that the restrictions violate their rights under federal and state Due Process, Equal Protection, and Takings Clauses.  For the reasons that follow, the plaintiffs' motion for a preliminary injunction is denied.

## Background

The transmission of COVID-19 occurs through direct, indirect, or close contact with infected people through infected secretions such as saliva and respiratory secretions or their respiratory droplets, which are expelled when an infected person coughs, sneezes, talks, or sings.  COVID-19 has an incubation period of up to 14 days, and individuals who are infected with COVID-19 but are asymptomatic can transmit the virus.

On March 11, 2020, the World Health Organization characterized COVID-19 as a pandemic.  As of March 9, 2021, 2,604,487 people worldwide have been reported as dying of COVID-

19, and 526,020 in the United States.[1]  The City was an epicenter of the pandemic when it appeared in this country.  The State announced the first known case of COVID-19 in the City on March 1, 2020.  As of March 9, 2021, the City had reported 755,261 positive cases of COVID-19, as well as 93,132 hospitalizations, 24,842 confirmed deaths, and 5,024 probable deaths stemming from the novel virus.[2]

I.   Executive and City Orders

On March 7, 2020, Governor Cuomo issued EO 202, which declared a State of Emergency in the State based on the threat of COVID-19.  On March 12, Mayor Blasio declared a state of emergency in the City.

Between March 15 and March 20, 2020, Governor Cuomo and Mayor de Blasio issued a series of orders that collectively suspended on-premises service of food and beverages in all bars and restaurants, closed all non-essential businesses, and prohibited non-essential gatherings of individuals of any size

---

[1] See Johns Hopkins Coronavirus Resource Center, COVID-19 Dashboard, available at https://coronavirus.jhu.edu/map.html (last accessed March 9, 2021).

[2] COVID-19: Data, New York City Health, available at https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page (last accessed March 9, 2021).  The Court may take judicial notice of "relevant matters of public record."  See Giraldo v. Kessler, 694 F.3d 161, 163 (2d Cir. 2012); see also Rule 201(b), Fed. R. Civ. P. (permitting judicial notice of facts "not subject to reasonable dispute").  Throughout this Opinion, the Court relies on public health statistics reported by the City.

for any reason.  Restaurants were deemed essential businesses only for the purpose of take-out and delivery.  EO 202.3 permitted bars and restaurants to sell alcoholic beverages through take-out or delivery.

Beginning around May 11, Governor Cuomo announced a plan to begin reopening the State through a series of "phases."  In regions of the State that entered "Phase 3," restaurants were permitted to resume indoor dining at 50% capacity beginning June 12.  The City became a Phase 3 region on July 6 and a Phase 4 region on July 20.

On August 20, EO No. 202.57 permitted gyms and fitness centers -- which had been closed as of March 20 -- to reopen at 33% capacity beginning on August 24.  City officials, however, were permitted to determine whether gyms and fitness centers in the City could reopen.  On August 31, Mayor de Blasio issued New York City EO No. 144, which permitted the reopening of gyms and fitness centers but prohibited indoor group fitness classes.

On September 9, Governor Cuomo issued EO 202.61, which allowed "indoor food services and dining in New York City beginning September 30, 2020, as long as Department of Health and any other applicable State-issued guidance is strictly adhered to."  The New York State Department of Health subsequently issued guidance that allowed restaurants and bars in the City to open for indoor dining at 25% capacity.

From September to December, rates of COVID-19 in the State and the City rose dramatically. On December 11, Governor Cuomo issued EO 202.81, which suspended authorization of indoor dining at restaurants and bars in the City. These restrictions became effective on December 14.

On January 29, 2021, Governor Cuomo announced that indoor dining at restaurants and bars in the City could resume on February 14 at 25% capacity. This date was soon moved up to February 12. A 50% maximum occupancy requirement remains in effect in jurisdictions outside the City. On February 19, Governor Cuomo announced that the occupancy limits on restaurants and bars in the City would increase to 35%, effective February 26.[3]

II.   Procedural History

On January 8, 2021, the plaintiffs initiated this action, alleging that the restrictions on food, drink, and indoor fitness establishments set forth in Executive and City Orders beginning March 7, 2020 violate the plaintiffs' rights under to the Due Process, Equal Protection, and Takings Clauses of the U.S. and New York Constitutions. On January 12, an initial pretrial conference was scheduled for February 26.

---

[3] Indoor Dining Can Increase to 35% Capacity Next Week in New York City, CBS New York (Feb. 19, 2021), available at https://newyork.cbslocal.com/2021/02/19/indoor-dining-can-increase-to-35-capacity-next-week-in-new-york-city/.

5

On February 5, 2021, the plaintiffs filed a motion to preliminarily enjoin enforcement of State EO 202.93, which limited indoor dining in the City to 25% capacity, and City EO No. 144, which prohibits the reopening of indoor group fitness classes the City.  In support of their motion, they submitted declarations from a large number of plaintiffs.  Pursuant to a schedule set during a telephone conference held on February 9, the defendants filed their opposition on February 23.  A reply was to be submitted by February 26.

The State's opposition brief is supported by a declaration of Emily C. Lutterloh, M.D., MPH, the Acting Director of Epidemiology at the New York State Department of Health.  The City submitted relevant State and City Executive Orders.

The plaintiffs did not submit a reply on February 26, but did request an opportunity to cross examine Dr. Lutterloh. Following a telephone conference on March 2, the plaintiffs filed a reply on March 5 and withdrew their request to cross examine Dr. Lutterloh.

## Discussion

When a preliminary injunction will "affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor

of granting the injunction."  Agudath Israel of Am. v. Cuomo, 983 F.3d 620, 631 (2d Cir. 2020) (citation omitted).  See also New York v. United States Dep't of Homeland Sec., 969 F.3d 42, 58-59 (2d Cir. 2020).  Additionally,

> where the movant is seeking to modify the status quo by virtue of a mandatory preliminary injunction (as opposed to seeking a prohibitory preliminary injunction to maintain the status quo) or where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits, the movant must also: (1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits.

Yang v. Kosinski, 960 F.3d 119, 127-28 (2d Cir. 2020) (citation omitted).  This more demanding standard applies here; the motion seeks a mandatory preliminary injunction and, if granted, will obtain relief that cannot be undone.

    I.    Likelihood of Success on the Merits

Over a century ago, the U.S. Supreme Court stated that "a community has the right to protect itself against an epidemic of disease which threatens its members."  Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 27 (1905).  As a result, "the legislature has the right to pass laws which . . . are adapted to prevent the spread of contagious diseases."  Id. at 35.  In such times, judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting "the public health, the public morals, or the public

safety," or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  Id. at 31.

When government officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad."  S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (citation omitted).  See also Marshall v. United States, 414 U.S. 417, 427 (1974).  As explained by the Supreme Court when confronted with a public health crisis, a "court would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, and not justified by the necessities of the case."  Jacobson, 197 U.S. at 28.

Federal courts across the country have upheld state and local COVID-19 restrictions based upon the Supreme Court's analysis in Jacobson.[4]  See McCarthy v. Cuomo, No. 20-CV-2124 (ARR), 2020 WL 3286530, at *3 (E.D.N.Y. June 18, 2020) (collecting cases).  So to have federal courts in New York, see Hopkins Hawley LLC v. Cuomo, No. 20-CV-10932 (PAC), 2021 WL

---

[4] The applicability of Jacobson in the context of the Free Exercise Clause of the First Amendment has recently been called into question.  See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70 (2020) (Gorsuch, J, concurring).

465437, at *4 (S.D.N.Y. Feb. 9, 2021) (collecting cases), and state courts in New York State.  See, e.g., Bocelli Ristorante Inc. v. Cuomo, No. 151500/2020, 2020 WL 7038722 (N.Y. Sup. Ct. Nov. 6, 2020) (restaurant owner challenging 25% capacity limits).[5]  The plaintiffs have not shown a likelihood of success on the merits of any of their claims, much less a clear and substantial likelihood of success.

    A.  Substantive Due Process

    The Due Process Clause of the Fourteenth Amendment "embodies a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them."  Bryant v. New York State Educ. Dep't, 692 F.3d 202, 217 (2d Cir. 2012) (citation omitted).  Substantive due process protects against government action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised."  Cunney v. Bd. of Trustees of Village

---

[5] The guarantees under the Due Process, Equal Protection, and Takings Clauses of the U.S. Constitution and the New York Constitution are coextensive.  See Am. Econ. Ins. Co. v. State, 30 N.Y.3d 136, 157–58 (2017); Oneida Indian Nation of New York v. Madison Cty., 665 F.3d 408, 427 n.13 (2d Cir. 2011); Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY, 945 F.3d 83, 110 n.211 (2d Cir. 2019); Seawall Assocs. v. City of New York, 74 N.Y.2d 92, 115–16 (1989).  As a result, this Opinion merges the analysis of the plaintiffs' federal and state claims.

of Grand View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011) (citation omitted).

"In examining whether a government rule or regulation infringes a substantive due process right, the first step is to determine whether the asserted right is fundamental." Bryant, 692 F.3d at 217.  "[A] law that impermissibly interferes with the exercise of a fundamental right . . . is reviewed under the strict scrutiny standard." Dandamudi v. Tisch, 686 F.3d 66, 72 (2d Cir. 2012).  See also Leebaert v. Harrington, 332 F.3d 134, 140 (2d Cir. 2003).  A fundamental right is not implicated "every time a governmental regulation intrudes on an individual's liberty." Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 463 (2d Cir. 1996).  Indeed, "the right to conduct a business, or to pursue a calling, may be conditioned." New Motor Vehicle Bd. of California v. Orrin W. Fox Co., 439 U.S. 96, 107 (1978) (citation omitted).  See also Conn v. Gabbert, 526 U.S. 286, 292 (1999); Williamson v. Lee Optical of Oklahoma Inc., 348 U.S. 483, 488 (1955).

When the right asserted is not fundamental, courts consider whether the government action at issue is "rationally related to a legitimate state interest." Grand River Enterprises Six Nations, Ltd. v. Boughton, No. 20-1044-CV, 2021 WL 416414, at *4 (2d Cir. Feb. 8, 2021) (citation omitted).  "Rational basis review is not a post-hoc test of the effectiveness of a

legislative policy." Id. at *5.  Rather, courts examine "whether, at enactment, there is a rational link between the harm a statute is intended to remedy and the method by which a legislature chooses to address it."  Id.

The plaintiffs have not asserted an infringement of a fundamental right.  Under the State and City orders, the plaintiffs may continue to operate their businesses through in-person dining with certain capacity limits and may conduct other aspects of their business, including take-out and delivery services.  Similarly, fitness centers may open but may not hold indoor fitness classes.  The challenged orders are a temporary response to an evolving public health crisis.  As a result, rational basis review applies to the challenged orders.

Applying rational basis review, the plaintiffs are unlikely to succeed in their substantive due process claims.  They are unlikely to show that there is no rational link between limiting the number of people in enclosed spaces and the harm posed by the COVID-19 pandemic.  COVID-19 is spread through close contact with infected individuals, including those who are asymptomatic.  It is rational for the government to limit the number of individuals in close contact in enclosed spaces to avoid the spread of the virus.  Under the rational basis review and Jacobson, courts must defer to the government's determination that at this particular stage of the pandemic only a particular

11

density of people in an enclosed space is safe.  This Court may not arbitrarily decide that 50% capacity limits are better today than the 25% challenged by this motion or the 35% limits now in effect for restaurants.  Indeed, in defining the relief they seek -- 50% capacity limits -- the plaintiffs in effect acknowledge that these are extraordinary times, that the health crisis is serious, and that limits are necessary.  The setting of the appropriate limits for the City is not up to the plaintiffs or a court -- it is up to the duly elected representatives of citizens.

The plaintiffs make several arguments in opposition. First, they argue that strict scrutiny applies to this inquiry because the right to pursue any lawful calling is fundamental. As explained above, the government may regulate businesses without triggering strict scrutiny of its regulations.

Additionally, the plaintiffs argue that the challenged orders are not rationally related to the harm the orders seek to remedy because areas outside of the City have higher capacity restrictions on restaurants.  This fact does not suggest that the plaintiffs are likely to succeed in meeting their burden at trial.  Different cities, counties, and states across the country employ unique standards to battle the spread of COVID-19.  No national standard exists.  And, as is evident in the regulations that have controlled capacity limits within the

City, those standards shift over time.  As a result, courts must defer to the government's determination of measures necessary in a particular locale at a particular time to combat the virus so long as those measures are rationally related to that goal.

Finally, the plaintiffs argue that the challenged orders are not rationally related to preventing the spread of COVID-19 because the most significant source of the spread of COVID-19 is unregulated gatherings inside people's homes.  Even if this is true, a government's efforts to combat the spread of disease are not confined by law to only those efforts that are aimed at the most significant source of infection.  A government may pursue multiple paths to curb transmission of the virus.  The plaintiffs have not demonstrated a likelihood of demonstrating that capacity limits in restaurants are unrelated to reducing transmission of COVID-19.

B. Procedural Due Process

The Due Process Clause requires that "No state shall . . . deprive any person of . . . property, without due process of law."  U.S. Const, amend. XIV.  See also N.Y. Const. art. I, § 6.  But "official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause."  Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 174 (2d Cir. 2005) (citation omitted). Government action is legislative in nature when it has "general

13

application and look[s] to the future." Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 143 (2d Cir. 1994). "The test for determining whether official action is adjudicative or legislative focuses on the function performed by the decisionmaker, not on the method of selecting the decisionmaker or on the form in which the decision is announced." RR Vill. Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1204-05 (2d Cir. 1987).

The plaintiffs have not shown that they are likely to succeed in their procedural due process claims. The challenged orders are legislative in nature because they apply prospectively to all restaurants and fitness centers in the City. As a result, the orders are not subject to the notice and hearing requirements that apply to adjudicative functions of government.

The plaintiffs argue that the orders are not legislative because they come from the executive branch. This is not the test to determine whether an official action is legislative in nature. See RR Vill, 826 F.2d at 1205 (policy decision by executive agency is legislative in nature).

C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

14

Amend. XIV.  The Equal Protection Clause "embodies a general rule that States must treat like cases alike, but may treat unlike cases accordingly."  Winston v. City of Syracuse, 887 F.3d 553, 560 (2d Cir. 2018) (quoting Vacco v. Quill, 521 U.S. 793, 799 (1997)).  "If a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  Id. (citation omitted).  "The party attacking a classification's rationality bears the burden to [negate] every conceivable basis which might support it." Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 136 (2d Cir. 2013) (citation omitted).

The challenged orders do not burden a fundamental right or target a suspect class.  The rationale basis test applies, and, as explained, the orders bear a rational relationship to the goal of preventing the spread of COVID-19.  The plaintiffs' arguments that the government singled them out based on their geographic location and deemed them "non-essential" does not change the analysis under rational basis review.

D. The Takings Clause

The Fifth Amendment's Takings Clause provides that private property shall not "be taken for public use, without just compensation."  U.S. Const. Amend. V.  "The law recognizes two species of takings: physical takings and regulatory takings."

15

Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006). "Physical takings . . . occur when the government physically takes possession of an interest in property for some public purpose." Id.

"A regulatory taking . . . occurs where even absent a direct physical appropriation, governmental regulation of private property goes too far and is tantamount to a direct appropriation or ouster." 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252, 263 (2d Cir. 2014) (citation omitted). There are also two types of regulatory takings: categorical and non-categorical. Sherman v. Town of Chester, 752 F.3d 554, 564 (2d Cir. 2014). A categorical taking occurs when "a regulation . . . denies all economically beneficial or productive use of land." Murr v. Wisconsin, 137 S. Ct. 1933, 1937, (2017) (citation omitted). A non-categorical taking may result from "[a]nything less than a complete elimination of value, or a total loss." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 330 (2002). In that case, "a taking may be found based on a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Murr, 137 S. Ct. at 1937 (citation omitted). Plaintiffs attempting to establish a regulatory

16

taking bear a "heavy burden."  Buffalo Tchrs. Fed'n, 464 F.3d at 375.

The plaintiffs have not shown that their Takings Clause claims are likely to succeed.  The government has not physically occupied the plaintiffs' establishments.  Additionally, the plaintiffs cannot establish a categorical taking because they may still operate their businesses at a limited capacity and through the take-out and delivery of food and beverage.

Finally, while the challenged orders have undoubtedly interfered greatly with the plaintiffs' financial expectations and taken an enormous economic toll, the character of the government action weighs heavily against finding a taking.  The restrictions are temporary, see Buffalo Tchrs. Fed'n, 464 F.3d at 375 (temporary nature of wage freeze weighed against finding it a regulatory taking), are negative restrictions, and are not "affirmative exploitation by the state."  Id.  The "nature of the state's action is uncharacteristic of a regulatory taking."  Id.  Finally, the interference with the plaintiffs' property rights "adjusts the benefits and burdens of economic life to promote the common good."  Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 225 (1986).  Actions like those taken through these orders, which are undertaken to address a global pandemic, do not constitute a regulatory taking.

17

II.  Irreparable Harm

"Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."  New York v. United States Dep't of Homeland Sec., 969 F.3d 42, 86 (2d Cir. 2020) (citation omitted).  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).  Irreparable harm may be found "where there is a threatened imminent loss that will be very difficult to quantify at trial."  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995).  Loss of consumer goodwill can constitute irreparable harm.  Id.  But, where "the alleged loss of goodwill [i]s doubtful" and lost profits are calculable "by past sales of [a] product and of current and expected future market conditions," courts will generally not find irreparable harm.  Id. (citation omitted).

The plaintiffs have not made the necessary strong showing of irreparable harm.  To fill this gap, the plaintiffs argue that there exists a presumption of irreparable harm where the violation of a constitutional right is alleged.  See Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996).  But this Opinion holds that the plaintiffs are unlikely to succeed on their

claims of constitutional violations. It should be noted again that current capacity limits are temporary; they have even shifted during the briefing of this motion. The plaintiffs may continue to operate their businesses under the evolving limits.

III. Balance of the Equities and Public Interest

"Where, as here, the government is a party to the suit, the final two factors [of the preliminary injunction standard] merge." New York, 969 F.3d at 58-59. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury[,]" particularly where there would be "an ongoing and concrete harm to . . . public safety interests." Maryland v. King, 567 U.S. 1301, 1303 (2012) (citation omitted).

The balance of the equities and the public interest weigh heavily in the defendants' favor. The citizens of the City of New York face an unprecedented and ongoing threat to public safety. Granting this injunction would give the plaintiffs all the relief they seek at great risk to public health.

## Conclusion

The plaintiffs' February 5, 2021 motion for a preliminary injunction is denied.

Dated:   New York, New York
         March 9, 2021

_____
DENISE COTE
United States District Judge