UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**OUR WICKED LADY LLC,**
(d/b/a "Our Wicked Lady"), *et al.*,

        Plaintiffs,

    -against-

**ANDREW CUOMO,** in his official capacity as Governor
of the State of New York; **STATE of NEW YORK;**
**BILL de BLASIO**, in his official capacity as Mayor of
New York City; and **THE CITY of NEW YORK,**

        Defendants.
-------------------------------------------------------------------X

**CASE NO.: 1:21-cv-165**

Electronically Filed

Hon. Denise L. Cote

## <u>MEMORANDUM OF LAW IN OPPOSITION TO<br>CITY-DEFENDANTS' CROSS MOTION TO DISMISS</u>

Kenneth E. Belkin, Esq. (KB-0080)
225 Broadway, Suite 715
New York, New York 10007
c: (718) 724-3466
f: (212) 566-8165
e: kb@belkinlaw.com
*Attorney for Plaintiffs*
Our Wicked Lady LLC, *et al.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………….…………………………….……….....4

FACTUAL BACKGROUND …..……………………………….…………………....……...4

STANDARD OF REVIEW …..……………………………………..…...……..……....5

I.  The Jacobson Standard ……………………………………...……..……….....6

II.  Strict Scrutiny Applies To Fundamental Rights ……………………….……….....7

III.   Due Process Claims ………………………………………………….....9

IV.  Takings Clause Claims …………………………………....………..…11

V.   Equal Protection Claims …………………………………………………12

VI.  Element Of Irreparable Harm Is Satisfied …………………………….……….12

VII. Balance Of Equities & The Public Interest Favors Plaintiffs ……………………….13

CONCLUSION ……………………………………………..………..……....15

# **TABLE OF AUTHORITIES**

*Allgeyer v. Louisiana*,
165 U.S. 578 (1897) …………………………………………………..……………..7

*Bell Atlantic Corp. v. Twombly*,
570, 127 S.Ct. 1955 (2007) ……………………………………………….………5

*Board of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) ………………………………………………………………...9

*Connecticut ex rel. Blumenthal v. Crotty*,
346 F.3d 84, 95, (2d Cir. 2003) …………………………………………..………7

*Covino v. Patrissi*,
967 F.2d 73, 77 (2d Cir 1992) ……………………………………………….…...13

*Evergreen Ass'n, Inc. v. City of New York*,
740 F.3d 233, 246 (2d Cir 2014)

*Global Network Communications Inc. v. City of New York*,
458 F.3d 150 (2d. Cir. 2006) …………………………………………...………5

*Griswold v. Connecticut*,
381 U.S. 479, (1965) ………………………………………………….……...10

*Immediato v. Rye Neck School Dist.*,
73 F.3d 454, 460-61 (2d Cir. 1996) ……………………………………..……..7

*Immediato v. Rye Neck School Dist.*,
519 U.S. 813 (1996) …………………………………………………...………7

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905) ………………………………………………………….6

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir 1996) …...……………………………………………...13

_Johnson v. Glick_,
481 F.2d 1028, 1033 (2d Cir. 1973) …………………………………………………………10

_Johnson v. Glick_,
414 U.S. 1033 (1973) ……………………………………………………………..….10

_Leebaert v. Harrington_,
332 F.3d 134, 140 (2d Cir. 2003) …………………………………………………..…..8

_Loretto v. Teleprompter Manhattan CATV Corp._,
458 U.S. 419 (1982) ………………………………………………………………....8

_Lucas v. South Carolina Coastal Council_,
505 U.S. 1003 (1992) ……………………………………………………………....…11

_Madera v. Bd. of Educ. of City of N.Y._,
386 F.2d 778, 784 (2d Cir. 1967) …………………………………………..……………..7

_Meyer v. Nebraska_,
262 U.S. 390, 399 (1923) ………………………………………………………….9

_Mitchell v. Cuomo_,
748 F.2d 804, 806 (2d Cir. 1984) ………………………………………………...13

_Pennsylvania Coal Co. v. Mahon_,
260 U.S. 393 (1922) …………………………………………………………11

_Reno v. Flores_,
113 S.Ct. 1439 (1993) …………………………………………………….…8

_Rochin v. California_,
342 U.S. 165 (1952) ……………………………………………………...….…..10

_Roman Catholic Diocese of Brooklyn v. Cuomo_,
141 S.Ct. 63 (2020) ……………………………………………..…………..6

_United States v. Peewee Coal Co._,
341 U.S. 114 (1951) ……………………………………………..…………11

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum of Law in Opposition to the City Defendants' Cross Motion to Dismiss.  Plaintiffs herein are seventy-four (74) businesses located within the City of New York.  They are predominantly engaged in the hospitality industry, including the restaurant, bar and cafe businesses. Several of the Plaintiffs are engaged in the personal fitness industry, including martial arts and yoga studios, which have not been able to reopen since the Defendants' Orders, as outlined in the Complaint, went into effect.  Plaintiffs have borne the financial cost of this crisis and waited for help from the government, while their savings ran dry, they incurred debts and they now face permanent closure.  Plaintiffs are asking for the ability to help themselves by being allowed to work in the absence of these most severe restrictions, which prevent them from earning a livelihood.

## FACTUAL BACKGROUND

According to New York State's contact tracing data, released by the State Defendants on December 11th, 2020, the number one source of the spread is in home gatherings, which accounts for 74% of new cases of COVID 19.  The second largest source of the spread came from healthcare facility visits, which accounts for 7.8% of new cases of COVID.  Restaurants and bars, which make up the majority of the Plaintiffs, only account for 1.4% of new cases of COVID 19, as per State Defendants' own data.[1]  That same data also points to a transmission rate of .06% in Gyms, which covers the fitness industry Plaintiffs.[2]   Despite Plaintiffs making up

---

[1] "Restaurants and Bars Account for Less Than 2 Percent of New COVID-19 Cases in New York" Collarosi, Natalie, *News Week,* December 11, 2020 <https://www.newsweek.com/restaurants-bars-account-less-2-percent-new-covid-19-cases-new-york-1554206>

[2] "What is Driving the Spread of COVID-19 in New York?" *Office of the Governor*, December 11th, 2020 <https://spectrumlocalnews.com/nys/central-ny/ny-state-of-politics/2020/12/11/what-new-york-s-contact-tracing-data-show>

such a small percentage of the rate of transmission of COVID 19 in the State of New York, they find themselves subject to the most severe use of the State's police powers.

## STANDARD OF REVIEW ON A MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. RULE 12(B)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." See *Bell Atlantic Corp. v. Twombly* at 570, 127 S.Ct. 1955 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955 (2007). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (2007).

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." See *Global Network Communications, Inc. v. City of New York,* 458 F.3d 150 (2d Cir. 2006).

Plaintiffs have plead multiple violations of both U.S. and N.Y.S. constitutions and done so great specificity.    Plaintiffs have certainly met the "plausibility" standard laid out on *Twombly*, with the exception of the Equal Protection claims against the City Defendants, which is conceded below.

5

I.       **THE *JACOBSON* STANDARD**

Defendants point to the rationale for these restrictions as rooted in the ruling in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).  The rationale behind *Jacobson* has been questioned recently by the Supreme Court in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020).   *Jacobson* pre-dated the modern tiers of scrutiny and the Supreme Court essentially applied rational basis review.  Mr. Jacobson challenged a state law, which required individuals to take a vaccine, pay a $5 fine or establish a qualified exemption.  This law was enacted in response to an ongoing smallpox pandemic.

First, the instant matter is factually distinguishable from *Jacobson* insofar as there were opt-outs available to the public should they not want to comply.  The Plaintiffs here have no choice but to comply under threat of criminal sanctions.  Here, the Defendants have effectively and severely restricted the Plaintiffs' industries in certain zones, namely New York City, whenever the Defendants order it and for as long as they so choose.  *Jacobson* does not address or otherwise signal approval for such serious and enduring intrusions into settled constitutional rights.

Second, the test used in *Jacobson* was one of "reasonableness" *id.*, at 27, 25 S.Ct. 358 (1905).  The test applied was whether the law was reasonable under the circumstances.  Justice Gorsuch addresses the standard of review used in *Jacobson* in his concurrence in *Roman Catholic Diocese of Brooklyn v. Cuomo*: "Rational basis review is the test this Court *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." This case involves a fundamental right, thus the standard in *Jacobson* is not the proper standard to apply.

## II.      STRICT SCRUTINY APPLIES TO FUNDAMENTAL RIGHTS

Defendants argue that rational basis is the appropriate level of review to apply in this case, however, we are dealing with a fundamental right in this matter -the right to earn a livelihood by "any lawful calling."  *See Allgeyer v. Louisiana*, 165 U.S. 578 (1897) (holding that "the 'liberty' mentioned in th[e] [Fourteenth Amendment] ... is deemed to embrace the right of the citizen ... to earn his livelihood by any lawful calling"); *also*, *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95, (2d Cir. 2003) (noting that "the right to pursue a lawful calling has long been recognized as a fundamental right" and citing *Allgeyer*); *also*, *Madera v. Bd. of Educ. of City of N.Y.*, 386 F.2d 778, 784 (2d Cir. 1967) (quoting *Allegeyer*'s recognition that the Fourteenth Amendment protects one's ability "to earn his livelihood by any lawful calling; [and] to pursue any livelihood or avocation").

At its core, this case is about Plaintiff's right to pursue their lawful business without such severe and enduring restrictions, which constrain their ability to do so at a financially survivable capacity.   The current restrictions we are requesting be enjoined, are an infringement on this fundamental right.

"Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Immediato v. Rye Neck School Dist.*, 73 F.3d 454, 460–61 (2d Cir. 1996), *cert. denied,* 519 U.S. 813 (1996). Where the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation. *Id.* at 460 (citing *Reno v. Flores*, 113 S.Ct. 1439 (1993)).

State action that infringes upon a fundamental right is ordinarily analyzed under the test of strict scrutiny. See *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (observing that

"[w]here the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation"). Under that test, the challenged action "must be narrowly tailored to promote a compelling Government interest," and "must use the least restrictive means to achieve its ends." See *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014).

Because we are dealing with a fundamental right, strict scrutiny is triggered. As such, the compelling state interest in this case is to halt and/or contain the spread of a vicious pandemic, COVID 19, so it does not overwhelm our public healthcare infrastructure. In the process of pursuing that interest, the restrictions placed on Plaintiffs' have been so severe and enduring that after almost one (1) year of restrictions, Plaintiffs' businesses have reached a breaking point (demonstrated by the Declarations of a significant portion of the Plaintiffs). Their ability to earn a living has been compromised, this is not merely a loss of profits. Their very survival is threatened.

Plaintiffs operate in New York City, which has high overhead costs. Given this, Plaintiffs cannot survive after a year of their capacities slashed by 65% and more. Nor can they just pivot to other revenue generating methods to make up this loss. Plaintiffs rely on the ability of the public to gather in their spaces, even at reduced capacities, but not capacites so far reduced from neighboring jurisdictions. There are less restrictive means of accomplishing the compelling state interest in this case, to reduce the capacity cap to 50%. The counties surrounding New York City are open at 50%. On March 4th, 2021, the neighboring State of Connecticut announced it will lift all capacity restrictions on businesses such as Plaintiffs on March 19th, 2021.[3]   These

---

[3] "Connecticut dramatically rolls back COVID restrictions, allowing full indoor dining, increased entertainment and sports capacity; travel ban lifted" Brindley, Emily, *Hartford Courant* March 4, 2021
<https://www.courant.com/coronavirus/hc-news-coronavirus-daily-updates-0304-20210304-56d7cbx6k5da7auqqroznhhdfa-story.html>

restrictions create situations where a few hundred feet makes the difference between a business being subject to different rules.[4]

## III.    DUE PROCESS CLAIMS

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." See _Board of Regents of State Colleges v. Roth_, 408 U.S. 564 (1972).

With respect to the liberties enshrined in the Fourteenth Amendment, the Supreme Court has stated: "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the **common occupations of life**...and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." See _Meyer v. Nebraska_, 262 U.S. 390, 399 (1923).

The Plaintiffs' businesses surely fall under the protected interests encompassed by their procedural due process rights.  City Defendants maintain because the Defendants' Orders are "legislative in nature" that they are not entitled to notice and a hearing on their deprivation of said interests.  Defendants' actions are not legislative, they are actions of the executive branch, under limited legislative authority.  The restrictions in question are the result of executive orders enacted by Defendants with little to no prior notice.  When the legislature takes action, there is a period of debate and then a vote.  This deliberative period allows for the public to comment and in some cases lobby their elected officials for a particular outcome.

---

[4] "'Unfair' indoor dining rules send Queens patrons to Nassau: lawsuit" DeGregory, Priscilla, _New York Post_ August 31, 2020, <https://nypost.com/2020/08/31/indoor-dining-rules-send-queens-patrons-over-to-nassau-lawsuit/>

Legislative action engenders public discourse, allowing for differing sides to be fairly heard and for their points of view to be duly considered.  There was no debate and no opportunity for Plaintiffs to be heard, as there would be with a genuine legislative action.  The absence of this constitutes a violation of Plaintffs' procedural due process rights.

Further, City Defendants cite a string of decisions for support for their argument from the Western District of New York and the Southern District of Ohio, among others, which are all non binding on this Court.

The substantive due process guarantee protects against government power arbitrarily and oppressively exercised. Due process protection in the substantive sense limits what the government may do in both its legislative, see, *e.g., Griswold v. Connecticut,* 381 U.S. 479,(1965), and its executive capacities, see, *e.g., Rochin v. California,*342 U.S. 165 (1952).

The substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." See *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973).

Here we have a series of executive Orders that have wrought a financial apocalypse across the City of New York that some estimate may take it decade to recover from.[5]  Many jurisdictions took a different approach and the results have not been nearly as catastrophic. Plaintiffs' contend that the disregard shown the business community and its legitimate interests during this crisis should shock the conscience, as we are effectively rubber stamping the ability

---

[5] "New York City may take a decade to recover from coronavirus pandemic, says developer Don Peebles" Stankiewicz, Kevin, *CNBC* August 21, 2020 <https://www.cnbc.com/2020/08/21/don-peebles-new-york-city-may-take-decade-to-recover-from-coronavirus.html>

of Defendants to cripple the economy in their jurisdiction without any recourse available to those who stand to lose everything they have worked for.  Many jurisdictions have struck a balance between protecting lives and livelihoods that has not included the widespread economic damage being done to New York City and more specifically to Plaintiffs.

IV.     **TAKINGS CLAUSE CLAIMS**

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property. See, *e.g., United States v. Pewee Coal Co.,* 341 U.S. 114 (1951) . Beginning with *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393 (1922), however, the Court recognized that government regulation of private property may be so onerous that its effect is tantamount to a direct appropriation or ouster. Regulatory actions generally will be deemed *per se* takings for Fifth Amendment purposes (1) where government requires an owner to suffer a permanent physical invasion of her property, see *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982); or (2) where regulations completely deprive an owner of "*all* economically beneficial us[e]" of her property, *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992).

With respect to a physical taking, the Supreme Court has held that where the government requires an owner to suffer a permanent physical invasion of their property—however minor—it must provide just compensation. See *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982).  In the instant matter a physical taking is occurring.  Plaintiffs are restricted from using 65% of their occupancy capacity.  Further, they are subject to Defendants' continuous ability to severely restrict their use of their physical premises through executive orders. Although this is done as an alleged temporary measure to address a crisis, we are now about a

year into this crisis and no one can predict with any certainty when it will end.  At what point do temporary measures become permanent invasions?  Plaintiffs adamantly contend now is that point, the point where their businesses are facing permanent closure as a result of Defendants' Orders in response to this crisis.

With respect to regulatory taking, the Defendants' Orders are denying Plaintiffs "all economically beneficial use" of their property as per the Court in *Lucas*.  By forcing Plaintiffs to operate at such reduced capacities, they are not just diminishing the profits of these businesses, they are essentially forcing them to close permanently.  These businesses cannot survive and are being forced to operate at a loss, not merely a diminution in profits.

Defendants argue that these businesses have options afforded to them, they could do outdoor seating and/or delivery.  First, not all business locations can accommodate an outdoor setup and not every business produces a product that lends itself to deliverability.  Additionally, delivery relies on internet based services that take a substantial portion of the proceeds from each delivery.  While yes it is technically true, they have options, this is like offering a suffocating man a glass of water so he does not die of dehydration.   Plaintiffs maintain Defendants' Orders have resulted in both a physical and regulatory taking.

V.     **EQUAL PROTECTION CLAIMS**

The Equal Protection Claims against the City Defendants are rightly dismissed and this portion of the City Defendant's Cross Motion to Dismiss is conceded to by Plaintiffs.

VI.    **ELEMENT OF IRREPARABLE HARM IS SATISFIED**

With respect to the second element required for a preliminary injunction, "irreparable harm," the supporting Declarations submitted by a significant amount of the Plaintiffs

demonstrates just how dire the situation is and that they are on the precipice of the total destruction of everything that they have worked for and built.

It has been held in the Second Circuit that there is a presumption of irreparable harm where it is alleged that a constitutional right has been violated. See *Jolly v. Coughlin,* 76 F.3d 468 (2d Cir. 1996).   It is the alleged violation of a constitutional right that triggers a finding of irreparable harm. See *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992); *Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984). Plaintiffs have alleged, throughout the Complaint, multiple violations of multiple constitutional rights, which satisfies the second element of "irreparable harm."

**VII.   <u>BALANCE OF EQUITIES & THE PUBLIC INTEREST FAVORS PLAINTIFFS</u>**

The balance of equities weighs in Plaintiffs' favor.  Plaintiffs face the prospect that without the relief requested herein being granted, they may cease to exist.  Further, no one is required to patronize the Plaintiffs or any other similar businesses in New York City.   If an individual has concerns about their health and wellbeing they are free to refrain from patronizing Plaintiffs and undoubtedly many will, but there are many who would choose to avail themselves of Plaintiffs services at a safe fifty percent (50%) capacity cap and by doing so they would help save these businesses who are currently on their last legs.

Additionally, as noted throughout this case, many jurisdictions in close proximity to New York City (under an hour) are already allowed to open at increased capacities.  As noted above, Connecticut is reopening on March 19, 2021 at 100% capacity and counties abutting New York City are already open at 50% capacity.   Those who live in New York City are allowed to travel outside of the city to frequent establishments in jurisdictions with higher

capacity restrictions, can do so with ease and travel back to New York City.  Point being, the public health effects of these restrictions are negated by the fact that the surrounding areas are not abiding by the same strict conditions New York City is.  This consumer behavior is not accounted for in either Defendants' medical experts' Declarations.   In fact, this was recognized at the beginning of the COVID 19 crisis by State Defendants and the State governments of New Jersey and Connecticut.[6]

On March 17th, 2020 the State Governments of New York, New Jersey and Connecticut, announced a coordinated effort to prevent "state shopping"  and to avoid "...a patchwork of closures and restrictions..." according to Governors Cuomo and LaMont, respectively.  What we have now is a patchwork of inconsistent rules and regulations, which negates the efficacy of the most severe restrictions, which Plaintiffs are under by virtue of being located in New York City.  This does not serve the public interest of curbing COVID-19 effectively, but does put the Plaintiffs' at risk of severe and permanent loss of their businesses.

---

[6] "Coronavirus: NY, NJ, CT coordinate restrictions on restaurants, limit events to fewer than 50 people" Lovelace Jr., Berkeley, *CNBC* March 17, 2020
<https://www.cnbc.com/2020/03/16/new-york-new-jersey-and-connecticut-agree-to-close-restaurants-limit-events-to-less-than-50-people.html>

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that City Defendants Motion for

to Dismiss be denied.

Dated: March 9th, 2021
        New York, New York

                                 Respectfully submitted,


                                 _____/S_____
                                  Kenneth E. Belkin, Esq. (KB 0080)
                                 *Attorney for Plaintiffs*
                                 225 Broadway, Suite 715
                                 New York, New York 10007
                                 c: 718.724.3466
                                 f:  212.566.8165
                                 e: kb@belkinlaw.com