UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OUR WICKED LADY, LLC,
(d/b/a "Our Wicked Lady") *et al.*,

Plaintiffs,

v.

No. 21-cv-165 (DLC)

ANDREW M. CUOMO, in his official capacity as
Governor of the State of New York, *et al.*,

Defendants.

### STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Matthew L. Conrad
Assistant Attorney General
<u>Of Counsel</u>

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    A.  The COVID-19 Pandemic and the State's Response ............................................3

    B.  The Risk of COVID-19 Transmission Posed by New York City's Bars
        and Restaurants ....................................................................................................5

    C.  The Rules Governing New York City's Bars and Restaurants ..............................6

    D.  Current State Restrictions on Fitness Centers .....................................................7

    E.  The Present Lawsuit ............................................................................................7

STANDARD OF REVIEW .....................................................................................................8

ARGUMENT ........................................................................................................................9

    I.    PLAINTIFFS' DEMAND FOR INJUNCTIVE AND DECLARATORY RELIEF IS
        MOOT.........................................................................................................9

    II.  PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH
         AMENDMENT ...........................................................................................10

    III. PLAINTIFFS' PUTATIVE CLAIMS FOR MONEY DAMAGES AGAINST
         GOVERNOR CUOMO IN HIS INDIVIDUAL CAPACITY MUST
         BE DISMISSED .........................................................................................11

    IV. THE <u>JACOBSON</u> STANDARD GRANTS DEFERENCE TO STATE MEASURES
         TO PREVENT THE SPREAD OF COVID-19 ...............................................13

    V.  PLAINTIFFS FAIL TO STATE A PROECDURAL DUE PROCESS CLAIM .................15

        A.  The Challenged Orders Are Legislative in Nature ...............................................15

        B.  Plaintiffs Have Failed to Identify a Protected Interest .........................................16

    VI. PLAINTIFFS HAVE NOT PLEADED A SUBSTANTIVE DUE PROCESS CLAIM .... 18

    VII.  PLAINTIFFS HAVE NOT PLEADED AN EQUAL PROTECTION CLAIM ............ 20

    VIII. PLAINTIFFS FAIL TO STATE A TAKINGS CLAIM .............................................23

        A.  The Executive Orders Do Not Constitute a Physical Taking .................................23

        B.  The Executive Orders Do Not Constitute a Regulatory Taking ...........................24

CONCLUSION ....................................................................................................................26

## Table of Authorities

**Cases**                                                          **Page(s)**

*1256 Hertel Ave. Associates, LLC v. Calloway,*
   761 F.3d 252 (2d Cir. 2014) ................................................................................23, 24, 25

*Allen v. Whitmer,*
   No. 20-CV-11020, 2021 WL 22456 (E.D. Mich. Jan. 4, 2021).............................................12

*Armour v. City of Indianapolis,*
   566 U.S. 673 (2012)...........................................................................................................20

*Asbestec Const. Servs., Inc. v. U.S. Envtl. Prot. Agency,*
   849 F.2d 765 (2d Cir. 1988) ..............................................................................................17

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................................................8

*Ass'n of Jewish Camp Operators v. Cuomo,*
   470 F. Supp. 3d 197 (N.D.N.Y. 2020) ..............................................................................13

*Ball v. Carey,*
   64 A.D.2d 723 (3d Dep't 1978)........................................................................................13

*Bentley v. Dennison,*
   852 F. Supp. 2d 379 (S.D.N.Y. 2012)................................................................................3

*Bocelli Ristorante Inc. v. Cuomo,*
   131 N.Y.S.3d 481 (N.Y. Sup. Ct., Richmond Cty. 2020)...................................................22

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ...........................................................................................................12

*Brooks v. Spitzer,*
   No. 9:13-CV-1483, 2014 WL 8276494 (N.D.N.Y. Dec. 3, 2014) .......................................13

*Buffalo Teachers Fed. v. Tobe,*
   464 F.3d 362 (2d Cir. 2006) ...........................................................................23, 24, 25

*Carlos v. Santos,*
   123 F.3d 61 (2d Cir.1997)................................................................................................12

*Cmty. Hous. Improvement Program v. City of New York,*
   492 F. Supp. 3d 33 (E.D.N.Y. 2020) ................................................................................23

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,*
   527 U.S. 666 (1999).........................................................................................................16

*Columbus Ale House v. Cuomo,*
No. 20-CV-4291, --- F. Supp. 3d ----, 2020 WL 6118822 (E.D.N.Y. Oct. 16, 2020) ... 14, 15, 17, 19

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,*
508 U.S. 602 (1993) ................................................................................................24

*Conn v. Gabbert,*
526 U.S. 286 (1999) ................................................................................................17

*Connolly v. Pension Ben. Guar. Corp.,*
475 U.S. 211 (1986) ................................................................................................25

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) ................................................................................................20

*Cranley v. Natl. Life Ins. Co. of Vt.,*
318 F.3d 105 (2d Cir. 2003) ..................................................................................20

*Cunney v. Bd. of Trustees of Village of Grand View, N.Y.,*
660 F.3d 612 (2d Cir. 2011) ..................................................................................18

*Dean v. Univ. of Buffalo Sch. of Med. and Biomed. Sciences,*
804 F.3d 178 (2d Cir. 2015) ..................................................................................10

*Dube v. State Univ. of New York,*
900 F.2d 587 (2d Cir. 1990) ..................................................................................11

*Elmsford Apartment Assocs., LLC v. Cuomo,*
469 F. Supp. 3d 148 (S.D.N.Y. 2020) ..................................................................24

*Fernandes v. Moran,*
No. 2:17-cv-03430, 2018 WL 2103206 (E.D.N.Y. May 7, 2018) ........................23

*Geller v. Cuomo,*
476 F. Supp. 3d 1 (S.D.N.Y. 2020) ........................................................................9

*Geller v. De Blasio,*
2020 WL 2520711 (S.D.N.Y. May 18, 2020) ..........................................................9

*Giraldo v. Kessler,*
694 F.3d 161 (2d Cir. 2012) ....................................................................................8

*Goonewardena v. New York,*
475 F. Supp. 2d 310 (S.D.N.Y. 2007) ..................................................................11

*Grand River Enterprises Six Nations, Ltd. v. Boughton,*
988 F.3d 114 (2d Cir. 2021) ..................................................................................19

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
　425 F.3d 158 (2d Cir. 2005) ...................................................................................15

*Harhay v. Town of Ellington Board of Education*,
　323 F.3d 206 (2d Cir. 2003) ...................................................................................12

*Henny v. New York State*,
　842 F. Supp. 2d 530 (S.D.N.Y. 2012) ....................................................................11

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
　452 U.S. 264 (1981) ................................................................................................16

*Hopkins Hawley LLC d/b/a Seaport House v. Cuomo*,
　No. 20-CV-10932, --- F. Supp. 3d ----, 2021 WL 465437 (S.D.N.Y. Feb. 9, 2021) .................passim

*Hu v. City of New York*,
　927 F.3d 81 (2d Cir. 2019) .....................................................................................17

*Immediato v. Rye Neck Sch. Dist.*,
　73 F.3d 454 (2d Cir. 1996) .....................................................................................18

*Interport Pilots Agency v. Sammis*,
　14 F.3d 133 (2d Cir. 1994) .....................................................................................15

*Jacobson v. Massachusetts*,
　197 U.S. 11 (1905) ............................................................................................14, 15

*JWJ Indus., Inc. v. Oswego Cty*,
　538 F. App'x 11 (2d Cir. 2013) ...............................................................................17

*Kabrovski v. City of Rochester*,
　149 F. Supp. 3d 413 (W.D.N.Y. 2015) ...................................................................25

*Keitt v. City of New York*,
　882 F. Supp. 2d 412 (S.D.N.Y. 2011) ....................................................................11

*Kelly v. N.Y. Civil Serv. Comm'n*,
　632 F. App'x 17 (2d Cir. 2016) ...............................................................................11

*Lamar Advertising of Penn, LLC v. Town of Orchard Park*,
　356 F.3d 365 (2d Cir. 2004) ...................................................................................10

*Leonard F. v. Israel Discount Bank of New York*,
　199 F.3d 99 (2d Cir. 1999) .......................................................................................2

*Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*,
　397 F.3d 77 (2d Cir. 2005) .....................................................................................10

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005) ................................................................................................ 23, 24

*Luke's Catering Service, LLC v. Cuomo*,
    486 F. Supp. 3d 369 (W.D.N.Y. 2020) ................................................................... 14, 15

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ............................................................................................ 9

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996) .............................................................................................. 9

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ...................................................................................................... 16

*Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*,
    62 F.3d 449 (2d Cir. 1995) ............................................................................................ 25

*Murr v. Wisconsin*,
    137 S. Ct. 1933 (2017) .................................................................................................. 25

*New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*,
    439 U.S. 96 (1978) ........................................................................................................ 18

*O'Bannon v. Town Court Nursing Center*,
    447 U.S. 773 (1980) ...................................................................................................... 16

*O'Bradovich v. Vill. of Tuckahoe*,
    325 F. Supp. 2d 413 (S.D.N.Y. 2004) ........................................................................... 13

*Page v. Cuomo*,
    478 F. Supp. 3d 355 (N.D.N.Y. 2020) .......................................................................... 20

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) .............................................................................................. 8

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...................................................................................................... 10

*Pappas v. Town of Enfield*,
    602 F. App'x 35 (2d Cir. 2015) ............................................................................... 21, 22

*Parratt v. Taylor*,
    451 U.S. 527 (1981) ...................................................................................................... 16

*Pena v. DePrisco*,
    432 F.3d 98 (2d Cir. 2005) ............................................................................................ 18

*Penn. Cent. Transp. Co. v. City of N.Y.*,
  438 U.S. 104 (1978) ................................................................................................23

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ............................................................................................ 10, 11

*Poe v. Leonard*,
  282 F.3d 123 (2d Cir. 2002) ..................................................................................20

*Pollok v. Chen*,
  806 F. App'x 40 (2d Cir. 2020) .............................................................................18

*Prestopnik v. Whelan*,
  249 F. App'x 210 (2d Cir. 2007) ......................................................................21, 22

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ................................................................................................11

*Quern v. Jordan*,
  440 U.S. 332 (1979) ................................................................................................10

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ...............................................................................................15

*RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*,
  826 F.2d 1197 (2d Cir. 1987) ................................................................................16

*Russman v. Bd. of Educ.*,
  260 F.3d 114 (2d Cir. 2001) ....................................................................................9

*S. Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020) ...........................................................................................14

*Spavone v. New York State Dep't of Corr. Servs.*,
  719 F.3d 127 (2d Cir. 2013) ..................................................................................20

*Thomas v. Westchester Cty. Health Care Corp.*,
  232 F. Supp. 2d 273 (S.D.N.Y. 2002) .....................................................................2

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ..................................................................................................9

*United States v. Salerno*,
  481 U.S. 739 (1987) ................................................................................................20

*Vaden v. Maywood*,
  809 F.2d 361 (7th Cir. 1987) .................................................................................17

*Vill. of Willowbrook v. Olech*,
   528 U.S. 562 (2000) ........................................................................................................21

*Virgilio v. City of N.Y.*,
   407 F.3d 105 (2d Cir. 2005) ............................................................................................8

*Wagschal v. Skoufis*,
   442 F. Supp. 3d 612 (S.D.N.Y. 2020) ..............................................................................9

*Walker v. City of Waterbury*,
   361 F. App'x 163 (2d Cir. 2010) ....................................................................................18

*Walker v. New York*,
   150 F. App'x 28 (2d Cir. 2005) ......................................................................................11

*Wang v. Pataki*,
   396 F. Supp. 2d 446 (S.D.N.Y. 2005) ..............................................................................8

*Warden v. Pataki*,
   35 F. Supp. 2d 354 (S.D.N.Y. 1999) ..............................................................................13

*West Coast Hotel Co. v. Parrish*,
   300 U.S. 379 (1937) ........................................................................................................21

*White Plains Towing Corp. v. Patterson*,
   991 F.2d 1049 (2d Cir. 1993) ........................................................................................16

*Will v. Mich. Dept. of State Police*,
   491 U.S. 58 (1989) ..........................................................................................................11

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992) .................................................................................................23, 24

Defendants Andrew M. Cuomo, sued in his individual capacity and in his official capacity as Governor of the State of New York ("Governor Cuomo"), and the State of New York (collectively with Governor Cuomo, "State Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint dated March 9, 2021 (ECF no. 43) ("Am. Compl.") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The State of New York, along with the rest of the world, continues to confront the greatest public health crisis in living memory. The COVID-19 pandemic has caused over 20,000 deaths in New York City alone, an enormous number that could have been far higher had the State not taken urgent action to halt the spread of the virus by mandating temporary restrictions on businesses and social gatherings. Thanks to these measures, New York was able to significantly reduce new infections and fatalities, and is now engaged in lifting restrictions in a measured way, balancing the lives, health, and safety of its citizens with the need to protect their livelihoods. However, the danger of a resurgence in cases remains clear and present, as vaccination efforts race against the rise of new, more infectious variants of the virus. The State's response continues to be carefully calibrated to ensure that high-risk activities are resumed in a way that does not imperil New York's progress.

By this lawsuit, Plaintiffs seek to undermine these efforts and enjoin Executive Orders ("EOs") that were designed to mitigate the significantly increased risk of COVID-19 transmission posed by indoor dining. Indoor dining at bars and restaurants is a particularly high-risk activity because COVID-19 spreads more easily indoors, diners and drinkers cannot wear masks while eating and drinking, and dining and drinking at a bar or restaurant can encourage congregating and mingling, furthering the risk of spread. Because of its large population and high population density, these risks are particularly acute in New York City. To balance the protection of public health with the need for bars and restaurants to continue to operate, Governor Cuomo issued a series of EOs that currently

1

permit indoor dining in New York City at 50% of maximum occupancy.

Plaintiffs allege that they are primarily bars and restaurants located in New York City. They seek compensatory and punitive damages for harm caused by the alleged violation of their constitutional rights, as well as a permanent injunction against what was, at the time the Amended Complaint was filed, a 25% capacity limit on indoor dining in New York City.

Plaintiffs' claims are barred by the doctrines of mootness, the Eleventh Amendment, and other immunity doctrines that bar suit against individual-capacity claims. But Plaintiffs' claims also fail for the fundamental reason that the restrictions on indoor dining (and group fitness classes, to the extent the Amended Complaint challenges those restrictions as well) are rationally related to the State's compelling interest in avoiding increased transmission of COVID-19 cases and the concomitant threat to public health. Fundamentally, Plaintiffs are asking this Court to micromanage the State's response to the COVID-19 pandemic by drawing lines between what percentage thresholds are and are not constitutional. But as this Court observed in its order disposing of Plaintiffs' motion for a preliminary injunction, "[t]his Court may not arbitrarily decide that 50% capacity limits are better today than the 25% challenged by this motion or the 35% limits now in effect for restaurants. The setting of the appropriate limits for the City is not up to the plaintiffs or a court – it is up to the duly elected representatives of citizens." (P.I. Order (ECF no. 41) at 12).)

**FACTUAL BACKGROUND[1]**

---

[1] In deciding a motion to dismiss, a court may consider "documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken[.]" *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002), citing *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999). The Amended Complaint broadly references and challenges "a series of Orders . . . in response to the public health emergency presented by the global outbreak of COVID-19" (Am. Compl. ¶ 1), and places such referenced state directives at issue for the Court's consideration on this motion. Alternatively, "[j]udicial notice of public records is appropriate – and does not convert a motion to dismiss into a motion for summary judgment – because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned." *Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y.

As the Court is aware, the ongoing COVID-19 pandemic has caused over 40,000 deaths in New York State, over 20,000 of which were in New York City, and millions of deaths worldwide.[2] New York was, for much of 2020, the global epicenter of the crisis.[3] Thanks to the lifesaving efforts of the State, medical professionals, essential workers, and ordinary New Yorkers who have heeded calls to wear masks, practice social distancing, and observe other health measures, as well as to the State's ongoing vaccination efforts, New York's daily death toll has been reduced to a fraction of its peak of approximately 800 per day,[4] but which is still a sobering number of individuals. And the threat is not yet over,[5] as thousands of New Yorkers still test positive for COVID-19 each day,[6] and it is not yet clear how much protection current vaccines will offer against more contagious and deadly strains.[7]

## A.    The COVID-19 Pandemic and the State's Response

On March 7, 2020, pursuant to N.Y. Exec. Law § 29-a, Governor Cuomo issued EO 202, implementing the State Comprehensive Emergency Management Plan and declaring a statewide disaster emergency in response to the emerging COVID-19 viral pandemic.[8] By EO 202, the

---

2012).

[2] *See* Fatalities Data, New York State Department of Health ("DOH"), https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?:embed=yes&:toolbar=no&:tabs=n

[3] *See* New York Times, *New York City Region Is Now an Epicenter of the Coronavirus Pandemic* (March 22, 2020), https://nyti.ms/3kUJgbs.

[4] *See supra*, n.2.

[5] *See* New York Times*, Michigan's Virus Cases Are Out of Control, Putting Gov. Gretchen Whitmer in a Bind* (April 10, 2021), https://www.nytimes.com/2021/04/10/us/coronavirus-michigan-gretchen-whitmer.html

[6] *See* Daily Totals: Persons Tested and Persons Tested Positive, DOH, *https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-DailyTracker?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n*

[7] *See* Forbes, *Fauci: Covid Vaccines Are Less Effective Against New Strains — But Still Worth Taking* (Feb. 1, 2021), https://www.forbes.com/sites/joewalsh/2021/02/01/fauci-covid-vaccines-are-less-effective-against-new-strains---but-still-worth-taking/?sh=6214c25d4933

[8] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf

Governor suspended all State and local laws, rules, and regulations to the extent necessary to cope with the COVID-19 emergency. *Id.* Following the issuance of EO 202, Governor Cuomo issued multiple supplemental Executive Orders, continuing the temporary suspension and modification of certain laws relating to the state of emergency.[9]

On March 16, 2020, EO 202.3 suspended on-premises service of food and beverages in all bars and restaurants.[10] Executive Order 202.3 provided that "[a]ny restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption." *Id.* On March 20, 2020, Governor Cuomo announced the closure of all non-essential businesses and prohibited non-essential gatherings of individuals of any size for any reason.[11] EO 202.6 listed which businesses and services in New York State were deemed "essential" and directed the Empire State Development Corporation ("ESD"), a New York State public benefit corporation, to issue guidance to further clarify which businesses would be considered "essential" or "non-essential."[12] The ESD guidance designated "Restaurants/bars (but only for take-out/delivery)" as essential businesses.[13]

Beginning in May and June 2020, New York began a phased plan to guide the reopening of non-essential businesses.[14] This initiative was intended to begin reopening New York's economy in a gradual and measured way that would prevent any new spikes in COVID-19 cases. *Id.* Through this

---

[9] *See* https://www.governor.ny.gov/covid-19Directives (downloadable spreadsheet summarizing all COVID-related executive orders).

[10] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.3.pdf

[11] https://www.governor.ny.gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order

[12] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO202.6.pdf

[13] ESD Guidance For Determining Whether a Business Enterprise is Subject to a Workforce Reduction Under Recent Executive Orders, https://esd.ny.gov/guidance-executive-order-2026.

[14] https://www.governor.ny.gov/sites/default/files/atoms/files/NYForwardReopeningGuide.pdf (NY Forward reopening guide, issued May 2020).

phased reopening, which has been primarily data-driven and guided by public health experts, the State was able to keep the daily number of new infections and new deaths relatively flat at a time when cases were spiking throughout the rest of the country.[15]

Outside of New York City, restaurants were permitted to open for indoor dining at 50% capacity, with other restrictions, when a region entered "Phase 3." However, indoor dining was not initially permitted in New York City, given the significant risks of COVID-19 transmission presented by indoor dining in densely populated New York City.[16]

**B.      The Risk of COVID-19 Transmission Posed by New York City's Bars and Restaurants**

COVID-19 primarily spreads through person-to-person contact via respiratory droplets, and it may be spread by those who are asymptomatic.[17] It is not clear yet whether current vaccines provide full immunity against new variants, or to what extent vaccinated individuals can still transmit the virus.[18] As the Court previously observed, "[t]he transmission of COVID-19 occurs through direct, indirect, or close contact with infected people through infected secretions such as saliva and respiratory secretions or their respiratory droplets, which are expelled when an infected person coughs, sneezes, talks, or sings. COVID-19 has an incubation period of up to 14 days, and individuals who are infected with COVID-19 but are asymptomatic can transmit the virus." (Opinion and Order issued

---

[15] *See, e.g.*, Democrat & Chronicle, *New York hits new low for COVID-19 deaths, hospitalizations as rates soar in other states* (June 13, 2020), https://www.democratandchronicle.com/story/news/politics/albany/2020/06/13/ny-hits-new-low-covid-19-deaths-hospitalizations-rates-soar-elsewhere/3182652001/

[16] *See* Press Release, *Governor Cuomo Announces New York City Enters Phase III of Reopening Without Indoor Dining and Subject to State Guidance Today* (Jul. 6, 2020), available at https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-enters-phase-iii-reopening-without-indoor-dining-and.

[17] *See, e.g.*, Washington Post, *People without symptoms spread virus in more than half of cases, CDC model finds* (Jan. 21, 2021), https://www.washingtonpost.com/science/2021/01/07/covid-asymptomatic-spread/.

[18] *See, e.g.*, *supra*, n.7.

on March 9, 2021 (ECF no. 41) (the "P.I. Order") at 2.)[19] The increased risk of COVID-19 transmission for indoor drinking and dining is even higher in New York City than the rest of the State because the City is both more populated and more densely populated than the rest of the State.[20] Indeed, the five counties of New York City are the most densely populated counties in the State. *Id.*

### C. The Rules Governing New York City's Bars and Restaurants

New York bars and restaurants have been permitted to remain open for take-out and delivery services throughout the entirety of the pandemic, starting with EO 202.3, which halted on-premises service on March 16, 2020. EO 202.3 also allowed bars and restaurants to sell alcoholic beverages for take-out and delivery, a new privilege ordinarily reserved for liquor stores and grocery stores.[21] On June 6, 2020, Governor Cuomo issued EO 202.38, which allowed restaurants to serve patrons on-premises, but "only in outdoor space, provided such restaurant or bar is in compliance with Department of Health guidance promulgated for such activity."[22] Governor Cuomo subsequently issued Executive Order 202.52, which clarified that the purpose in allowing outdoor dining was to allow patrons to dine, with accompanying drinking, while restricting the congregating and mingling that arise in a bar service/drinking only environment."[23]

On January 29, 2021, in consideration of the downward trajectory of infections in New York City, Governor Cuomo announced that indoor dining in New York City could resume at 25% of

---

[19] *See also* CDC Considerations for Restaurant and Bar Operators (updated Dec. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/business-employers/bars-restaurants.html (explaining elevated risks of indoor dining).

[20] *See* Table 2: Population, Land Area, and Population Density by County, New York State 2017, New York State Department of Health, available at https://www.health.ny.gov/statistics/vital_statistics/2017/table02.htm.

[21] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.3.pdf

[22] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO-202.38-final.pdf

[23] https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.52.pdf

capacity, beginning on February 12, 2021.[24] On February 19, 2021, the Governor announced that the occupancy limitation would increase to 35% effective Friday, February 26, 2021.[25] On March 19, 2021, the limitation further increased to 50% within New York City.[26]

### D.    Current State Restrictions on Fitness Centers

Gyms and similar businesses also present an inherently increased risk for the spread of COVID-19, and as such have also been subject to restrictions for the protection of public health.[27] The ESD guidance issued pursuant to EO 202.6 did not list such businesses as "essential," and as such they were not permitted to operate starting on March 20, 2020.[28] On August 17, 2020, Governor Cuomo announced that gyms would be permitted to reopen at 33% capacity beginning on August 24, 2020, except that New York City officials would initially have the authority to determine whether reopening should be permitted within New York City, and whether indoor group fitness classes could resume.[29] Following a period where, at the City's directive, indoor classes were not permitted, gyms and indoor fitness classes were permitted to resume at 33% statewide as of March 22, 2021.[30]

### E.    The Present Lawsuit

Plaintiffs are a group of 90 New York City businesses. Eighty-five of them are bars and

---

[24] https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-indoor-dining-can-reopen-early-february-12

[25] https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-announces-nursing-home-visitations-resume

[26] https://www.governor.ny.gov/news/governor-cuomo-and-governor-murphy-announce-indoor-dining-new-york-city-and-new-jersey-will

[27] *See, e.g.*, N.Y. Times, *C.D.C. Traces Covid Outbreaks in Gyms, Urging Stricter Precautions* (Feb. 24, 2021), https://www.nytimes.com/2021/02/24/health/coronavirus-gyms-outbreaks.html.

[28] See ESD Guidance, *supra*, n.13.

[29]    https://www.governor.ny.gov/news/governor-cuomo-announces-gyms-and-fitness-centers-can-reopen-starting-august-24

[30] https://www.governor.ny.gov/news/governor-cuomo-updates-new-yorkers-states-progress-during-covid-19-pandemic-145

restaurants, while the remaining five (the "Fitness Center Plaintiffs") are yoga and martial arts studios. Am. Compl. ¶¶ 17-106. Plaintiffs commenced this proceeding by filing a complaint on or about January 8, 2021, and an amended complaint on or about March 9, 2021. Plaintiffs filed a motion for a preliminary injunction on February 5, 2021, asking that the Court enjoin the relevant EOs that establish the 25% cap on indoor dining within New York City, and permit Plaintiffs to instead operate their restaurants at a 50% capacity cap. On March 9, 2021, this Court denied Plaintiffs' motion for a preliminary injunction. (P.I. Order.) The following day, on March 10, 2021, Governor Cuomo announced that restaurants within New York City would be permitted to operate at a 50% capacity cap beginning on March 19, 2021.[31]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed "if there are no legal grounds upon which relief may be granted." *Virgilio v. City of N.Y.*, 407 F.3d 105, 111 (2d Cir. 2005). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not met, however, by "recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The Court may consider documents incorporated by reference in the complaint and may take judicial notice of public documents, such as statutes, case law, and executive orders. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005). The Court may also take judicial notice of "relevant matters of public record," *Giraldo v. Kessler*, 694 F.3d 161, 163 (2d Cir. 2012), such as guidance from public health organizations

---

[31] *See supra*, n.26.

and public health statistics reported by governmental agencies. *See Geller v. Cuomo*, 476 F. Supp. 3d 1 (S.D.N.Y. 2020) (taking judicial notice of CDC guidance, an article from John Hopkins University regarding COVID-19, and guidance from the WHO); *Geller v. De Blasio*, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) (taking judicial notice of public health statistics reported by New York City); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").

In addition, as (1) this matter is moot; and (2) the State Defendants are entitled to Eleventh Amendment immunity, Rule 12(b)(1) provides for dismissal of a case for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). The burden of proving jurisdiction falls on the party asserting it. *See Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996).

## **ARGUMENT**

## I. **PLAINTIFFS' DEMAND FOR INJUNCTIVE AND DECLARATORY RELIEF IS MOOT**

In the Amended Complaint, Plaintiffs ask the Court for "equitable and injunctive relief to enjoin the enforcement of State Defendants' Orders" and "declaratory relief from this Court in declaring that State Defendants' Orders violate Plaintiffs' civil rights[.]" (Am. Compl. ¶ 11.) However, Plaintiffs complain of orders that are no longer in effect, and the current directives afford Plaintiffs all the relief that they are seeking. As such, the demand for injunctive and declaratory relief is moot.

As this Court is aware, "Article III of the Constitution limits federal 'judicial power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 620 (S.D.N.Y. 2020) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980)), *aff'd, Wagschal v. Skoufis*, No. 20-871, 2021 WL 1568822 (2d Cir. Apr. 22, 2021). "[A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Id.* (quoting *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001)). "When the issues in dispute between the parties 'are no longer live,'

a case becomes moot" and must be dismissed. *Id.* (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005)).

Here, Plaintiffs challenge Executive Orders requiring them to operate at no greater than 25% capacity, and permitting local officials to restrict indoor group fitness classes. But these restrictions are no longer in effect. In light of the improving situation in the City and State regarding COVID spread, restaurants within New York City are now permitted to operate at 50% capacity[32], and group fitness classes may operate at 33% capacity statewide.[33] Plaintiffs' request for injunctive and declaratory relief is thus doubly moot – the challenged directives are no longer in effect, and Plaintiffs have already been afforded what they are seeking. *See Lamar Advertising of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377 (2d Cir. 2004) (Sotomayor, J.) ("Any arguments as to the unlawfulness of the [policy] as amended should have been raised by [plaintiff] in an amended complaint. As [plaintiff] never made a motion to amend . . . none of the claims pertaining to [] amendments are properly before us.").

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT

Regardless of the relief sought, the principle of state sovereign immunity embodied in the Eleventh Amendment to the U.S. Constitution bars all claims against the State and against Governor Cuomo in his official capacity. The Eleventh Amendment prevents a federal court from hearing a suit against a state or its agencies or officials absent consent or express abrogation by Congress. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984), (quoting *Quern v. Jordan*, 440 U.S. 332,342 (1979)); *see also Dean v. Univ. of Buffalo Sch. of Med. and Biomed. Sciences*, 804 F.3d 178, 193 (2d Cir. 2015). This bar applies whether the relief sought is legal or equitable in nature. *Papasan v. Allain*, 478 U.S.

---

[32] https://www.governor.ny.gov/sites/default/files/atoms/files/EO%20202.97.pdf

[33] https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.98.pdf;
https://www.governor.ny.gov/sites/default/files/atoms/files/Gyms_and_Fitness_Centers_Detailed_Guidelines.pdf

265, 276 (1986); *Pennhurst*, 465 U.S. at 102 ("a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief"); *Walker v. New York*, 150 F. App'x 28, 30 (2d Cir. 2005); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990). Congress did not abrogate the States' sovereign immunity when it enacted 42 U.S.C. § 1983, and New York has not waived its immunity. *Henny v. New York State*, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012); *Keitt v. City of New York*, 882 F. Supp. 2d 412, 447 (S.D.N.Y. 2011); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007). Moreover, the State is not a "person" for the purposes of § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989). As such, all of Plaintiffs' remaining claims are barred as against the State and Governor Cuomo in his official capacity.[34]

Moreover, Plaintiffs' three claims brought pursuant to the New York State Constitution (Plaintiffs' fourth, fifth, and sixth claims, Am. Compl. ¶¶ 162-196) are barred in their entirety from consideration by this Court. The Eleventh Amendment bar against federal courts deciding state law against state defendants' claims exists irrespective of the relief sought. *See Pennhurst*, 465 U.S. at 103-06 (Eleventh Amendment prevents suit requiring state official to follow state law); *Kelly v. N.Y. Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016) (summary order) (holding that the *Ex Parte Young* exception does not allow a federal court to issue an injunction for a violation of state law).

## III.  PLAINTIFFS' PUTATIVE CLAIMS FOR MONEY DAMAGES AGAINST GOVERNOR CUOMO IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED

In an attempt to evade the Eleventh Amendment bar against obtaining a damages award against the State in federal court, Plaintiffs, in their Amended Complaint, name Governor Cuomo as

---

[34] The narrow *Ex parte Young* exception to Eleventh Amendment immunity, permitting suits seeking prospective injunctive relief against state officials in their official capacity, is inapplicable here, as all claims for prospective injunctive relief are moot (*supra*, Section II).  Moreover, to the extent Plaintiffs continue to seek declaratory relief regarding past capacity limits on indoor dining, the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past . . . ."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

a defendant in his individual capacity in addition to his official capacity. However, Plaintiffs allege no facts suggesting that Governor Cuomo, in issuing the Executive Orders at issue, was acting in an individual capacity, rather than in his official capacity as Governor of the State of New York. (Tellingly, the Amended Complaint is substantively identical to the original Complaint, despite the original Complaint only naming Governor Cuomo in his official capacity.)[35]

This bare assertion noting that Governor Cuomo is sued in his individual capacity – without actually pleading a single fact supporting that characterization – is entirely insufficient to sustain a personal capacity claim against Governor Cuomo. Indeed, it would be absurd to claim that Governor Cuomo's issuance of Executive Orders was somehow undertaken outside the authority granted to him as Governor of the State of New York. *Cf. Allen v. Whitmer*, No. 20-CV-11020, 2021 WL 22456, at *3 (E.D. Mich. Jan. 4, 2021) ("By attempting to hold [Governor] Whitmer liable in her individual capacity for promulgating an executive order with the force and effect of state law pursuant to authority granted to the office of the Governor under state law, the State of Michigan is the real party in interest.").

In any event, Governor Cuomo is insulated against suits for money damages in his individual capacity by the principle of legislative immunity, which entitles government officials "to absolute immunity from civil liability for their legislative activities." *Harhay v. Town of Ellington Board of Education*, 323 F.3d 206, 210 (2d Cir. 2003) (citing *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir.1997)). Legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting "in a legislative capacity." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (holding that a mayor was entitled to legislative immunity for acts taken that were "integral steps in the

---

[35] Other than the addition of several new plaintiffs, the addition of the words "and also as an individual" (Am. Compl. ¶ 107) appears to be the *only* change made to the Amended Complaint as compared to the initial complaint. Moreover, Governor Cuomo has not been served with the Amended Complaint in his individual capacity.

legislative process"). Here, as this Court has already observed (P.I. Order at 14), the COVID-19 Executive Orders are legislative in nature. "Official action . . . is legislative when it has general application and looks to the future." *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 429-30 (S.D.N.Y. 2004) (internal citations omitted). Courts within the Second Circuit and across the country routinely dismiss claims brought against governors for the sort of generally applicable legislative action at issue here. *See Brooks v. Spitzer*, No. 9:13-CV-1483, 2014 WL 8276494, at *11 (N.D.N.Y. Dec. 3, 2014) ("Clearly, plaintiff is attempting to hold defendant Spitzer responsible for the purely legislative act of signing a statute into law. As such, this falls squarely into the conduct protected by legislative immunity, and the complaint may be dismissed as against defendant Spitzer."), *report and recommendation adopted in part, rejected in part on other grounds*, *Brooks v. Spitzer*, No. 9:13-CV-1483, 2015 WL 1313243 (N.D.N.Y. Mar. 24, 2015); *Warden v. Pataki*, 35 F. Supp. 2d 354, 358-59 (S.D.N.Y. 1999) ("The principal basis for plaintiffs' claims against the State Defendants is the State Defendants' role in enacting the legislation at issue. . . . The well-settled doctrine of absolute legislative immunity, however, bars actions against legislators or governors . . . on the basis of their roles in enacting or signing legislation.") (citations omitted), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999).[36]

## IV. THE JACOBSON STANDARD GRANTS DEFERENCE TO STATE MEASURES TO PREVENT THE SPREAD OF COVID-19

---

[36] As demonstrated by the cited cases, state governors are entitled to legislative immunity for the legislative act of signing a bill into law. *A fortiori*, legislative immunity applies even more squarely where the governor is issuing an executive order of a legislative nature, pursuant to a grant of authority by the legislature. *But cf. Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197 (N.D.N.Y. 2020) (declining to extend legislative immunity to issuance of executive orders "under the facts of this case," in the distinguishable context of a motion for a preliminary injunction, rather than a demand for retrospective damages). In any event, even if legislative immunity did not apply here, and even if Plaintiffs had attempted to plead that Governor Cuomo's Executive Orders were somehow issued in his individual capacity, he would be further protected from suit for damages by principles of both qualified and absolute immunity. *See, e.g.*, *Ball v. Carey*, 64 A.D.2d 723 (3d Dep't 1978), *cert. den.*, 441 U.S. 924 (1979) (noting that "it seems plain that . . . the Governor . . . would be absolutely immune from liability" for allegedly tortious conduct). It is certainly objectively reasonable for a Governor to attempt to safeguard public health during a global pandemic.

This is one in a series of actions that have challenged state and local government restrictions on in-person gatherings enacted to reduce the death toll of COVID-19. Such actions contradict a long line of precedent, dating back to *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court declared that "a community has the right to protect itself against an epidemic of disease which threatens its members," and that, in such times, judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31; *Hopkins Hawley LLC d/b/a Seaport House v. Cuomo* ("*Seaport House*"), No. 20-CV-10932, --- F. Supp. 3d ----, 2021 WL 465437 (S.D.N.Y. Feb. 9, 2021) (relying on *Jacobson* to uphold capacity restrictions on indoor dining). As Chief Justice Roberts has observed: "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring). Justice Roberts cautioned that a court should be especially reluctant to impose its own judgment in order to set aside acts of those better trained and charged with responsibility to respond to matters "fraught with medical and scientific uncertainties," and, in the face of those uncertainties, the latitude given those officials "must be especially broad." *Id.*; *see also Seaport House*, 2021 WL 465437, at *3 (citing *S. Bay United Pentecostal Church*); *Luke's Catering Service, LLC v. Cuomo*, 485 F. Supp. 3d 369 (W.D.N.Y. 2020) (applying *Jacobson* to deny preliminary injunction and grant cross-motion to dismiss, in a challenge to New York's 50-person limit on event and banquet venues).

Indeed, recently, the *Jacobson* holding has been applied in rejecting multiple challenges to New York City indoor dining restrictions imposed by the same Executive Orders at issue here. *See, e.g.,* *Columbus Ale House v. Cuomo*, No. 20-cv-4291, --- F. Supp. 3d ----, 2020 WL 6118822, at *3-4 (E.D.N.Y. Oct. 16, 2020) (applying *Jacobson* standard to substantive due process claim challenging executive order

requiring restaurants to close at midnight). In the *Seaport House* case, challenging what was then a total

prohibition on indoor dining within New York City, Judge Crotty concluded that:

> The Dining Policy bears a relation to the public welfare by seeking to curb the transmission of COVID-19 in higher risk settings such as restaurants. *See Columbus Ale*, 2020 WL 6118822, at *4; *Luke's Catering Serv., LLC v. Cuomo*, No. 20-CV-1086S, 2020 WL 5425008, at *7 (W.D.N.Y. Sept. 10, 2020). Moreover, Plaintiffs have not shown that the Dining Policy is "beyond all question, a plain, palpable invasion of rights secured by fundamental law." *Jacobson*, U.S. at 31. On the contrary, their requested relief—50% of indoor dining and extension of the dining curfew to midnight— implicitly concedes that public health regulation of restaurants, in view of the pandemic, is constitutional. But because the constitutionality of the Dining Policy cannot turn on granular distinctions (such as two additional hours of dining service or a 50% increase in capacity limits), the Court concludes that the Plaintiffs' claims are unlikely to succeed under *Jacobson*.

*Seaport House*, 2021 WL 465437, at *6. While even under traditional constitutional analysis Plaintiffs

have not pleaded claims sufficient to overcome a motion to dismiss, this Court too should view the

constitutional issues arising in this case through the deferential lens of *Jacobson*.[37]

## V.   PLAINTIFFS FAIL TO STATE A PROECDURAL DUE PROCESS CLAIM

### A.   The Challenged Orders Are Legislative in Nature

Official action that is "legislative in nature is not subject to the notice and hearing requirements

of the due process clause." *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 174 (2d Cir.

2005). A governmental action is legislative in nature when it has "general application and look[s] to

the future." *Interport Pilots Agency v. Sammis*, 14 F.3d 133, 143 (2d Cir. 1994). "The test for determining

whether official action is adjudicative or legislative focuses on the function performed by the

---

[37] While the validity of *Jacobson* has been called into question with respect to cases arising under the Free Exercise Clause of the First Amendment, *see Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), it remains valid with respect to other constitutional questions. *See Seaport House*, 2021 WL 465437, at *3-*5 (considering in detail whether *Jacobson* has been abrogated in its entirety, and concluding, with respect to the same Executive Orders at issue here, that "*Jacobson's* deferential standard of judicial review is still applicable" and that "this Court is bound by it.").

decisionmaker, not on the method of selecting the decisionmaker or on the form in which the decision is announced." *RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204-05 (2d Cir. 1987).

As the Court has already observed, "[t]he plaintiffs have not shown that they are likely to succeed in their procedural due process claims. The challenged orders are legislative in nature because they apply prospectively to all restaurants and fitness centers in the City. As a result, the orders are not subject to the notice and hearing requirements that apply to adjudicative functions of government." (P.I. Order at 14; *see also Seaport House*, 2021 WL 465437, at *7 (holding that the same restrictions at issue in this case are legislative in nature and thus not susceptible to a procedural due process claim); *see also* N.Y. Exec. Law § 29-a (legislative act delegating to the Governor the authority to issue executive orders).)

### B.     Plaintiffs Have Failed to Identify a Protected Interest

Even if the Executive Orders at issue were susceptible to a procedural due process claim, Plaintiffs cannot establish the existence of an actionable liberty or property interest. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061-62 (2d Cir. 1993) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976)). Plaintiffs plead that they "have a fundamental property interest in conducting lawful business activities" and in "certain personal choices central to individual dignity and autonomy," namely, the ability to operate their businesses. (Am. Compl. ¶¶ 136-37.) However, these interests cannot support a due process claim as matter of law.[38] "[B]usiness in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also Asbestec Const. Servs., Inc. v. U.S. Envtl. Prot. Agency*, 849

---

[38] Even if Plaintiffs had identified a protected property right and the EOs were not considered legislative in nature, due process does not automatically trigger a right to a pre-deprivation hearing. *Parratt v. Taylor*, 451 U.S. 527 (1981). Rather, summary administrative action is justified to protect the health and safety of the public. *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981).

F.2d 765, 770 (2d Cir. 1988) ("Mere opportunity to obtain a federal contract is not a property right under the due process clause."); *Vaden v. Maywood*, 809 F.2d 361, 364 (7th Cir. 1987) ("It is well established that statutes or ordinances of general applicability may condition or even prohibit the right to conduct a business without running afoul of procedural due process."). Nor is lost revenue sufficient to support a due process claim. *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) ("the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession) (quoting *Conn v. Gabbert*, 526 U.S. 286, 291 (1999)); *see also JWJ Indus., Inc. v. Oswego Cty*, 538 F. App'x 11, 14 (2d Cir. 2013) ("Due process has not be construed to preclude government actions that adversely affect a business's profitability.")*; Columbus Ale House*, 2020 WL 6118822, at *4-5 (plaintiff unlikely to succeed on claim that COVID-19 related ban on restaurant service after midnight in New York City infringed its due process rights).

Here, Plaintiffs' restaurants were not shut down. To the contrary, they were permitted to provide take-out and delivery service throughout the pandemic, were provided the additional authorization to serve alcoholic beverages on a to-go basis, were allowed to resume outdoor dining on June 22, 2020, and are currently permitted to operate indoor dining at 50% capacity. While the Executive Orders restricted the manner in which Plaintiffs' businesses operate to protect public health, their operations were never prohibited entirely. Similarly, with respect to the Fitness Center Plaintiffs, while indoor group classes were prohibited in New York City during the period that the challenged Executive Orders were in place, gyms were still allowed to operate with capacity limitations and to hold group classes in outdoor settings.[39]

---

[39] https://www.governor.ny.gov/news/governor-cuomo-announces-gyms-and-fitness-centers-can-reopen-starting-august-24. Notably, it was *New York City* officials, not State officials, that made the determination that indoor group classes would not be permitted to operate within New York City between the initial reopening of gyms in August 2020, and March 2021, when that City directive was superseded by Executive Order. *See supra*, n.30, n.33.

## VI.    PLAINTIFFS HAVE NOT PLEADED A SUBSTANTIVE DUE PROCESS CLAIM

To state a substantive due process claim, a plaintiff must plead that they have been harmed by government action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." *Cunney v. Bd. of Trustees of Village of Grand View, N.Y.*, 660 F.3d 612, 626 (2d Cir. 2011) (citation omitted); *see also Pollok v. Chen*, 806 F. App'x 40, 45 (2d Cir. 2020). No such conduct is alleged here.

The scope of rights protected by the substantive component of the due process clause is extremely limited. A fundamental right is not implicated "every time a governmental regulation intrudes on an individual's liberty." *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 463 (2d Cir. 1996). "The right to conduct a business, or to pursue a calling, may be conditioned." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 439 U.S. 96, 107 (1978) (citation omitted). Indeed, "[i]t is well-established that substantive due process protections extend only to those interests that are implicit in the concept of ordered liberty," that is, "rights so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010) (summary order) (internal quotation marks and citations omitted). Interests related to commerce and employment are generally not considered fundamental rights subject to substantive due process protection. *Walker*, 361 F. App'x at 165.

As this Court held in its decision on Plaintiffs' preliminary injunction motion, "[t]he plaintiffs have not asserted an infringement of a fundamental right. Under the State and City Orders, the plaintiffs may continue to operate their businesses through in person dining with certain capacity limits and may conduct other aspects of their business, including take-out and delivery services. Similarly, fitness centers may open but [at the time the P.I. Order was issued could] not hold indoor fitness classes." (P.I. Order at 11.) As a result, no fundamental rights has been infringed, and to the extent such claim is even cognizable as distinct from Plaintiffs' equal protection challenge, only rational basis

18

review applies to Plaintiffs' claims. *See Grand River Enterprises Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 121-22 (2d Cir. 2021).

The challenged Executive Orders easily survive rational basis review. "Rational basis review is not a post-hoc test of the effectiveness of a legislative policy." *Id.* at 122-23. Rather, courts examine "whether, at enactment, there is a rational link between the harm a statute is intended to remedy and the method by which a legislature chooses to address it." *Id.* As the Court correctly observed, Plaintiffs have not plausibly alleged that "there is no rational link between limiting the number of people in enclosed spaces and the harm posed by the COVID-19 pandemic. COVID-19 is spread through close contact with infected individuals, including those who are asymptomatic. It is rational for the government to limit the number of individuals in close contact in enclosed spaces to avoid the spread of the virus." (P.I. Order at 12; *see also Columbus Ale House*, 2020 WL 6118822, at *4 ("It is by now well-understood that the virus spreads more easily indoors and when people gather in close proximity. . . . [i]ndoor dining poses a greater risk of virus transmission than many other activities.").) Indeed, Plaintiffs have implicitly acknowledged that their activities *do* cause some level of viral spread,[40] and as both this Court and others have explained, it is not the judiciary's role to micromanage the details of elected officials' initiatives to stem this spread. *E.g.* P.I. Order at 11-12 ("Indeed, in defining the relief they seek — 50% capacity limits — the plaintiffs in effect acknowledge that these are extraordinary times, that the health crisis is serious, and that limits are necessary."); *Seaport House*, 2021 WL 465437, at *6 (finding that plaintiffs' requested relief "implicitly concedes that public health regulation of restaurants, in view of the pandemic, is constitutional."). Plaintiffs cannot credibly dispute that the challenged directives are intended to address the possibility of viral spread caused by

---

[40] Am. Compl. ¶ 167 (arguing that "'Non Essential' business activities are not responsible for anywhere near the great majority of spread," and thereby conceding that they do cause *some* level of spread).

their activities; to the contrary, they implicitly concede that they are, and that some level of regulation is permissible. This alone is sufficient for the Executive Orders to withstand rational basis review.[41]

## VII.  PLAINTIFFS HAVE NOT PLEADED AN EQUAL PROTECTION CLAIM

Plaintiffs next argue that the Executive Orders violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. However, as this Court has already held (P.I. Order at 14-15), because they do not claim to be part of a suspect class, and because the Executive Orders are rationally based, Plaintiffs cannot succeed on this claim.[42]

"When a party challenges a government classification that does not involve a suspect class or burden fundamental rights, courts apply rational basis scrutiny.  The classification will be constitutional so long as there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 136 (2d Cir. 2013) (internal citation omitted).  Challenged classifications are entitled to "a strong presumption of validity." *Id.* "The party attacking a classification's rationality bears the burden to negative every conceivable basis which might support it." *Id.* (citing *Armour v. City of Indianapolis,* 566 U.S. 673, 681 (2012)).

---

[41] Additionally, only egregious or outrageous conduct that shocks the conscience is actionable as a violation of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (government conduct must be "brutal and offensive to human dignity" to violate substantive due process). None of Plaintiffs' allegations come close to satisfying that requirement. *See Page v. Cuomo*, 478 F. Supp. 3d 355, 371 (N.D.N.Y. 2020) (finding COVID-19 related quarantine order was not conscience-shocking; *Seaport House*, 2021 WL 465437, at *7 (holding that the same restrictions at issue in this case neither "shock the conscience," nor interfere with a fundamental right susceptible to a substantive due process claim).

[42] Plaintiffs' facial equal protection challenge (*see* Am. Compl. ¶ 147) "faces an uphill battle because it is difficult to demonstrate that mere enactment of a piece of legislation violates the plaintiff's constitutional rights." *Cranley v. Natl. Life Ins. Co. of Vt.*, 318 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks and citation omitted). "A facial challenge . . . is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Plaintiffs here point to two classifications that they challenge – that between "essential" businesses and those not deemed essential; and businesses located in New York City and those located outside of New York City.  Because neither of these constitute a suspect class, their equal protection claim must necessarily be premised on a "class of one" theory.[43] To succeed on a "class of one" claim, Plaintiffs must demonstrate "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Prestopnik v. Whelan*, 249 F. App'x 210, 212–13 (2d Cir. 2007) (internal quotations omitted). "A successful claim requires an extremely high degree of similarity between the plaintiff and her comparators." *Pappas v. Town of Enfield*, 602 F. App'x 35, 36 (2d Cir. 2015) (internal quotations omitted). To prevail on an equal protection class-of-one claim, a plaintiff must show that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Pappas*, 602 F. App'x at 36 (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiffs fail to satisfy this test with respect to either "class" they purport to be  part of. First, they have failed to demonstrate the existence of any comparators with an "extremely high degree of similarity" to themselves. *Pappas*, 602 F. App'x at 36. With respect to the group of businesses not labeled as "essential," Plaintiffs do not point to any activities labeled as "essential" that are "highly similar" to themselves.[44] The *only* other activities that Plaintiffs compare themselves to are "private in

---

[43] Plaintiffs argue that a higher standard of review is triggered by the imposition on a fundamental right (Am. Compl. ¶ 150), but again, this is not a "fundamental right" within the meaning of the Constitution. *See, e.g.*, *Seaport House*, 2021 WL 456437, at *7, citing *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 391 (1937).

[44] Notably, Plaintiffs ignore that restaurants actually *were* classified as "essential," for take-out and delivery service. *See* ESD Guidance, *supra*, n.13. Plaintiffs are therefore not actually a member of the class that they claim was harmed.

home gatherings, visits to medical facilities and the New York City Subway system." (Am Compl. ¶ 167.) With respect to the location-based "class," Plaintiffs cannot reasonably claim that restaurants located within New York City are similarly situated to businesses located in far less densely populated areas. New York City is a major, interconnected transportation hub that is comprised of the most populous and most densely populated counties in the State. An infected person in New York City is far more likely to spread the virus to another person than someone located in a less dense area. *See, e.g.*, *Bocelli Ristorante Inc. v. Cuomo*, 131 N.Y.S.3d 481, 485, at \*7 (N.Y. Sup. Ct., Richmond Cty. 2020) (in a case challenging New York City indoor dining restrictions, explaining that in less densely populated areas, "their potential to spread this deadly virus to mass amounts of people per square mile is markedly lower. . . . Thus, plaintiffs are not similarly situated to restaurant and bar owners in Westchester or Long Island"). Plaintiffs have failed to plausibly allege that there is no difference in the likelihood of increased transmission as between New York City and less densely populated areas.

Second, even if Plaintiffs had identified highly similar comparators that are being treated differently, all that is required for the government to justify a difference in treatment between appropriate comparators is a rational basis, *Pappas*, 602 F. App'x at 36, such that there is no inference that the plaintiff was "intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain." *Prestopnik*, 249 F. App'x at 212–13. Plaintiffs have not pleaded (plausibly or otherwise) that the Governor has, for some unknown reason, decided to intentionally target New York City restaurants or businesses not designated as "essential" for any reason other than legitimate public health concerns. To the contrary, it is entirely rational for the State to have calibrated restrictions based on the fact that viral spread is more likely to occur in a location with substantially higher population density and potential crowding than elsewhere in the State. As discussed *supra*, Section VI, Plaintiffs do not contest that *some* level of regulation to stem the spread of COVID-19 is permissible, and "[t]he

setting of the appropriate limits for the City is not up to the plaintiffs or a court — it is up to the duly elected representatives of citizens." (P.I. Order at 12.) As such, the variation in guidelines between different geographic areas and different types of businesses easily satisfies rational basis review.

## VIII.   PLAINTIFFS FAIL TO STATE A TAKINGS CLAIM

Plaintiffs' final argument is that the Executive Orders violate the takings clause of the Fifth Amendment of the U.S. Constitution. The Fifth Amendment's Takings Clause provides that no "private property [shall] be taken for public use, without just compensation," and is "designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Fernandes v. Moran*, No. 2:17-cv-03430, 2018 WL 2103206, at *8 (E.D.N.Y. May 7, 2018) (quoting *Penn. Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 123-24 (1978)). "The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." *1256 Hertel Ave. Associates, LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014). Plaintiffs' allegations do not satisfy either branch.[45]

### A.      The Executive Orders Do Not Constitute a Physical Taking

"The paradigmatic taking requiring just compensation," known as a physical taking, "is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). A physical taking "occur[s] when the government physically takes possession of an interest in property for some public purpose," *Buffalo Teachers Fed. v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). "The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992).

---

[45] Like Plaintiffs' other claims, this claim is barred by Eleventh Amendment immunity. *See, e.g., Cmty. Hous. Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 39-42 (E.D.N.Y. 2020) (explaining that the Takings Clause does not trump New York State's sovereign immunity).

Supreme Court and Second Circuit precedent make clear that the Executive Orders do not effect a physical taking. Plaintiffs' establishments have not been physically occupied by the State government. Government action that does not entail a physical occupation, but merely affects the use and value of private property, does not result in a physical taking of property. *See Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 163 (S.D.N.Y. 2020) (McMahon, J.) (holding that the State's emergency eviction moratorium did not constitute a physical taking); *cf. Buffalo Teachers Fed.*, 464 F.3d at 374 ("The fact of a taking is fairly obvious in physical takings cases.").

### B.     The Executive Orders Do Not Constitute a Regulatory Taking

A regulatory taking does not entail a physical occupation, but, rather, occurs when "governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs.*, 761 F.3d at 263 (quoting *Lingle*, 544 U.S. at 537). In determining whether a regulatory taking occurred, courts "must remain cognizant that government regulation – by definition – involves the adjustment of rights for the public good, and that [g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Lingle*, 544 U.S. at 538-39 (citations omitted). "Mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993).

Plaintiffs bear a "heavy burden" in attempting to show that a governmental action effects a regulatory taking. *Buffalo Teachers Fed'n*, 464 F.3d at 375. To determine whether a regulatory taking has occurred, courts "engage in essentially *ad hoc*, factual inquiries to determine in each case whether the challenged property restriction rises to the level of a taking." *Id.* (citation omitted).[46] "Paramount to

---

[46] As such, regulatory takings claims are not susceptible to facial challenges. A regulatory taking claim "necessarily entails complex factual assessments of the purposes and economic effects of government actions." *Yee*, 503 U.S. at 523.

the inquiry are the familiar factors set forth" by the Supreme Court in *Penn Central. 1256 Hertel Ave. Assocs.*, 761 F.3d at 264 (citing *Penn Central*, 438 U.S. at 124). Those factors include "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir. 1995) (citations omitted). As this is a fact-specific inquiry "designed to allow careful examination and weighing of all the relevant circumstances," *Murr v. Wisconsin*, 137 S. Ct. 1933, 1937 (2017), thread-bare factual allegations of harm, such as those offered by Plaintiffs, do not satisfy the *Penn Central* inquiry. A specific, detailed showing of how and to what extent a plaintiff is harmed is required to plead that a regulatory taking has occurred. *See, e.g., Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 424-25 (W.D.N.Y. 2015) (holding that economic impact alleged in "vague and conclusory terms," such as alleging "reduced business and lost revenues," does not satisfy *Penn Central*).

Plaintiffs have not pleaded that a regulatory taking has occurred. As the Court has observed, "while the challenged orders have undoubtedly interfered greatly with the plaintiffs' financial expectations and taken an enormous economic toll, the character of the government action weighs heavily against finding a taking. The restrictions are temporary, *see Buffalo Tchrs. Fed'n*, 464 F.3d at 375 (temporary nature of wage freeze weighed against finding it a regulatory taking), are negative restrictions, and are not 'affirmative exploitation by the state.' *Id.* The 'nature of the state's action is uncharacteristic of a regulatory taking.'" (P.I. Order at 17.) Moreover, Plaintiffs admit that "[t]he character of the governmental action has been for the public welfare" (Am. Compl. ¶ 158), and as the Court has held, "the interference with the plaintiffs' property rights 'adjusts the benefits and burdens of economic life to promote the common good.' *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225 (1986)." (P.I. Order at 17.) "Actions like those taken through these orders, which are undertaken to address a global pandemic, do not constitute a regulatory taking." (*Id.*)

**<u>CONCLUSION</u>**

For the reasons set forth above, State Defendants respectfully request that the Court grant their motion and dismiss the Amended Complaint with prejudice, together with such other relief as the Court may award.


Dated:  New York, New York
        April 30, 2021


                                LETITIA JAMES
                                Attorney General
                                State of New York


                            By: /s/ Matthew L. Conrad
                                MATTHEW L. CONRAD
                                Assistant Attorney General
                                28 Liberty Street
                                New York, NY 10005
                                (212) 416-8610
                                Matthew.Conrad@ag.ny.gov