UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

OUR WICKED LADY, LLC (d/b/a "Our Wicked Lady")
*et al.,*

                            Plaintiffs,

             -against-

                                  21-CV-165 (DLC)

ANDREW M. CUOMO**,** in his official capacity as
Governor of the State of New York; STATE OF NEW
YORK; BILL de BLASIO, in his official capacity as
Mayor of New York City; and THE CITY OF NEW
YORK,

                            Defendants.

-----------------------------------------------------------------------x

# CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

JAMES E. JOHNSON
Corporation Counsel of the
    City of New York
Attorney for Defendants Mayor Bill de
Blasio, and the City of New York
100 Church Street
New York, New York 10007

SHERYL NEUFELD
MICHELLE GOLDBERG-CAHN
KERRI A. DEVINE
SAMANTHA SCHONFELD
        Of Counsel.

April 30, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iv

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF MATERIAL FACTS ..................................................... 2

      The COVID-19 Public Health Crisis ................................................. 2

      Restrictions on Restaurants ................................................................ 3

      Restrictions on Gyms and Fitness Centers ........................................ 5

PROCEDURAL HISTORY ......................................................................... 6

LEGAL STANDARD .................................................................................. 6

ARGUMENT

    POINT I

        ALL CLAIMS WITH RESPECT TO THE
        RESTRICTIONS ON INDOOR DINING SHOULD
        BE DISMISSED AS AGAINST THE CITY AS
        SUCH RESTRICTIONS WERE ISSUED BY THE
        STATE. ............................................................................................ 7

    POINT II

        PLAINTIFFS' CLAIMS FAIL PURSUANT TO
        THE STANDARD SET FORTH IN *JACOBSON V.*
        *MASSACHUSETTS* ...................................................................... 8

    POINT III

        PLAINTIFFS' DUE PROCESS CLAIMS FAIL AS
        A MATTER OF LAW ................................................................... 10

        A.  Plaintiffs' Procedural Due Process Claims Fail
            as a Matter of Law ................................................................ 10

           1.  Plaintiffs were not entitled to notice and
              an opportunity to be heard with respect
              to the Challenged Orders as they are
              legislative in nature ................................................... 11

**Page**

2. Plaintiffs' failure to identify a liberty or property interest they were deprived of is fatal to both their procedural and substantive due process claims ...............................12

3. Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing ...........................12

B. To the Extent Plaintiffs Assert a Substantive Due Process Claim, such Claim Also Fails ......................................13

POINT IV

PLAINTIFFS' TAKINGS CLAIMS FAIL AS A MATTER OF LAW ..................................................................15

A. Plaintiffs Fail to State a Claim for a Physical Taking ...............................................................................15

B. Plaintiffs' Regulatory Takings Claims Fails to State a Claim .....................................................................17

1. Plaintiffs' Categorical Regulatory Takings Claim Fails ...............................................18

2. Plaintiffs' Non-Categorical Regulatory Takings Claim Fails ...............................................19

a. Economic Impact of the E.O.s on Plaintiffs.............................................................19

b. Plaintiffs Have Failed to Plead that the Challenged Orders Interfere with their Investment-Backed Expectations..................................................20

c. The Orders do not Unfairly Single-Out Plaintiffs......................................................21

**<u>Page</u>**

POINT V

        PLAINTIFFS' EQUAL PROTECTION CLAIM
        FAILS ...................................................................................... 22

CONCLUSION.............................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Pages**

1256 Hertel Ave. Assocs., LLC v. Calloway,
    761 F.3d 252 (2d Cir. 2014)....................................................................................................21

In Re Abbott,
    954 F. 3d 772 (5th Cir 2020) ...................................................................................................8

Alexandre v. TLC,
    2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. Sept. 28, 2007).....................................................15

Amato v. Elicker,
    460 F. Supp. 3d 202 (D. Conn. May 19, 2020).......................................................................9

Amato v. Elicker,
    2021 U.S. Dist. LEXIS 72507 (D. Conn. Apr. 15, 2021) ........................................... 18-19, 22

Aqua Harvesters, Inc., v. NYS Dep't of Envtl. Conserv.,
    399 F. Supp. 3d 15 (E.D.N.Y. 2019) ......................................................................................23

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................................6, 7

Ass's of Jewish Camp Operators v. Cuomo,
    470 F. Supp. 3d 197 (N.D.N.Y. 2020).....................................................................................9

Auracle Homes LLC v. Lamont,
    478 F. Supp. 3d 199 (D. Conn. 2020).....................................................................................17

Bayley's Campground Inc. v. Mills,
    463 F. Supp. 3d 22 (D. Me. 2020) .........................................................................................13

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................................................ 6-7

Benner v. Wolf,
    461 F. Supp. 3d 154 (M.D. Pa. 2020) ....................................................................................13

Bimber's Delwood, Inc. v. James,
    2020 U.S. Dist. LEXIS 195823 (W.D.N.Y. Oct. 21, 2020)........................................11, 14, 25

Bocelli Ristorante Inc. v. Cuomo,
    70 Misc. 3d 722 (Sup. Ct. Rich. Co. Nov. 6, 2020).....................................................9, 11, 12

**Cases**                                                                 **Pages**

Buffalo Teachers Fed'n v. Tobe,
    464 F.3d 362 (2d Cir. 2006)..................................................................16

Burka v. N.Y. City Transit Auth.,
    680 F. Supp. 590 (S.D.N.Y. 1988) .........................................................22

Capitol Pedicabs, LLC. v. City of New York,
    2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017)...................................25

City of Cleburne v. Cleburne Living Ctr.,
    473 U.S. 432 (1985)................................................................................22

Clubside Inc. v. Valentin,
    468 F.3d 144 (2d Cir. 2006)....................................................................24

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
    527 U.S. 666 (1999)................................................................................12

Columbus Ale House, Inc. v. Cuomo,
    2020 U.S. Dist. LEXIS 191828 (E.D.N.Y. Oct. 15, 2020)...........................9, 10, 12

County of Sacramento v. Lewis,
    523 U.S. 833 (1998)................................................................................14

Dairy v. Bonham,
    2013 U.S. Dist. LEXIS 103033 (N.D. Cal. July 23, 2013).....................23

Davidson v. Flynn,
    32 F.3d 27 (2d Cir. 1994)..........................................................................6

Elmsford Apt. Assoc. LLC v. Cuomo,
    469 F. Supp. 3d 148 (S.D.N.Y. 2020)..............................16, 17, 19, 20

Ewing v. Mytinger & Casselberry Inc.,
    339 U.S. 594 (1950)................................................................................13

Fisher v. United States Atty.,
    722 F. App'x 40 (2d Cir. 2018) ...............................................................5

Fortress Bible Church v. Feiner,
    694 F. 3d 208 (2d Cir. 2012)...................................................................24

Fox v. Bd. of Trs. of the State Univ.,
    42 F.3d 135 (2d Cir. 1994).........................................................................5

**Cases**                                                                    **Pages**

Friends of Danny Devito v. Wolf,
    227 A.3d 872 (PA Sup. Ct. Apr. 13, 2020)...........................................................21

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998)..............................................................................6

H's Bar, LLC v. Berg,
    2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020) .......................................9

Hartman v. Acton,
    2020 U.S. Dist. LEXIS 72068 (S.D. Ohio Apr. 21, 2020) ....................................11

Hodel v. Va. Surface Mining & Reclamation Ass'n,
    452 U.S. 264 (1981).......................................................................................13

Hopkins Hawley LLC v. Cuomo,
    2021 U.S. Dist. LEXIS 24580 (S.D.N.Y. Feb. 9, 2021)...........................8, 9, 11, 14

Hu v. City of New York,
    927 F. 3d 81 (2d Cir. 2019)............................................................................12

Hund v. Cuomo,
    2020 U.S. Dist. LEXIS 212698 (W.D.N.Y. Nov. 13, 2020) ..................................11

Inturri v. City of Hartford,
    365 F. Supp. 2d 240 (D. Conn., 2005)..............................................................25

Jacobson v. Massachusetts,
    197 U.S. 11 (1905)................................................................1, 8, 9, 10, 15

Kabrovski v. City of Rochester,
    149 F. Supp. 3d 412 (W.D.N.Y. 2015) .............................................................21

Kittay v. Giuliani,
    252 F.3d 645 (2d Cir. 2001)...........................................................................16

League of Indep. Fitness Facilities & Trainers v. Whitmer,
    468 F. Supp. 3d 940 (W.D. MI. 2020) ...............................................................9

Leb. Valley Auto Racing Corp. v. Cuomo,
    478 F. Supp. 3d 389 (N.D.N.Y. 2020) ................................................. 19-20, 21, 25

Leder v. Am. Traffic Solutions, Inc.,
    81 F. Supp. 3d 211 (E.D.N.Y. 2015)
    aff'd 630 F. App'x 61 (2d Cir. 2015)...............................................................14

**Cases**                                                                **Pages**

Lingle v. Chevron
    544 U.S. 528 (2005)......................................................................................16, 17

Logan v. Zimmerman Brush Co.,
    455 U.S. 422 (1982)...........................................................................................11

Luke's Catering Serv., LLC v. Cuomo,
    485 F. Supp. 3d 369 (W.D.N.Y. 2020) ......................................................17, 18, 21

Madonna v. United States,
    878 F.2d 62 (2d Cir. 1989)...................................................................................6

Maniqault v. Springs,
    199 U.S. 473 (1905)...........................................................................................22

McAdam v. Suffolk Cty. Police Dep't,
    2017 U.S. Dist. LEXIS 117006 (E.D.N.Y. 2017), 2017 WL 3206322 ..................22

McCarthy v. Cuomo,
    2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) ........................16, 17, 18

Missere v. Gross,
    826 F. Supp. 2d 542 (S.D.N.Y. 2011).................................................................24

Murphy v. Lamont,
    2020 U.S. Dist. LEXIS 136961 (D Conn. Aug. 3, 2020) .......................................11

Natale v. Town of Ridgefield,
    170 F.3d 258 (2d Cir. 1999).................................................................................14

Neilson v. D'Angelis,
    409 F.3d 100 (2d Cir. 2005).................................................................................24

New York Pet Welfare Ass'n v. City of N.Y.,
    143 F. Supp. 3d 50 (E.D.N.Y. 2015),
    aff'd 850 F.3d 79 (2d Cir. 2017),
    cert denied, 138 S. Ct. 131 (2017) .....................................................................11

Oregon Restaurant & Lodging Ass'n v. Brown,
    2020 U.S. Dist. LEXIS 220414 (D. Or. Nov. 24, 2020).........................................22

Our Wicked Lady LLC. v. Cuomo,
    2021 U.S. Dist. LEXIS 44505
    (S.D.N.Y. Mar. 9, 2021) ......................................................8, 9, 11, 15, 17, 18, 21, 22, 23, 25

**Cases**                                                          **Pages**

Page v. Cuomo,
478 F. Supp. 3d 355 (N.D.N.Y. 2020)...........................................................................13, 14

Palazzolo v. Rhode Island,
533 U.S. 606 (2001)...........................................................................................................15

Parratt v. Taylor,
451 U.S. 527 (1981)...........................................................................................................13

Pena v. DePrisco,
432 F.3d 98 (2d Cir. 2005).................................................................................................13

Penn Central Transportation Co. v. New York City,
438 U.S. 104 (1978)...............................................................................................17, 19, 21

Pennsylvania Coal v. Mahon,
260 U.S. 393 (1922)...........................................................................................................16

Plaza Motors of Brooklyn, Inc. v Cuomo,
2021 U.S. Dist. LEXIS 12726 (E.D.N.Y. Jan. 22, 2021) ...............................................24, 25

Poe v. Leonard,
282 F.3d 123 (2d Cir. 2002)...............................................................................................14

Pollok v. Chen,
806 Fed. Appx. 40 (2d Cir. 2020) ......................................................................................13

Porrazzo v. Bumble Bee Foods,
LLC, 822 F. Supp. 2d 406 (S.D.N.Y. 2011) ..........................................................................2

Purze v. Winthrop Harbor,
286 F.3d 452 (7th Cir. 2002) .............................................................................................24

Rent Stabilization Ass'n v. Dinkins,
5 F.3d 591 (2d Cir. 1993)...................................................................................................16

In re Rutledge,
956 F.3d 1018 (8th Cir 2020) ..............................................................................................8

S. Bay United Pentecostal Church v. Newsom,
140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) ........................................................................10

Savage v. Mills,
478 F. Supp. 3d 16 (D. Me. 2020) ................................................................................12, 13

**Cases**                                                                                                      **Pages**

Sherman v. Town of Chester,
    752 F.3d 554 (2d. Cir. 2014)...........................................................................................19, 20

Smith v. Half Hollow Hills Cent. School Dist.,
    298 F.3d 168 (2d Cir. 2002)..................................................................................................14

Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,
    560 U.S. 702 (2010)..............................................................................................................12

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,
    535 U.S. 302 (2002)..............................................................................................................17

Tandon v. Newsom,
    2021 U.S Dist. LEXIS 22499 (N.D. Ca. Feb. 5, 2021).........................................................25

United States v. Salerno,
    481 U.S. 739 (1987)..............................................................................................................16

Velez v. Levy,
    401 F.3d 75 (2d Cir. 2005)....................................................................................................14

Vill. of Willowbrook v. Olech,
    528 U.S. 562 (2000).........................................................................................................22, 24

World Gym, Inc. v. Baker,
    474 F. Supp. 3d 426 (D. Mass. 2020) ..........................................................................13, 14, 23

Yee v. City of Escondido, Cal.,
    503 U.S. 519 (1992)..............................................................................................................17

Young v. James,
    2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020) ..................................................9

**Statutes**

Fed. R. Civ. P. Rule 12(b)(6) ...........................................................................................................6

Defendants, MAYOR BILL de BLASIO, in his official capacity as Mayor of the City of New York ("Mayor de Blasio") and the City of New York ("City") (collectively "City Defendants") by their attorney, JAMES E. JOHNSON, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs bring this action challenging the State's restrictions on restaurants in New York City and the State's and City's restrictions on indoor group fitness classes issued in response to the unprecedented public health crisis caused by the outbreak of the COVID-19 virus. See Compl., Dkt. No 49. Specifically, plaintiffs are seeking to enjoin the restrictions put in place by New York State Executive Order ("State E.O.") No. 202.93, which permitted indoor dining at 25% capacity in New York City, and New York City Executive Order No. 144, which prohibited the reopening of indoor group fitness classes in New York City ("Challenged Orders"), issued in September 2020, and have them declared unconstitutional. See Compl. at "Wherefore" clause. Plaintiffs claim that the Challenged Orders violate their procedural and substantive due process rights, their right to equal protection, and the Takings Clause of the 5th Amendment of the U.S. Constitution. See Complaint at ¶¶ 135-196. All fail to state a claim, and accordingly, the Complaint must be dismissed.

Plaintiffs fail to establish that the Challenged Orders were unconstitutional in light of the applicable deferential standard set forth in Jacobson v. Massachusetts, which held that measures implemented to protect the public health will not be disturbed unless they have no "real or substantial" relation to their objects or, are beyond all question, "a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. 11, 31 (1905).

Plaintiffs' claims also fail pursuant to traditional constitutional analyses. The procedural due process claim fails insofar as the Challenged Orders are legislative in nature and not subject to due process protections. Even were that not the case, plaintiffs fail to identify a protectable property interest and were not entitled to a pre-deprivation hearing prior to the imposition of the Challenged Orders. Plaintiffs also fail to allege a viable substantive due process claim in that they merely allege that the Challenged Orders are arbitrary and, in any event, the Challenged Orders, clearly do not shock the conscience. Plaintiffs' federal and state equal protection claims, subject to rational basis review, fail as against the City defendants as plaintiffs attribute the alleged disparate treatment to Executive Orders issued by the State, not the City. Moreover, plaintiffs fail to identify similarly situated comparators that were treated differently by the City defendants, and, in any event, the alleged disparate treatment had a rational basis. Finally, plaintiffs' physical and regulatory takings claims must be dismissed as the City has not physically occupied plaintiffs' property and plaintiffs fail to plausibly allege that the Challenged Orders constitute a regulatory taking.

## STATEMENT OF MATERIAL FACTS

### The COVID-19 Public Health Crisis

In response to the outbreak of COVID-19 in New York State, on March 7, 2020, Gov. Andrew Cuomo declared a formal state of emergency in the State of New York. See Stipulation of Undisputed Facts dated February 17, 2021 ("Stip")[1] at ¶ 3. On March 12, 2020,

---

[1] The facts set forth in the Stipulation of Undisputed Facts are publicly available and therefore properly considered on a motion to dismiss. See Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011). For ease of reference, we have referred to the Stipulation of Undisputed Facts, rather than the websites and articles containing such information, where possible.

Mayor Bill de Blasio declared a state of emergency in the City. Stip. at ¶ 4. Both the State and City then implemented regulations aimed at preventing the spread of the COVID-19 virus.

Thereafter, Gov. Cuomo issued State E.O. No. 202.3 which states that "[n]o local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law . . . ." and State E.O. No. 202.5 which states that "no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health." See Stip. ¶ 6.

On March 18, 2020 Gov. Cuomo issued E.O. No. 202.6. This E.O., effective March 20, 2020, identified, among other things, "Essential Businesses" as "[a]ny essential business or entity providing essential services or functions" and further provided that Essential Businesses would not be subject to the in-person restrictions. The E.O. identified a series of industries that would be categorized as "Essential."  Restaurants were deemed "Essential retail," but only for take-out and delivery. Stip at ¶ 9.

**Restrictions on Restaurants**

On March 16, 2020, Gov. Cuomo issued State E.O. No. 202.3, ordering restaurants and bars throughout the State to cease food and drink service for on premise consumption. Stip. at ¶ 7. This ban was lifted on June 12, 2020 for regions in Phase 3 of the State's four-phase reopening timeline pursuant to State E.O. No. 202.41, subject to additional State guidance. Stip. at ¶ 11. At that time the City was in Phase 1 of the reopening process; it reached Phase 3 on July 6, 2020 and Phase 4 on July 20, 2020. Stip. at ¶ 12.

On July 6, 2020, Gov. Cuomo issued State E.O. No. 202.48 extending the prohibition on indoor dining in the City. Stip at ¶ 13. Effective September 30, 2020, State E.O. No. 202.61, lifted the ban on indoor dining in the City, among other things, subject to additional restrictions set by the State. Stip. at ¶ 15. The State-issued guidance, which is binding on the City pursuant to State E.O. No. 202.61, provided, *inter alia*, that indoor dining in the City must be, "limited to no more than 25% of the maximum occupancy for a particular area as set by the certificate of occupancy, exclusive of employees." Stip at ¶ 16.

On December 11, 2020, by State E.O. No. 202.81, Gov. Cuomo suspended the authorization for indoor dining in the City, effective Dec. 14, 2020. Id. at ¶ 16. The next month, Gov. Cuomo announced that indoor dining at eating and drinking establishments in the City would be allowed to resume beginning February 14, 2021, subsequently changed via E.O. 202.93 to February 12, 2021, at a maximum capacity of twenty-five percent (25%) of their normal operating capacity. Id. at ¶ 19. Gov. Cuomo subsequently allowed restaurants in New York City to offer indoor dining at thirty-five percent (35%) of their normal operating capacity beginning February 26, 2021, and at fifty percent (50%) of their normal operating capacity beginning March 19, 2021. See State E.O.s No. 202.96[2] and No. 202.97.[3]

---

[2]    See    https://www.governor.ny.gov/news/no-20296-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed April 26, 2021).

[3]    See    https://www.governor.ny.gov/news/no-20297-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed April 26, 2021).

**Restrictions on Gyms and Fitness Centers**

On March 16, 2020, Gov. Cuomo issued State E.O. No. 202.3, which, *inter alia*, directed gyms and fitness centers to cease operations on March 16, 2020.[4]

On August 20, 2020, Gov. Cuomo issued State E.O. No. 202.57, providing that gyms and fitness centers in the State of New York could resume operations on August 24, 2020, subject to health and safety standards, but further provided that local officials may choose to postpone, *inter alia*, the opening of gyms and fitness centers consistent with State Department of Health guidance.[5] In accordance with that guidance the City allowed gyms and fitness centers to reopen, but still prohibited indoor fitness classes. See City E.O. No. 144.[6] On March 17, 2021, Gov. Cuomo announced that indoor fitness classes in New York City could reopen at 33% capacity beginning on March 22, 2021.[7][8]

---

[4]    See        https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed April 26, 2021).

[5]    See      https://www.governor.ny.gov/news/no-20257-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed April 26, 2021).

[6]    https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-144.pdf   (last accessed April 29, 2021).

[7] https://abc7ny.com/indoor-fitness-gyms-governor-cuomo-ny-reopen/10426612/ (last accessed April 26, 2021).

[8] Plaintiffs have received the relief they seek—for indoor dining and indoor fitness classes in the City to resume. Compl. ¶ 8. Accordingly, plaintiffs' claims are moot. See Fisher v. United States Atty., 722 F. App'x 40, 41 (2d Cir. 2018) (internal citations omitted)("A case becomes moot, at any stage of litigation, when there is no longer a live case or controversy for a court to decide, such as when the plaintiff has already received the relief sought."); Fox v. Bd. of Trs. of the State Univ., 42 F.3d 135, 140 (2d Cir. 1994) (court has no jurisdiction to decide a case where the parties lack a legally cognizable interest in the outcome of the litigation). Since the filing of this action in January 2021, indoor dining in the City reopened on February 12, 2021 at 25% capacity and on March 19, 2021, at 50% capacity. See State E.O. Nos. 202.93 and 202.97. Additionally, on March 22, 2021, indoor fitness classes were able to reopen at 33% capacity. Accordingly, plaintiffs' claims are moot.

All of the State E.O.s are incorporated by reference in the City E.O.s, and pursuant to State E.O. No. 202.3, the City must comply with the State E.O.s and cannot impose less restrictive conditions. See Stip ¶ 6.

## PROCEDURAL HISTORY

Plaintiffs commenced this action by filing a Complaint on January 8, 2021. Subsequently, plaintiffs moved by Order to Show Cause for a preliminary injunction. City defendants opposed plaintiffs' motion for a preliminary injunction and cross-moved to dismiss the Complaint. By decision dated March 9, 2021, this Court denied plaintiffs' motion for a preliminary injunction. Dkt. No. 41. On that same day, plaintiffs filed an Amended Complaint ("Compl.") where the only material change is the addition of new plaintiffs. On March 10, 2021, this Court denied City defendants' motion to dismiss the Complaint as moot. Dkt. No. 44.

## LEGAL STANDARD

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)). A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (citations and quotations omitted).

-6-

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss. Id. First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations …plausibly give rise to an entitlement to relief." Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint must be dismissed. Id. at 678–79.

## ARGUMENT

### POINT I

### ALL CLAIMS WITH RESPECT TO THE RESTRICTIONS ON INDOOR DINING SHOULD BE DISMISSED AS AGAINST THE CITY AS SUCH RESTRICTIONS WERE ISSUED BY THE STATE

Plaintiffs fail to adequately plead a claim against City defendants with respect to the restrictions on indoor dining and accordingly, such claims should be dismissed as against City Defendants. All of the Challenged Orders with respect to restrictions on indoor dining were issued by the State. The City is not free to disregard the State E.Os.  In fact, State E.O. Nos. 202.3 and 202.5 explicitly require the City to adhere to any State E.Os and the determinations of the N.Y. State Department of Health. See State E.O.s Nos 202.3 and 202.5.[9] Accordingly, it is clear that with respect to eating and drinking establishments, plaintiffs solely challenge the State's response to the COVID-19 pandemic, not the City's. Any actions taken by City defendants with respect to eating and drinking establishments are mandated by the State E.O.s.

---

[9]    See    https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency (last accessed April 26, 2021); https://www.governor.ny.gov/news/no-2025-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

**POINT II**

**PLAINTIFFS' CLAIMS FAIL PURSUANT TO
THE STANDARD SET FORTH IN *JACOBSON
V. MASSACHUSETTS*** _____

As early as 1905, the Supreme Court, in the seminal case Jacobson v. Massachusetts, acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." Jacobson, 197 U.S. at 26. In Jacobson, the Supreme Court set forth a deferential standard when reviewing an enactment "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental right. Id. at 31. Such an enactment must not be disturbed unless it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law...." Id. In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,' or through 'arbitrary and oppressive' regulations." In Re Abbott, 954 F. 3d 772, 784 (5th Cir 2020) (quoting Jacobson at 28, 38).

As this Court held, Jacobson is applicable to the local COVID-19 restrictions challenged herein. See Our Wicked Lady LLC. v. Cuomo, 2021 U.S. Dist. LEXIS 44505, *8 (S.D.N.Y. Mar. 9, 2021). Indeed, courts across the nation have applied the "real or substantial relation" standard when addressing challenges to orders curtailing constitutional rights during the COVID-19 pandemic. See, e.g., Hopkins Hawley LLC v. Cuomo, 2021 U.S. Dist. LEXIS 24580 *11 (S.D.N.Y. Feb. 9, 2021), (holding that the deferential standard set forth in Jacobson is still applicable with respect to restrictions on indoor dining in New York City); In re Rutledge, 956 F.3d 1018 (8th Cir 2020) (finding that "the district court's failure to apply the Jacobson

framework produced a patently erroneous result"); <u>Young v. James</u>, 2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020); <u>Columbus Ale House, Inc. v. Cuomo,</u> 2020 U.S. Dist. LEXIS 191828 *7 (E.D.N.Y. Oct. 15, 2020); <u>H's Bar, LLC v. Berg</u>, 2020 U. S. Dist. LEXIS 218371 (S.D. Ill. Nov. 21, 2020); <u>Ass's of Jewish Camp Operators v. Cuomo</u>, 470 F. Supp. 3d 197 (N.D.N.Y. 2020) (collecting cases); <u>League of Indep. Fitness Facilities & Trainers v. Whitmer,</u> 468 F. Supp. 3d 940 (W.D. MI. 2020); <u>Amato v. Elicker</u>, 460 F. Supp. 3d 202 (D. Ct. May 19, 2020); <u>Bocelli Ristorante Inc. v. Cuomo</u>, 70 Misc. 3d 722 (Sup. Ct. Rich. Co. Nov. 6, 2020).

There is no doubt that the Challenged Orders have a "real or substantial relation" to reducing the spread of COVID-19, a pandemic that as of April 29, 2021, resulted in over 32,000 confirmed or probable deaths of New York City residents.[10] Stip. at ¶ 3. In fact, Courts have consistently held that the restrictions on indoor dining in New York City satisfy the standard set forth in <u>Jacobson</u>. "Under the rational basis review and <u>Jacobson</u>, courts must defer to the government's determination that at this particular state of the pandemic, only a particular density of people in an enclosed space is safe." <u>Our Wicked Lady</u>, 2021 U.S. Dist. LEXIS 44505 at 10. Similarly, in finding that a challenge to the State restriction prohibiting restaurants in New York City from providing service after midnight was unlikely to succeed, the Eastern District found that, "indoor dining poses a greater risk of virus transmission than many other activities." <u>Columbus Ale House</u>, 2020 U.S. Dist. LEXIS 191828 *9; <u>see also</u> <u>Hopkins Hawley</u>, 2021 U.S. Dist. LEXIS 24580 *15.

These holdings correctly recognize that government officials need the flexibility to impose measures aimed at stopping the spread of COVID-19 and to prevent a reoccurrence

---

[10] <u>https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page</u> (last accessed on April 29, 2021).

whereby healthcare facilities would once again become overwhelmed. As Chief Justice Roberts noted, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring). Even plaintiffs acknowledge that "State and City officials face tremendous challenges with respect to executing policy to protect the general public's health and welfare during this time of crisis," and that the defendants have a compelling interest to try to stem the spread of COVID-19. Compl. at ¶ 113. The courts, therefore, should not second guess determinations made by government officials, in consultation with public health officials, as to how best stem the spread of this deadly virus, particularly, whereas here, government officials seek to address an area "fraught with medical and scientific uncertainty." Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 at *10-11. As the Challenged Orders clearly satisfy the deferential standard set forth in Jacobson, plaintiffs' constitutional claims must be dismissed.

### POINT III

### PLAINTIFFS' DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW

**A.    Plaintiffs' Procedural Due Process Claims Fail as a Matter of Law**

Even if Jacobson was not applicable, Plaintiffs' procedural due process claim still fails to state a claim. See Compl. at ¶¶ 123-141, 180-194. Plaintiffs claim that their rights to procedural due process were violated because they were not afforded a "constitutionally adequate hearing" on whether the restrictions set forth in the Challenged Orders should have been imposed on their businesses. Compl. at ¶¶ 138. Plaintiffs, however, were not entitled to such a hearing.

-10-

    **1.   Plaintiffs were not entitled to notice and an opportunity to be heard with respect to the Challenged Orders as they are legislative in nature**

As this Court has already held, plaintiffs were not entitled to procedural due process with respect to the enactment of the Challenged Orders. "The challenged orders are legislative in nature because they apply prospectively to all restaurants and fitness centers in the City. As a result, the orders are not subject to the notice and hearing requirements that apply to adjudicative functions of government." Our Wicked Lady, U.S. Dist. LEXIS 44505 at *13; see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (an individual's due process rights are not violated by a law of general applicability since "the legislative determination provides all the process that is due."); New York Pet Welfare Ass'n v. City of N.Y., 143 F. Supp. 3d 50, 70 (E.D.N.Y. 2015), aff'd 850 F.3d 79 (2d Cir. 2017), cert denied, 138 S. Ct. 131 (2017). "[I]t is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature." Hopkins Hawley, 2021 U. S. Dist. LEXIS 24580, *16. Other courts have similarly found procedural due process claims based on COVID-19-related restrictions to be lacking. See Hund v. Cuomo, 2020 U.S. Dist. LEXIS 212698 *30 (W.D.N.Y. Nov. 13, 2020)(dismissing procedural due process claim based on COVID-19-related rule because it held was legislative); Bimber's Delwood, Inc. v. James, 2020 U.S. Dist. LEXIS 195823 *41 (W.D.N.Y. Oct. 21, 2020)(finding plaintiffs' due process claims based on Gov. Cuomo's COVID-19-related E.O.s not likely to succeed because they are legislative in nature); Murphy v. Lamont, 2020 U.S. Dist. LEXIS 136961 *31 (D Ct. Aug. 3, 2020); Hartman v. Acton, 2020 U.S. Dist. LEXIS 72068 *22 (S.D. Ohio Apr. 21, 2020); Bocelli, 70 Misc. 3d at 729. Accordingly, plaintiffs were not entitled to notice and an opportunity to be heard and their procedural due process claims must be dismissed.

### 2. Plaintiffs' failure to identify a liberty or property interest they were deprived of is fatal to both their procedural and substantive due process claims

Even if the Challenged Orders did trigger due process protections, plaintiffs fail to identify a protected liberty or property interest of which they have been deprived. To the extent plaintiffs claim that they have been deprived of lost revenue or a right to operate their businesses, their due process claim fails. "[B]usiness in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense," College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999). "Harm to business interests…is not a 'plain, palpable invasion of rights' under the Fourteenth Amendment." Savage v. Mills, 478 F. Supp. 3d 16, 30 (D. Me. 2020), citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 721, (2010) (noting that "the liberties' protected by substantive due process do not include economic liberties"). Moreover, plaintiffs do not have a right to conduct business without conditions.  Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 at 11; Bocelli, 70 Misc. 3d at 732. The Challenged Orders have merely restricted the manner in which restaurants and indoor fitness studios may operate. Restaurants have been allowed to provide take out and delivery services throughout the pandemic and fitness classes have been permitted to hold classes online. As the Challenged Orders have not prohibited plaintiffs from operating completely, they do not run afoul of the Fourteenth Amendment. See Hu v. City of New York, 927 F. 3d 81, 102 (2d Cir. 2019) ("the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession.") (citation omitted).

### 3. Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing

Assuming, arguendo, plaintiffs identified a protected property right of which they were deprived, they were not entitled to a pre-deprivation hearing prior to the issuance of the Challenged Orders. Due process does not automatically trigger a right to a pre-deprivation hearing.   Parratt v. Taylor, 451 U.S. 527 (1981). Rather, summary administrative action is justified to protect the health and safety of the public. Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 300 (1981). Indeed, deprivation of property to protect the public health and safety is "[one] of the oldest examples" of permissible summary action. Id. at 300, quoting Ewing v. Mytinger & Casselberry Inc., 339 U.S. 594, 599 (1950).

Preventing the further spread of COVID-19 justifies such summary administrative action. See Savage v. Mills, 478 F. Supp. 3d at 29; World Gym, Inc. v. Baker, 474 F. Supp. 3d 426, 433 (D. Mass. 2020); Benner v. Wolf, 461 F. Supp. 3d 154, 162 (M.D. Pa. 2020); Page v. Cuomo, 478 F. Supp. 3d 355, 371 (N.D.N.Y. 2020) "[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected. Bayley's Campground Inc. v. Mills, 463 F. Supp. 3d 22, 36 (D. Me. 2020). Accordingly, by commencing the instant action, plaintiffs have been afforded all of the process they are due with respect to the Challenged Orders.

**B.    To the Extent Plaintiffs Assert a Substantive Due Process Claim, such Claim Also Fails**

The Complaint fails to plead allegations sufficient to set forth a cognizable substantive due process claim. In order to state a substantive due process claim, "a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pollok v. Chen, 806 Fed. Appx. 40, 45 (2d Cir. 2020) (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)). Only a narrow range of extreme government conduct falls within the scope of a substantive due process claim. Indeed, only egregious or outrageous conduct that shocks the

conscience is actionable. See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002) (applying Sacramento). The Second Circuit has expounded on this standard and required the government conduct to be "brutal and offensive to human dignity…." Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotations omitted). Put another way, there must be a "malicious and sadistic" abuse of power that has no legitimate government purpose and that is intended to oppress or cause injury. See Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).

The Complaint lacks allegations of outrageous or conscience-shocking conduct. Instead, plaintiffs claim, in a conclusory manner, that the Challenged Orders are arbitrary and misguided. See Compl. at ¶¶ 8, 139, 165, 186, 191. These allegations fall far short of those necessary to adequately plead a substantive due process claim.  "[Substantive due process] does not forbid governmental actions that might fairly be deemed arbitrary or capricious….. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Moreover, "government action that is simply 'incorrect or ill-advised' does not fall within the protection of the substantive due process clause."  Bimber's Delwood, 2020 U.S. Dist. LEXIS 195823 *39; see also World Gym, 474 F. Supp. 3d at 433-434 (finding COVID-19 order closing gyms not conscience-shocking); Page, 478 F. Supp. 3d at 371; Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580 at *17.

Additionally, plaintiffs fail to allege a valid property interest or fundamental right infringed upon. Leder v. Am. Traffic Solutions, Inc., 81 F. Supp. 3d 211, 223 (E.D.N.Y. 2015) aff'd 630 F. App'x 61 (2d Cir. 2015). There is no fundamental right to conduct business without restrictions. Hopkins Hawley, 2021 U.S. Dist. LEXIS 24580 *17-8. Consequently, rational basis

-14-

review is applicable and in this case, easily satisfied. <u>Our Wicked Lady</u>, 2021 U.S. Dist. LEXIS 44505 at *9-10. This Court has already preliminarily held that the Challenged Orders are rational and stated, "[i]t is rational for the government to limit the number of individuals in close contact in enclosed spaces to avoid the spread of [COVID-19]." <u>Id.</u> at p. 10. Specifically, this Court stated:

> Under the rational basis review and <u>Jacobson</u>, courts must defer to the government's determination that at this particular stage of the pandemic only a particular density of people in an enclosed space is safe. This Court may not arbitrarily decide that 50% capacity limits are better today than the 25% challenged by this motion or the 35% limits now in effect for restaurants. Indeed, in defining the relief they seek—50% capacity limits—the plaintiffs in effect acknowledge that these are extraordinary times, that the health crisis is serious, and that limits are necessary. The setting of the appropriate limits for the City is not up to the plaintiffs or a court—it is up to the duly elected representatives of citizens.

<u>Id.</u> at *10-11. As the Complaint fails to plead that the Challenged Orders are conscience-shocking or that plaintiffs have been deprived of a fundamental right, the substantive due process claim should be dismissed since the Challenged Orders easily satisfy rational basis review.

**POINT IV**

**PLAINTIFFS' TAKINGS CLAIMS FAIL AS A
MATTER OF LAW[11]**

**A.     Plaintiffs Fail to State a Claim for a Physical Taking**

The Fifth Amendment, made applicable to the States under the Fourteenth Amendment, prohibits the government from taking "private property for public use without just compensation." <u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 633 (2001). The Supreme Court has

---

[11] The standard applicable to takings claims under the U.S. and N.Y. constitutions is the same. <u>See</u>, <u>e.g.</u>, <u>Seawall Associates</u>, 74 N.Y.2d at 92; <u>Alexandre v. TLC</u>, 2007 U.S. Dist. LEXIS 73642, at *35 (S.D.N.Y. Sept. 28, 2007).

recognized two types of takings—physical and regulatory. See Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006). ("A physical taking occur[s] when the government physically takes possession of an interest in property for some public purpose.") (internal quotations omitted); McCarthy v. Cuomo, 2020 U.S. Dist. LEXIS 107195 *12 (E.D.N.Y. June 18, 2020); Elmsford Apt. Assoc. LLC v. Cuomo, 469 F. Supp. 3d 148, 162-163 (S.D.N.Y. 2020). By contrast, "[g]overnment action that does not entail a physical occupation, but merely affects the use and value of private property" is considered under the framework of regulatory takings. Elmsford, 469 F. Supp. 3d at 162-163. That inquiry considers whether the burden imposed by the regulation has gone "too far," Pennsylvania Coal v. Mahon, 260 U.S. 393, 415 (1922), and is "tantamount to a direct appropriation or ouster," Lingle v. Chevron 544 U.S. 528, 537 (2005).

Plaintiffs assert that "Defendants' Orders and the enforcement thereof caused both a complete and total regulatory and physical taking of Plaintiffs' property without just compensation…." Compl. ¶ 157. To the extent plaintiffs are asserting a physical takings claim, plaintiffs must establish that "no set of circumstances" exist under which the Challenged Orders are valid. Rent Stabilization Ass'n v. Dinkins, 5 F.3d 591, 595 (2d Cir. 1993) (citing United States v. Salerno, 481 U.S. 739, 745 (1987)). The Second Circuit has consistently held that this stringent standard applies in facial takings challenges. See id.; Kittay v. Giuliani, 252 F.3d 645, 647 (2d Cir. 2001). Plaintiffs fail to plausibly allege that the Challenged Orders authorize a physical invasion of their property.

The Challenged Orders do not amount to a physical taking because there has been no physical occupation or invasion of plaintiffs' property by the government; in fact, no such physical occupation is alleged. Plaintiffs have remained free to operate their restaurants subject to the restrictions set forth in the Challenged Orders. Currently, they may do so by offering

-16-

indoor dining at 50% capacity and even when indoor dining was prohibited, plaintiffs could provide outdoor dining in accordance with established guidelines, as well as take-out and delivery services. Moreover, plaintiffs owning fitness studios are free to operate their businesses by conducting classes indoors at 33% capacity, and by offering classes online and outdoors.

Because the Challenged Orders "merely regulate [Plaintiffs'] use of [their] land," without physical occupation by the government, any physical takings claim fails. Auracle Homes LLC v. Lamont, 478 F. Supp. 3d 199, 220 (D. Ct. 2020)(quoting Yee v. City of Escondido, Cal., 503 U.S. 519, 528 (1992); Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *15 (plaintiffs' takings claims are not likely to succeed as "[t]he government has not physically occupied the plaintiffs' establishments"); McCarthy, 2020 U.S. Dist. LEXIS 107195, *12.

## B.   Plaintiffs' Regulatory Takings Claims Fails to State a Claim

Plaintiffs allege that "Defendants' Orders and the enforcement thereof caused both a complete and total regulatory [] taking of Plaintiff's property." Compl. ¶ 157. Regulatory action amounts to a regulatory taking only where it is "functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." Lingle, 544 U.S. at 539.  There are two types of regulatory takings—categorical and non-categorical. "A categorical regulatory taking occurs in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'" See Elmsford, 469 F. Supp. 3d at 164 (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002); Luke's Catering Serv., LLC v. Cuomo, 485 F. Supp. 3d 369, 385-386 (W.D.N.Y. 2020). "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in Penn Central Transportation Co. v. New York City, 438 U.S. 104 (1978)."

-17-

### 1.  Plaintiffs' Categorical Regulatory Takings Claim Fails

Plaintiffs assert that the prior mandate allowing indoor dining at 25% capacity imposed by the Challenged Orders deprives them of "significant, if not all, economically beneficial use of their businesses without just compensation." Compl. ¶ 155. In order to successfully assert a categorical takings claim, plaintiffs must demonstrate that the Challenged Orders deny them "all economically beneficial or productive use of land." McCarthy, 2020 U.S. Dist. LEXIS 107195, at *13 (emphasis added). Plaintiffs simply cannot show that the economic value of their property was zero at any time during the COVID-19 pandemic because the Challenged Orders never mandated that restaurants or fitness studios in New York City completely close. Outdoor dining has been permitted since June 22, 2020, indoor dining has been permitted for periods at 25% capacity, 35% capacity, and now 50% capacity and take-out and delivery service have been permitted throughout the pandemic. Additionally, plaintiff fitness centers were at all times during the pandemic permitted to operate classes online or outdoors and can now operate indoors at 33% capacity. As plaintiffs are able to avail themselves of these opportunities, plaintiffs have not lost all economically beneficial use of their property. See Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *15 ("plaintiffs cannot establish a categorical taking because they may still operate their businesses at a limited capacity and through the take-out and delivery of food and beverage."); McCarthy, 2020 U.S. Dist. LEXIS 107195, at *13 ("[t]he COVID-19 Executive Orders plainly do not deny [plaintiff] all economically beneficial use of his property. He could, for example, offer food and drinks from [the adult use establishment] for take-out or delivery."); Luke's Catering, 485 F. Supp. 3d at 386 (no takings claim based on COVID-19 E.O.s because plaintiffs "admit that they are not precluded from all economically beneficial uses of their property.") (emphasis in original); Amato v. Elicker, 2021

U.S. Dist. LEXIS 72507, * 24 (D. Conn. Apr. 15, 2021) ("[t]he Complaint fails to state a categorical takings claim because the LLC was not precluded from all economically beneficial use of the restaurant" as it was permitted to continue operating "through the take-out of food and beverages.") Accordingly, plaintiffs' categorical takings claim fails.

### 2.   Plaintiffs' Non-Categorical Regulatory Takings Claim Fails

"Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in <u>Penn Central</u>…" <u>Sherman v. Town of Chester</u>, 752 F.3d 554, 564 (2d. Cir. 2014). Eschewing any "set formula" for judging regulatory takings claims, the <u>Penn Central</u> Court articulated three guideposts for evaluating whether a regulation amounts to the functional equivalent of a physical appropriation: (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) the "character of the governmental action," in particular "whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" <u>Penn Central</u>, 438 U.S. at 124. Applying the <u>Penn Central</u> factors here, plaintiffs fail to state a claim for a regulatory takins.

### a.   Economic Impact of the E.O.s on Plaintiffs

Plaintiffs contend that "the economic impact on [them] has been a crisis in that of itself and probably not survivable by the bulk of the plaintiffs." Compl. ¶ 158. The economic impact of the Challenged Orders "can only qualify as a regulatory taking if [they] 'effectively prevent Plaintiff[] from making <u>any</u> economic use of [its] property.'" <u>Elmsford</u>, 469 F. Supp. 3d at 165 <u>quoting</u> <u>Sherman</u>, 752 F.3d at 565. And, "limitations on particular uses of property do not necessarily diminish significantly [a] property's value." <u>Leb. Valley Auto Racing Corp. v.</u>

Cuomo, 478 F. Supp. 3d 389, 401 (N.D.N.Y. 2020). Plaintiffs do not, with any degree of specificity, quantify the exact economic impact that the Challenged Orders have had on plaintiffs. Plaintiffs merely allege that: "the economic impact on the Plaintiffs has been a crisis in and of itself and not survivable…;" and that plaintiffs "have all invested considerable sums in their business and each have a track record of years of returns that would make their projections and expectations of future returns reliable."  Compl. ¶ 158. Such bare-boned statements fail to demonstrate the degree of economic impact that the Challenged Orders have had on plaintiffs.

Additionally, plaintiffs cannot demonstrate that the Challenged Orders "effectively prevent [them] from making any economic use of [their] property." Elmsford, 469 F. Supp. 3d at 165 quoting Sherman v. Town of Chester, 752 F.3d 554, 565 (2d. Cir. 2014). Restaurant owners can, and are, making economic use of their property by continuing to offer indoor dining at 50% capacity; outdoor dining pursuant to guidelines; and take-out and delivery services. Similarly, fitness studios can continue to offer online and outdoor fitness classes as well as indoor fitness classes at 33% capacity. Clearly, plaintiffs still have a viable economic use of their property.

### b. Plaintiffs Have Failed to Plead that the Challenged Orders Interfere with their Investment-Backed Expectations

Plaintiffs fail to adequately plead that the restrictions set forth in the Challenged Orders interfere with plaintiffs' reasonable investment-backed expectations. Plaintiffs come closest when they assert that they have "all invested considerable sums in their business and each have a track record of years of returns that would make their projections and expectations of future returns reliable . . . ." Compl. ¶ 158. However, this halt in plaintiffs' normal operations "is only temporary" and "plaintiffs do not allege that the applicable [COVID- 19] Executive Orders

-20-

will prevent them from ever realizing a financial return on their properties, or that the value of their property will be severely reduced." Leb. Valley, 478 F. Supp. 3d at 401 ("[b]y omitting discussion of investment-backed expectations, 'the pleading fails to plausibly allege a taking under this factor.'")(quoting Kabrovski v. City of Rochester, 149 F. Supp. 3d 412, 425 (W.D.N.Y. 2015); Luke's Catering, 485 F. Supp. 3d at 386 (COVID-19 executive orders "are temporary and do not preclude all economic use of Plaintiffs' property"); Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *15-16 (temporary nature of the restrictions imposed by the Challenged Orders weighs against finding a regulatory taking).

### c.  The Orders do not Unfairly Single-Out Plaintiffs

The third prong of the Penn Central analysis focuses on whether the plaintiffs have been unfairly singled out or whether the challenged regulation "instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252, 264 (2d Cir. 2014) (internal quotation marks omitted). The character of the government action challenged in this action—i.e., the emergency response to a global pandemic which resulted in temporary restrictions being placed on plaintiffs' property for the overall protection of the common good—further undercuts plaintiffs' claim that a taking has occurred. Courts have recently held that the character of the government action in issuing the Challenged Orders to manage the COVID-19 pandemic is "a temporary and proper exercise of the police power to protect the health and safety of the community, which weighs against a taking." Luke's Catering, 485 F. Supp. 3d at 386; Friends of Danny Devito v. Wolf, 227 A.3d 872, 895-896 (PA Sup. Ct. Apr. 13, 2020) (COVID-19 E.O.s "result[] in only a temporary loss of the use of the Petitioners' business premises, and the Governor's reasoning for imposing said restrictions on the use of their

-21-

property, namely to protect the lives and health of millions of Pennsylvania citizens, undoubtedly constitutes a classic example of the use of the police power to 'protect the lives, health, morals, comfort, and general welfare of the people[.]'") (quoting Maniqault v. Springs, 199 U.S. 473, 480 (1905)); Oregon Restaurant & Lodging Ass'n v. Brown, 2020 U.S. Dist. LEXIS 220414, at * 18 (D. Or. Nov. 24, 2020) (COVID-19 E.O.s are "not a physical invasion of property by the government but an emergency regulation promulgated to combat a worsening pandemic...") (internal citations omitted); Amato, 2021 U.S. Dist. LEXIS 72507 at *26-27 (COVID-19 E.O.s "at issue here were a temporary exercise of the State's police power to protect the health and safety of the community, which weighs strongly against finding that they constituted a taking."). Accordingly, as the Challenged Orders were undoubtedly enacted to minimize the damaging effects of COVID-19 on the public and to protect the health and welfare of New York citizens, "the character of the government action weighs heavily against finding a taking." Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *15-16.

## POINT V

## PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS[12]

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, (1985).  See also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000) (purpose of the Equal Protection Clause is to secure against intentional and arbitrary

---

[12] Since plaintiffs' federal due process and equal protection claims fail for the reasons set forth in Points I (B) and (D), supra, the state claims should be dismissed for the same reasons. The equal protection clauses and due process guarantees of the United Stated and New York Constitutions are co-extensive.  See Burka v. N.Y. City Transit Auth., 680 F. Supp. 590, 603 (S.D.N.Y. 1988); McAdam v. Suffolk Cty. Police Dep't, 2017 U.S. Dist. LEXIS 117006, *15-16 (E.D.N.Y. 2017), 2017 WL 3206322, *6-7.

discrimination).  As an initial matter, to the extent plaintiffs' Equal Protection claim rests on the categorization of businesses as either "essential" or "non-essential,"[13] or the distinction between how businesses are allowed to operate outside of New York City as opposed to inside New York City, their claim must be dismissed as against the City Defendants.  See Compl. at ¶¶ 112 ("Plaintiffs' businesses have been treated disparately from other businesses throughout the State"), 134, 135. These classifications and distinctions are not attributable to Mayor de Blasio or the City. Rather, it is the State that has designated businesses as essential or non-essential, and permitted restaurants outside of New York City to operate at 50%. See Stip. at ¶¶ 9, 11, 16-7.

Nonetheless, any such claim is not subject to heightened scrutiny. Plaintiffs provide no authority for their assertion that their Equal Protection claim is subject to strict scrutiny or that the Challenged Orders impinge on a fundamental right. Compl., ¶ 150. "The right to pursue a 'livelihood' is not a fundamental right under the Equal Protection Clause."  Aqua Harvesters, Inc., v. NYS Dep't of Envtl. Conserv., 399 F. Supp. 3d 15, 78 (E.D.N.Y. 2019) citing Dairy v. Bonham, 2013 U.S. Dist. LEXIS 103033 *18-9 (N.D. Cal. July 23, 2013).  COVID-19 related business restrictions have consistently been analyzed under rational basis review. World Gym, 474 F. Supp. 3d at 432 ("[c]ourts reviewing business closures due to COVID-19 have consistently applied rational basis review" (collecting cases)); Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *14 (as the Challenged Orders do not "burden a fundamental right or target a suspect class…[t]he rational basis test applies."). Plaintiffs do not allege that they are members of a constitutionally protected class, they fail to adequately plead that they have been denied a fundamental right and do not allege that they were treated differently based on impermissible

---

[13] Restaurants were deemed "Essential retail," but only for take-out and delivery. The Complaint is devoid of any meaningful discussion as to how indoor dining at plaintiffs' restaurants or participating in an indoor, in-person group fitness class is in anyway similar to the services provided by other businesses designated as essential by the State.

considerations (indeed plaintiffs acknowledge defendants' "laudable goals" and that the COVID 19-related policies may be "well-intentioned." Compl. at ¶¶ 113, 176). Thus, the only applicable analysis for plaintiffs' Equal Protection claim is pursuant to a class-of-one theory.  See Plaza Motors of Brooklyn, Inc. v Cuomo, 2021 U.S. Dist. LEXIS 12726, *13 (E.D.N.Y. Jan. 22, 2021); Missere v. Gross, 826 F. Supp. 2d 542 (S.D.N.Y. 2011).  To prevail on such a claim, plaintiffs must demonstrate that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc., 626 F.3d 135, 140 (2d Cir. 2010), quoting Vill. Of Willowbrook, 528 U.S. at 564.

The "similarly situated" requirement is a strict one. To satisfy it, Plaintiffs must show that "no rational person" could find that any alleged difference would warrant different treatment, and that, "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  Clubside Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). Essentially, they must be "prima facie identical" Neilson v. D'Angelis, 409 F.3d 100 (2d Cir. 2005) citing Purze v. Winthrop Harbor, 286 F.3d 452 (7th Cir. 2002); see also Fortress Bible Church v. Feiner, 694 F. 3d 208, 222 (2d Cir. 2012) (a successful "class-of-one" claim requires "an extremely high degree of similarity" between the plaintiff and the comparators).

Plaintiffs fail to identify similarly situated comparators. Plaintiffs make a mere a passing reference to "public gatherings" in the Complaint, seemingly to serve as alleged comparators, and appear to argue that their Equal Protection claim is in part based on the different treatment afforded to private in-house gatherings and the subway system, in addition to businesses categorized as essential and businesses located outside of New York City. Compl., ¶¶ 133, 148-49, 167-8. These alleged comparators, however, are clearly not "prima facie identical"

-24-

to restaurants and fitness studios. To support their claim, Plaintiffs were required, but failed to identify other restaurants or indoor fitness studios within New York City that have been subject to different treatment than plaintiffs by City defendants. For that reason, their Equal Protection claim fails. See Plaza Motors of Brooklyn, Inc., 2021 U.S. Dist. LEXIS 12726, at *15 (holding that the correct comparator for plaintiff's automobile dealership within the red zone is other dealerships in the red zone, not dealerships outside of the red zone); see also Leb. Valley Auto Racing Corp., 478 F. Supp. 3d at 398; Bimber's Delwood, 2020 U.S. Dist. LEXIS 195823 *48.

Even assuming, arguendo, that Plaintiffs have sufficiently alleged that they are similarly situated to their comparators, Plaintiffs' class-of-one claim still fails because plaintiffs do not plausibly claim that any alleged different treatment lacked a rational basis. Capitol Pedicabs, LLC. v. City of New York, 2017 U.S. Dist. LEXIS 163994 (S.D.N.Y. 2017). To prevail on a class-of one-claim, a plaintiff must show that the official acts were "irrational and wholly arbitrary." Inturri v. City of Hartford, 365 F. Supp. 2d 240, 252 (D. Conn., 2005). This Court, however, has already held that the restrictions put in place by the Challenged Orders "bear a rational relationship to the goal of preventing the spread of COVID-19," and accordingly, the Equal Protection claims must be dismissed. Our Wicked Lady, 2021 U.S. Dist. LEXIS 44505, *14; see also Tandon v. Newsom, 2021 U.S Dist. LEXIS 22499 *57 (N.D. Ca. Feb. 5, 2021) ("Under these deferential standards, every court considering Equal Protection challenges brought by business owners to COVID-related restrictions has upheld the restrictions….")

## <u>CONCLUSION</u>

For all the reasons set forth herein, City defendants respectfully request that the

Court grant their motion to dismiss the complaint in its entirety.

Dated:     New York, New York
           April 30, 2021


By: _Kerri A. Devine_ /s/

_Samantha Schonfeld_ /s/

Kerri A. Devine
Samantha Schonfeld
Assistant Corporation Counsels